1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOMINIC FONTALVO, a minor, by and through his Guardian ad litem, NORMA FONTALVO, individually and as successor in interest to Alexis Fontalvo, deceased Plaintiff, | Civil Action No. 13-cv-0331-GPC-KSC |
| | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |
| vs. | |
| SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC; DUPONT AEROSPACE CO.; DUPONT DE NEMOURS AND COMPANY LLC; E.I. DUPONT DE NEMOURS AND COMPANY; PKL SERVICES INC. ; and DOES 1 through 100, | [DKT. NO. 7] |
| Defendants. | |

On January 25, 2013, Plaintiff Dominic Fontalvo, a minor, by and through his guardian ad litem, Norma Fontalvo, filed a products liability complaint in the Superior Court of San Diego against numerous Defendants.  On February 11, 2013, Defendant Sikorsky Aircraft Corporation ("Sikorsky") removed the case to this Court. (Dkt. No. 1, "Notice of Removal.")  On March 6, 2013, Plaintiff filed a motion to remand the action to state court. (Dkt. No. 7, "Pl. Mtn.")   On May 3, 2013, Defendant Sikorsky filed an opposition to the motion to remand. (Dkt. No. 19, "Def. Opp.")  Defendant E.I. Dupont de Nemours and Company ("Dupont") also filed an opposition to Plaintiff's motion to remand, supporting and elaborating on Sikorsky's arguments. (Dkt. No. 23.)  Plaintiff filed a reply to both oppositions. (Dkt. Nos. 24, 25.)  The Court finds the matter suitable for resolution without oral argument pursuant to Local Civil Rule 7.1(d)(1).   Based on the briefing, supporting documentation and applicable law, the Court **DENIES** Plaintiff's motion to remand.

### BACKGROUND

This action arises from the death of United States Marine Corps Staff Sergeant Alexis Fontalvo that occurred during a helicopter accident on March 17, 2011 at the Marine Corps Air Station Miramar.  (Dkt. No. 1, Ex. A, "Compl.")  The accident occurred when a faulty wiring harness of a CH-53E helicopter caused the landing gear to unexpectedly retract while Sgt. Fontalvo was beneath the aircraft. (Pl. Mtn. at 1, Ex. A, "JAGMAN Final Report.")  Sgt. Fontalvo was killed by the weight of the helicopter. (Id.)  The JAGMAN Final Report, issued following the Judge Advocate General's investigation of the accident, states the wiring in the landing gear control panel was in disrepair, and caused the landing gear to unexpectedly retract on top of Sgt. Fontalvo. (Id.)  The Final Report

further found that the overall design of the wiring harness exacerbated the danger posed by the exposed wires. (Id.)

Plaintiff Dominic Fontalvo ("Plaintiff"), the minor son and sole heir of Alexis Fontalvo, filed the instant action on January 25, 2013 in the Superior Court of San Diego by through his guardian ad litem, Norma Fontalvo. (Compl. ¶¶ 3-4.) Plaintiff brings the action as the decedent's successor in interest pursuant to Cal. Code Civ. P. § 377.11. (Compl. ¶ 38.) Plaintiff alleges strict and negligent product liability, negligence and breach of warranty against Defendants as the designers and manufacturers of the CH-53E helicopter. (Compl. pp. 2-8.)

### DISCUSSION

Defendant Sikorsky removed this action pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1); federal question jurisdiction, 28 U.S.C. § 1441; and diversity jurisdiction, 28 U.S.C. § 1441. (Notice of Removal.) Plaintiff seeks to remand based on Defendant Sikorsky's failure to meet the requirements of the federal officer removal statute, lack of complete diversity, inapplicability of the federal enclave statute, and pre-service removal defect. In opposition to Plaintiff's motion to remand, Defendant Sikorsky asserts that it has met all the requirements of the federal officer removal statute, and, moreover, removal is appropriate because of the existence of a federal question and complete diversity of the parties.

**1. Removal**

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court a claim filed in state court that could have initially been brought in federal court. 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). As federal courts have limited jurisdiction, they are presumed to lack jurisdiction unless the contrary is established. Gen. Atomic Co. v. United Nuclear Corp., 655

**Civil Action No. 13-cv-0331-GPC-KSC**

F.2d 968, 968-69 (9th Cir.1981).  Removal statutes are to be strictly construed and any doubts are to be resolved in favor of state court jurisdiction and remand.  See Gaus v. Miles, 980 F.2d 564, 566 (9th Cir.1992).

### A. Federal Officer Removal Statute

28 U.S.C. § 1442(a)(1), also known as the federal officer removal statute, provides that an action may be removed by "[a]ny officer . . . of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."  28 U.S.C. § 1442(a)(1).  Removal under § 1442(a)(1) requires the moving party to show "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a "colorable federal defense."  Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (citing Jefferson Count Alabama  v. Acker, 527 U.S. 423, 431 (1999)); Mesa v. California, 489 U.S. 121, 124–25 (1989).

Generally, there is a strong presumption against removal jurisdiction and the defendants always have the burden of establishing that removal is proper. Gaus, 980 F.2d at 566.  However, the federal officer removal statute is an exception to this general rule and § 1442 is interpreted broadly in favor of removal.  Durham, 445 F.3d at 1252; Ballenger v. Agco, No. 06-2271 CW, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007).  For example, under § 1442, federal officers can remove both civil and criminal cases while § 1441 only provides for civil removal; a federal officer can remove a case even if the plaintiff couldn't have filed the case in federal court in the first instance; removals under § 1441 are subject to the well-pleaded complaint rule while those under § 1442 are not; and where all defendants must consent to removal under § 1441, a federal officer or agency defendant can unilaterally remove a case under § 1442.

**Civil Action No. 13-cv-0331-GPC-KSC**

<u>Durham</u>, 445 F.3d at 1253.  Under the federal officer removal statute, cases against federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."  <u>Acker</u>, 527 U.S. at 431.

### 1. Person

As corporations, Defendants meet the preliminary requirement that the party seeking removal is a person within the meaning of § 1442(a)(1). <u>See</u> <u>Fung v. Abex Corp.</u>, 816 F. Supp. 569, 572 (N.D. Cal. 1992) (concluding that corporations qualify as a "person" under § 1442(a)(1)). The parties do not dispute this factor.

### 2. Defendants Acted Under the Direction of a Federal Officer

To show that it was acting under the direction of a federal officer, Defendant must show that a federal officer had "direct and detailed" control over it. <u>Fung</u>, 816 F. Supp. at 573 (citing <u>Ryan v. Dow Chemical Co.</u>, 781 F. Supp. 934, 946 (E.D.N.Y. 1992)).  If Defendants establish "'only that the relevant acts occurred under the general auspices of' a federal officer, such as being a participant in a regulated industry, they are not entitled § 1442(a)(1) removal." <u>Id.</u> (quotations omitted).

In its removal, Defendant Sikorsky asserts that all of its activities related to the design and manufacturing of the CH-53E helicopter were "performed under close government supervision pursuant to comprehensive and detailed contract specifications provided by the U.S. Government and its officers." (Notice of Removal at 4.)  In its opposition briefing, Sikorsky provides evidence showing Defendants manufactured the CH-53E under close supervision of the United States Department of the Navy ("U.S. Navy"). (Def. Opp., Exs. A-D.)  Plaintiff does not assert any arguments on this prong, and rather focuses, as discussed below, on the sufficiency of Defendant's government contractor defense.

The Court concludes Defendants "acted under" the direction of the U.S. government.  In the complaint, Plaintiff alleges Defendants designed and manufactured component parts and equipment for the CH-53E helicopter. (FAC ¶ 10.)  The Navy procurement and specification documents provided by Sikorsky suggest that the helicopter, wiring components, and landing gear were designed according to detailed government specifications. (Def. Opp. Exs. A-D; Dkt. No. 30, "Supplemental Ex. A".)  The over 200 page specification report goes into minute technical detail as to not only overall design, but also particular specifications for each component of the helicopter. (Supplemental Ex. A.)  As noted by Defendants, the development of military aircraft requires regular interaction with the U.S. Navy in status meetings, conferences, technical reviews and program reviews. (Def. Opp. n. 3.)

Moreover, the accident occurred due to a malfunction of the wires and landing gear.  The Final Report produced by the Judge Advocate General indicates the helicopter landing gear unexpectedly retracted as a result of a wiring issue.  (JAGMAN Final Report, Findings of Fact.)  The Report cites "widespread Kapton wire degradation" in the CH-53E. (Id. at 64.)  The Report further states "several portions of the wire leading from the landing gear control panel to the utility module had exposed wires." (Id. at 60.)  The Report states that upon government performing testing, it found the exposed wires when energized caused the landing gear to retract. (Id. at 62.)  The U.S. Navy Detail Specification Report for the manufacture of the CH-53E shows the government required specifications for the particular design of the components at issue here – the landing gear, retraction system, and the specific type of wiring to be used in the system. (Supplemental Ex. A ¶ 3.8.2-3.8.3, 3.16, 3.16.5.)

The Court refrains from making a determination as to the precise role of the U.S. government in the design of the CH-53E.  However, based on the above evidence, the Court finds a sufficient showing that the government, under the direction of the Navy, was not just a participant but exercised "direct and detailed" control over the design and construction of the CH-53E helicopter and, more specifically, the wiring specifications and landing gear utilized in the helicopter. As such, Sikorsky has made a sufficient required showing that it "acted under" the direction of the U.S. government officers in the manufacture and design of the CH-53E helicopter.

### 3.     Causal Nexus Between Plaintiff's Claims and Acts it Performed Under Color of Federal Office

Defendants seek removal under the government contractor defense which "protects a government contractor from liability for acts done by him while complying with government specifications during execution of [sic] performance of a contract with the United States." McKay v. Rockwell Int'l Corp., 704 F.2d 444, 448 (9th Cir. 1983); In re Hanford Nuclear Reserv. Litig., 534 F.3d 986, 1000 (9th Cir. 2008).  In a removal action, Defendants must demonstrate a colorable federal defense. See Mesa, 489 U.S. at 128.  In construing the colorable federal defense requirement, the United States Supreme Court has rejected a "'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.' . . .We therefore do not require the officer virtually to 'win his case before he can have it removed.'" Acker, 527 U.S. at 431 (quoting Willingham v. Morgan, 395 U.S. 402, 407 (1969)).  A defendant does not need to show a meritorious or likely successful federal defense but merely a

colorable one. <u>Fung</u>, 816 F. Supp. at 573 (asserting government contractor immunity was sufficient to assert a colorable federal defense under § 1442(a)(1)).

To invoke the government contractor defense, the contractor must show three elements: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." <u>Boyle v. United Tech. Corp.</u>, 487 U.S. 500, 512 (1988). The <u>Boyle</u> court explained that the procurement of military equipment involved "uniquely federal interests" that sometimes preempt a plaintiff's product liability claims against government contractors. <u>Id.</u> at 504. The parties dispute whether Defendant has sufficiently shown a "colorable" claim to the government contractor defense.

Plaintiff contends Defendant has failed to satisfy <u>Boyle</u>'s first prong, that the government approved reasonably precise specifications.  Relying on <u>Snell v. Bell Helicopter Textron</u>, Inc., 107 F.3d 744, 746 (9th Cir. 1997), and similar cases, Plaintiff asserts government approval requires more than a "rubber stamp," and Defendant must provide more supportive evidence to show the government approved the specifications. (Pl. Mtn at 19.)  Plaintiff further argues Defendant Sikorsky's representation that the CH-53E helicopter was designed and manufactured in conformance with specifications approved by the U.S. government is both unsubstantiated and insufficient to raise a colorable defense. (Pl. Mtn. at 20.)

Plaintiff cites cases wherein courts have found contractors failed to establish the first <u>Boyle</u> prong. In one such case, the Court found that while the contractor/defendant "had produced extensive evidence that there was a close working relationship between it and the Navy during the overall design and

7                                                          **Civil Action No. 13-cv-0331-GPC-KSC**

creation of the [defective product]," it was insufficient to satisfy the first <u>Boyle</u>
prong. <u>Gray v. Lockheed Aeronautical Sys. Co., a Div. of Lockheed Corp.</u>, 880 F.
Supp. 1559, 1566 (N.D. Ga. 1995) <u>aff'd and remanded sub nom.</u> <u>Gray v.
Lockheed Aeronautical Sys. Co.</u>, 125 F.3d 1371 (11th Cir. 1997) <u>cert. granted,
judgment vacated,</u> 524 U.S. 924 (1998). "'<u>Boyle</u> makes clear that the
requirements of '*reasonably precise specifications'* and conformity with them
refer to the *particular feature* of the product claimed to be defective." <u>Id.</u> (quoting
<u>Bailey v. McDonnell Douglas Corp.</u>, 989 F.2d 794, 799 (5th Cir.1993)).  The
Court concluded the contractor/defendant had not produced evidence that the
Navy reviewed and approved specific engineering drawings of the allegedly
defective feature in the product (the "servo").  As such, the Navy's overall
acceptance of the product following the various reviews, audits, and tests was,
with regard to the servo, merely a "rubber stamp" approval that did not satisfy the
first <u>Boyle</u> prong.  <u>Id.</u> (citing <u>Trevino v. General Dynamics Corp.</u> 865 F.2d 1474,
1480 (5th Cir. 1989), cert. denied, 493 U.S. 935 (1989)).  In affirming the district
court's finding on this particular point, the Eleventh Circuit further stated that to
meet the first <u>Boyle</u> requirement, the contractor must show that the Navy "actually
participated in discretionary design decisions, either by designing [the servo] itself
or approving specifications that the contractor prepared. <u>Gray v. Lockheed
Aeronautical Sys. Co.</u>, 125 F.3d 1371, 1377 (11th Cir. 1997) <u>cert. granted,
judgment vacated,</u> 524 U.S. 924 (1998) (internal quotations omitted).  Plaintiff
argues Defendant has failed to show such specificity that the U.S. Navy
participated in the discretionary design decisions of the features that caused the
CH-53E helicopter to malfunction. (Pl. Mtn. at 20-21.)

Defendant argues the U.S. Government has approved reasonably precise
specifications for the CH-53E helicopter.  The U.S. Navy Material Inspection and

Receiving Report confirms acceptance of a CH-53E helicopter according to government specifications SD-552-3-9. (Def. Opp. Ex. A.)  The Detail Specification Report specifies every design detail, including its landing gear system and electrical system, and states "wire shall have polyimide insulation in accordance with MIL-W-81381." (Supplemental Ex. A, ¶ 3.16.5.)  Additionally, Defendant argues the JAGMAN Final Report shows the government had knowledge of the Kapton MIL-W-81381 wire chaffing issue.  Defendant asserts this evidence shows the U.S. government participated in the discretionary design features, including the design of the alleged faulty wiring at issue, to raise a colorable defense.

As a preliminary matter, Plaintiff's reliance on decisions on summary judgment motions is inapplicable at this stage of the litigation.  At removal, the removing party is required to only raise a "colorable" claim to a federal defense. In other words, for removal purposes, the party is not required to prove success on the defense. See Mesa, 489 U.S. at 133; Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1427 (11th Cir.1996) ("defense need only be plausible; its ultimate validity is not to be determined at the time of removal."); Jamison v. Wiley, 14 F.3d 222, 238 (4th Cir.1994) ("defendant need not prove that he will actually prevail on his federal immunity defense in order to obtain removal").  This is because "one of the most important reasons for removal is to have the validity of the defense of official immunity *tried* in a federal court." Mesa, 489 U.S. at 133 (emphasis added).

In response to Plaintiff's motion to remand, Defendant has sufficiently shown evidence that the U.S. government approved reasonably precise specifications and knew about the dangers of the MIL-W-81381Kapton wiring. The Court finds the following evidence establishes a "colorable" claim to the

**Civil Action No. 13-cv-0331-GPC-KSC**

government contractor defense: (1) The U.S. Navy Detail Specification Report indicates the Navy put forth specific requirements detailing many aspects of the design and manufacture of CH-53E helicopters, including the wiring components at issue in this case (See Supplemental Ex. A.) (2) The JAGMAN Final Report shows the Government's extensive knowledge and efforts to address the issue of the faulty Kapton wiring in the CH-53E helicopters (See Pl. Mtn., Ex. A.); (3) The letter from the Naval Aviation Maintenance Office shows knowledge of the wiring issue, concluding "the results of various tests [sic] confirm that MIL-W-81381, Kapton insulated wire, exhibits properties that are not acceptable for continued installation in naval aircraft," and advises an amendment that specifies other acceptable wire types. (See Def. Opp., Ex. C.); and (4) The "Policy Statement on Naval Aerospace Interconnect Wire Requirements" by the U.S. Navy explicitly states a government issued policy restricting the use of Kapton MIL-W-81381 insulated wire in naval aircraft. (See Def. Opp., Ex. D.) At the very least, this evidence establishes a claim to the government contractor defense, sufficient for the third prong for the § 1442(a) removal.

Furthermore, the facts and opinions by the Judge Advocate General support the finding that there is a causal nexus between Defendant's alleged actions and Plaintiff's claims. The accident took place on MCAS Miramar, a U.S. military base. (JAGMAN Final Report, Finding of Fact 1.) Sergeant Fontalvo died in the line of duty as a military officer. (Id., Recommendation 1.) The investigation report relies heavily upon several voluntary statements by eyewitnesses at MCAS Miramar, including aircrew members, military emergency responders, and other U.S. military personnel. (Id., Finding of Fact 3-5.) The investigation report states that a similar incident regarding inadvertent gear retraction occurred in 2005, and following the full command and engineering investigation of the 2005 mishap,

"the command investigation Convening Authority should have followed up and made appropriate recommendations for corrective action, possibly preventing a future incident." (Id., Opinion 11.)  The report further notes while the source of the electrical signal that caused the landing gear to retract is unknown,

> There exists a significant training issue with respect to maintenance publications and the landing gear safety pins. While most aircrewman and all Airframes mechanics have come to understand its function through repeated contact and routine maintenance, at no time are aircrewman nor airframes mechanics formally taught the function of the landing gear safety pin, nor the danger and immediate actions if the pin is not functioning properly. (JAGMAN Final Report, Opinions 6, 10)

The JAGMAN Final Report suggests there may have been preventative measures that the government could have taken to address the landing gear retraction problem.  The "significant training issue" likely refers to government military training that could have prevented future accidents, such as the present one.  Notably, the Report states the electrical problem is unknown.  This will likely require discovery to determine whether the wiring was faulty due to the Defendants' design or manufacture defect.  Overall, the Court finds there is a causal nexus between the allegations against Defendant as the manufacturer of the CH-53E, performed pursuant to U.S. government direction and particular specifications, and Plaintiff's product liability claims.

In conclusion, Defendants have made a sufficient showing that they are people that acted under the direction of a federal officer, that there is a causal nexus between their action and Plaintiff's claims and they can assert a colorable federal defense. Therefore "federal officer" jurisdiction is proper under § 1442(a)(1).

The Court briefly addresses additional grounds for jurisdiction.

///

**Civil Action No. 13-cv-0331-GPC-KSC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B. Federal Question Jurisdiction

Defendant also seeks removal pursuant to 28 U.S.C. § 1441(a), which sets forth the jurisdictional basis for removal of cases where the court has original jurisdiction, also known as federal question jurisdiction. 28 U.S.C. § 1441; 28 U.S.C.A. § 1331 ("[D]istrict courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

Defendant asserts removal is appropriate on federal enclave grounds because the accident in question took place on the Marine Corps Air Station ("MCAS") Miramar, a federal enclave.  Federal enclaves include "numerous military bases, federal facilities, and even some national forests and parks." Azhocar v. Coastal Marine Servs., Inc., 13-CV-155 BEN DHB, 2013 WL 2177784 (S.D. Cal. May 20, 2013)(citing Allison v. Boeing Laser Technical Servs., 689 F.3d 1234, 1235 (10th Cir.2012); see also U.S. Const. art. I, § 8, cl. 1). The Ninth Circuit has indicated that federal courts have federal question jurisdiction over tort claims that arise on "federal enclaves." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1331; Willis v. Craig, 555 F.2d 724, 726 n. 4 (9th Cir.1977) (per curiam); Mater v. Holley, 200 F.2d 123, 125 (5th Cir.1952)).

Plaintiff argues federal enclave jurisdiction does not apply because the tortious conduct occurred not on MCAS Miramar, but during the design and manufacturing of the helicopter and its parts elsewhere. (Pl. Mtn at 23-24.) Defendant responds that Sgt. Fontalvo died while servicing a naval aircraft on a military base, sufficiently satisfying removal on federal enclave grounds. (Def. Mtn. at 20.)

The Court notes neither party raises the procedural defect which ultimately bars removal on federal enclave grounds.  Generally, 28 U.S.C. § 1446 sets forth

12                                              **Civil Action No. 13-cv-0331-GPC-KSC**

the procedural requirements for removing an action to federal court.  Pursuant to these requirements, all defendants must join or consent to a removal petition brought under § 1441. 28 U.S.C. § 1446(b)(2)(A); see Durham , 445 F.3d at 1250 (Removal based on federal enclave grounds required consent of all defendants. ) Hewitt v. City of Stanton, 798 F.2d 1230, 1232 (9th Cir. 1986) (Removal based on federal question jurisdiction requires consent of all defendants.).

The Court finds removal of this action to federal court is improper due to a lack of consent or joinder by all defendants.  Defendants Sikorsky and United Technologies Corporation filed the notice of removal. (Dkt. No. 1.)  Defendant Dupont timely filed a notice of consent to removal. (Dkt. No. 12.)  Two remaining Defendants failed to join or consent to removal.  Although Defendant G.E. Aviations has filed a motion before this Court, the filing does not satisfy the requirement for joinder or consent to removal.  See Andreshak v. Service Heat Treating, Inc., 439 F.Supp.2d 898 (E.D.Wis.2006)("A defendant joins a notice of removal by supporting it in writing," and thus "written support must be communicated to the court within thirty days of the date when the removing defendant was served").

Given the lack of consent, Defendant Sikorsky has failed to meet its burden of proving that removal is proper under § 1441.

### C. Diversity Jurisdiction

A district court has diversity jurisdiction over any civil action where all of the parties are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).  The burden of establishing that diversity jurisdiction exists, and that an action is removable, rests at all times with the proponent of removal. Abrego v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir.2006) (per curiam).  Complete diversity is required for removal of a state court

13                                         **Civil Action No. 13-cv-0331-GPC-KSC**

action to a federal district court.  28 U.S.C. § 1441(b)(2)("A civil action otherwise removable *solely* on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought") (italics added).

The parties do not dispute the amount in controversy exceeds the jurisdictional requirement.  However, Plaintiff argues complete diversity of parties is lacking, and removal is improper because Defendant Sikorsky sought removal prior to Defendant PKL, a citizen of California, receiving service of process. (Pl. Mtn. 3, 5-8.) Plaintiff further argues Defendant PKL is a properly joined defendant and citizen of California, and therefore diversity jurisdiction is destroyed.

The Court notes that diversity jurisdiction is not the sole basis for removal here.  As previously discussed, the Court has jurisdiction pursuant to federal officer removal statute.  The fact that one defendant is a citizen of California does not preclude removal based on other jurisdictional grounds.  For these reasons, the Court declines to address whether removal based on diversity jurisdiction is proper.  In so doing, the Court also refrains from addressing the split in California federal district courts regarding proper application of the "joined and served" requirement that a plaintiff should be afforded a meaningful opportunity to effectuate service on a resident defendant.  See Hoskinson v. Alza Corp., 2010 WL 2652467 (E.D. Cal. July 1, 2010)(remanding case to state court before plaintiff had the opportunity to serve resident forum defendant); compare to Regal Stone Ltd. v. Longs Drug Stores California, L.L.C., 881 F. Supp. 2d 1123, 1127 (N.D. Cal. 2012), motion to certify appeal granted (May 4, 2012)(noting the split in federal district courts as to whether removal on diversity grounds is proper

14                                    **Civil Action No. 13-cv-0331-GPC-KSC**

when a forum defendant is joined but not served and concluding "the statute only prohibits removal after a properly joined forum defendant has been served.")

**D. Pre-Service Removal Defect**

The Court briefly addresses Plaintiff's argument that Sikorsky's pre-service removal was improper. Plaintiff asserts Defendant Sikorsky removed this action prior to receiving service of the state summons and complaint, and therefore Sikorsky was not a proper party before any court with the authority to remove the present action. (Pl. Mtn. at 8-10.) Plaintiff relies on Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999), for the proposition that receipt of a courtesy copy of a complaint, unaccompanied by a summons, does not trigger a defendant's time to remove under § 1446(b). Defendant responds that the notice of removal was proper because the case was pending in the California state court. (Def. Mtn. at 23-24.)

The procedural facts are as follows. On January 25, 2013, Plaintiff filed the complaint in the Superior Court of San Diego. (Notice of Removal, Ex. A.) On February 11, 2013, Defendant Sikorsky filed the notice of removal. (Notice of Removal.) On February 14, 2013, Defendant PKL received service of the state summons and complaint. (Pl. Mtn., Ex. E.) As of March 6, 2013, Defendant Sikorsky had not been served with process of the state summons or the complaint. (Pl. Mtn. n 2.)

Plaintiff's reliance on Murphy Brothers is misplaced and the procedural facts support a finding that removal prior to receiving formal service of process was not improper. The Supreme Court in Murphy Brothers addressed whether a defendant could be "obligated" to remove an action prior to formal service, not whether a defendant is permitted to do so. Regal Stone Ltd. 881 F. Supp. 2d at 1129 (citing Murphy Brothers, 526 U.S. at 353-354). The purpose of § 1446(b)

"assures defendants adequate time to decide whether to remove an action to federal court." Murphy Brothers, 526 U.S. at 354. Moreover, removal is appropriate upon commencement of an action. A defendant seeking to remove a civil action from state court shall file in the district court where such action is pending. 28 U.S.C. § 1446(a). "In California, as in the federal courts, a suit is 'commenced' upon filing." Bush v. Cheaptickets, Inc., 425 F.3d 683, 686 (9th Cir. 2005) (citing Cal. Civ. Proc. Code § 350).

Here, Defendant Sikorsky filed a notice of removal eleven days after the filing of the state court action. Plaintiff admittedly had not served Defendant Sikorsky with the service of summons or the complaint, but it had successfully served Defendant PKL. There is no indication Plaintiff sought to serve other Defendants in this matter. Although it is unclear how Sikorsky came to receive a notice of the complaint, the action was pending in state court upon time of removal. As such, the action was subject to removal. Under these circumstances, and given the purpose of the removal procedural statutes, the Court concludes the notice of removal was not procedurally defective.

## CONCLUSION

For the above reasons, the Court finds it has jurisdiction over this matter pursuant to the federal officer removal statute. Accordingly, the Court **DENIES** Plaintiff's motion to remand and **VACATES** the hearing set for Friday, June 21, 2013.

**IT IS SO ORDERED.**

DATE: June 20, 2013

_____

HONORABLE GONZALO P. CURIEL

**Civil Action No. 13-cv-0331-GPC-KSC**