LARS C. JOHNSON — Cal. SBN 205712
MARSHALL J. SHEPARDSON — Cal. SBN 263637
GRASSINI, WRINKLE & JOHNSON
20750 Ventura Boulevard, Suite 221
Woodland Hills, CA  91364-6235
Tel:    (818) 348-1717
Fax:   (818) 348-7921
Email:  mail@gwandjlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC FONTALVO, a minor, by and through his Guardian Ad Litem, NORMA FONTALVO, individually and as successor in interest to Alexis Fontalvo, deceased, | Case No.:  3:13-cv-00331-GPC-KSC |
| Plaintiffs, | Judge: Hon. Gonzalo P. Curiel |
| vs. | |
| SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC; DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY; PKL SERVICES, INC.; and DOES 1 through 100, Inclusive | **AMENDED COMPLAINT** |
| Defendants. | |

DOMINIC FONTALVO, a minor, by and through his guardian ad litem, NORMA FONTALVO, individually and as successor in interest to Alexis Fontalvo, deceased (hereinafter "Plaintiff"), complains of the defendants, and each of them, and alleges as follows:

///

///

1

# FIRST CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY [DESIGN DEFECT]

### [As Against All Defendants and DOES 1-100, Inclusive]

1.      The true names and capacities, whether corporate, associate, individual, or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names. Each of the defendants designated herein as a DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby to the plaintiff, as herein alleged. Plaintiff will ask leave of court to amend this complaint to show their true names and capacities when the same have been ascertained.

2.      At all times herein mentioned, defendants, and each of them, were the agents, servants, employees, joint venturers, successors-in-interest, assigns, and subsidiaries, each of the other, and at all times pertinent hereto were acting within the course and scope of their authority as such agents, servants, employees, joint venturers, successors-in-interest, assigns, and subsidiaries.

3.      Plaintiff DOMINIC FONTALVO, a minor, whose grandmother, Norma Fontalvo, has been duly appointed as his Guardian ad Litem, is a resident of Houston, Texas.

4.      Plaintiff DOMINIC FONTALVO is the only child of Alexis Fontalvo, the sole and exclusive heir of Alexis Fontalvo, and is the successor in interest to the action of Alexis Fontalvo pursuant to California Code of Civil Procedure, Sections 377.11, 377.20, 377.30 and 377.34, and has filed a Declaration of Successor in Interest under Section 377.32.

5.      At all times mentioned herein, Defendants SIKORSKY AIRCRAFT CORPORATION and SIKORSKY SUPPORT SERVICES, INC. (hereinafter collectively "SIKORSKY") are corporations, at all relevant times herein having

regularly done, and continually and systematically doing business in the State of California. SIKORSKY was at all relevant times herein and is in the business of designing, manufacturing, assembling, installing, inspecting, repairing, maintaining, endorsing, drafting, testing, franchising, supplying, selling, leasing, distributing and placing into the stream of commerce CH-53E Super Stallion helicopters, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

6.     At all times mentioned herein, Defendant UNITED TECHNOLOGIES CORPORATION (hereinafter "UNITED TECHNOLOGIES") is and was a corporation, at all relevant times herein having regularly done, and continually and systematically doing business in the State of California. UNITED TECHNOLOGIES was at all relevant times herein and is in the business of designing, manufacturing, assembling, installing, inspecting, repairing, maintaining, endorsing, drafting, testing, franchising, supplying, selling, leasing, distributing and placing into the stream of commerce CH-53E Super Stallion helicopters, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

7.     At all times mentioned herein, Defendant G.E. AVIATION SYSTEMS, LLC. (hereinafter "G.E. AVIATION SYSTEMS") is and was a corporation, at all relevant times herein having regularly done, and continually and systematically doing business in the State of California.  G.E. AVIATION SYSTEMS was at all relevant times herein and is in the business of designing,

manufacturing, assembling, installing, inspecting, repairing, maintaining, endorsing, drafting, testing, franchising, supplying, selling, leasing, distributing and placing into the stream of commerce CH-53E Super Stallion helicopters, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

8.   At all times mentioned herein, Defendants DUPONT AEROSPACE CO.; and E.I. DUPONT DE NEMOURS AND COMPANY (hereinafter "DUPONT") are each a corporation or other organized business entity, at all relevant times herein having regularly done, and continually and systematically doing business in the State of California.  DUPONT was at all relevant times herein and is in the business of designing, manufacturing, assembling, installing, inspecting, repairing, maintaining, endorsing, drafting, testing, franchising, supplying, selling, leasing, distributing and placing into the stream of commerce CH-53E Super Stallion helicopters, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

9.   At all times mentioned herein, Defendant PKL SERVICES, INC. (hereinafter PKL SERVICES) is and was a corporation, with its principal place of business in San Diego County, at all times relevant times herein was a corporation having regularly done, and continually and systematically doing business in the State of California.  PKL SERVICES was at all relevant times herein and is in the business of designing, manufacturing, assembling, installing, inspecting, repairing, maintaining, endorsing, drafting, testing, franchising, supplying, selling, leasing,

distributing and placing into the stream of commerce CH-53E Super Stallion helicopters, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

10. At all times mentioned herein, Defendants DOES 1 through 100, and each of them, were at all relevant times herein and are in the business of designing, manufacturing, assembling, installing, inspecting, repairing, maintaining, endorsing, drafting, testing, franchising, supplying, selling, leasing, distributing and placing into the stream of commerce CH-53E Super Stallion helicopters, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

11. SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC.; DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY, PKL SERVICES, INC., and DOES 1 through 100, and each of them, prior to March 17, 2011, did design, manufacture, assemble, install, inspect, repair, maintain, endorse, draft, test, franchise, supply, sell, lease, distribute and place into the stream of commerce the subject CH-53E Super Stallion helicopter, including the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, and including but not limited to, the landing gear systems and wiring, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto.

12.     At the time said products left the hands of the defendants, and each of them, said products were defective and unsafe in design and lacked proper warnings.  Specifically, but without limitation, the products were defectively and unsafely designed by defendants and particularly SIKORSKY AIRCRAFT CORPORATION;  SIKORSKY  SUPPORT  SERVICES,  INC.;  UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC and DOES 1 through 100, and each of them, due to the configuration of the landing gear system and appurtenant apparatus, including the wiring harness and wire path leading from the landing gear controls to the landing gear assembly, which juxtaposed a crucial wire bundle and pin 494, which is meant to activate the landing gear, in a position downstream of any and all interlocks and failsafes capable of preventing gear retraction in the event of unplanned energization.

13.     Furthermore, specifically but without limitation, the design of one particular component of the subject CH-53E Super Stallion helicopter, namely the polyimide insulation coating the wires making up the wire path leading from the landing gear controls to the landing gear assembly, by defendants and particularly DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY and DOES 1 through 100, and each of them, was defective and unsafe due to its susceptibility to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat, and disintegration, such design defects being so severe as to have earned the polyimide insulation the nickname of "The Silent Menace" in the aviation and military communities, and which design defects rendered the wiring leading from the landing gear controls prone to arcing events, arc tracking, flashover, deflagration,  and other unplanned conduction and energizing events.

14.     The aforementioned products and their component parts and equipment thereof were to be used by the general public without inspection or analysis of the hazardous condition and/or nature of said products.

15. Decedent Staff Sergeant Alexis Fontalvo was the user of said defective products and their component parts and equipment thereof.

16. On or about March 17, 2011, decedent Staff Sergeant Alexis Fontalvo was using said products, including, but not limited to, the landing gear and appurtenant apparatus, its component parts and equipment thereof, in a manner that was reasonably foreseeable by the defendants, and each of them, when the wire path leading to the landing gear was subject to an unplanned and uncommanded energization, which caused the left main landing gear to retract while decedent Staff Sergeant Alexis Fontalvo was beneath the subject CH-53E Super Stallion helicopter, trapping Staff Sergeant Fontalvo's right arm within the collapsing mechanism, which crushed his arm while simultaneously immobilizing him as the weight of the helicopter, in excess of 16 tons, came down on his body, causing blunt force polytrauma and injuries including but not limited to skull fractures, spinal fractures and separation of Staff Sergeant Fontalvo's brain stem from his spinal cord, such massive injuries being fatal in nature, killing Staff Sergeant Fontalvo as a direct and legal result of the defective and unsafe condition of said products and the component parts and equipment thereof.

17. The use of said products and their component parts and equipment thereof involved a substantial danger that would not be readily recognized by the ordinary user of the products.

18. The use of said products and their component parts and equipment thereof involved a substantial danger that was known or knowable by the defendants, and each of them, in light of the generally recognized and prevailing best scientific knowledge available at the time of the manufacture, sale and distribution of said products.

19. Defendants, and each of them, at all times relevant herein, knew or should have known of the design defects, which constituted a hazard for those using the aforesaid products and component parts and equipment thereof, and

defendants, and each of them, failed to notify, warn and/or protect those using the aforesaid products and the component parts and equipment thereof, of the substantial danger posed by said products, and such failure to warn was one of the legal causes of the accident and injuries and damages to decedent Staff Sergeant Alexis Fontalvo as herein alleged.

20.     As a direct and legal result of the acts and omissions of the defendants, and each of them, decedent Staff Sergeant Alexis Fontalvo was fatally injured and plaintiff has been, and will be, deprived of the love, companionship, comfort, affection, society, solace, guidance and loss of financial support of his father, Staff Sergeant Alexis Fontalvo, and was otherwise generally and specially damaged, both economically and non-economically, in amounts according to proof and within the jurisdiction of this court.

21.     As a further and legal result of the acts and omissions of the defendants, and each of them, and following the death of plaintiff's decedent Staff Sergeant Alexis Fontalvo, plaintiff has incurred funeral and related expenses in a sum as yet unascertained. Plaintiff will pray leave of court to set forth such amount at the time of trial.

22.     Plaintiff DOMINIC FONTALVO has been generally damaged in an amount within the jurisdictional limits of this court.

## SECOND CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY [MANUFACTURE DEFECT]
### [As Against All Defendants and DOES 1-100, Inclusive]

23.     Plaintiff repeats, realleges, and repleads all of the First Cause of Action herein and incorporates the same by reference as though here set forth in full.

24.     At the time said products left the hands of the defendants, and each of them, said products were defective and unsafe in manufacture and lacked proper

warnings. Specifically, but without limitation, the defendants and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, during manufacture of the wiring harness and wire path leading from the landing gear controls to the landing gear assembly omitted to install, attach or place any means of securement of the wire bundles to prevent friction and chafing during use of the subject CH-53E Super Stallion helicopter.

25. The intended result of the design of the landing gear wiring harness and the component and appurtenant equipment thereto in the subject CH-53E Super Stallion helicopter, by the defendants and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, was a mechanism of retraction that could not be activated absent a deliberate commanded energization of pin 494. Due to the defective manufacture of the product, including without limitation the lack of proper securement of the wiring, wiring harness and wire path leading from the landing gear control panel to the landing gear assembly, the subject CH-53E Super Stallion helicopter deviated from this intended result in that said equipment was susceptible to unplanned and uncommanded activation, which resulted in the improper retraction of the landing gear that caused Staff Sergeant Fontalvo to suffer blunt force polytrauma, skull fractures, spinal fractures, brain stem-spinal cord separation and death as described herein.

26. Due to the defective manufacture of the product, including without limitation the lack of proper securement of the wiring, wiring harness and wire path leading from the landing gear control panel to the landing gear assembly, the subject CH-53E Super Stallion helicopter deviated from other CH-53E Super Stallion helicopters in that said equipment was susceptible to unplanned and

uncommanded activation, which resulted in the improper retraction of the landing gear that caused Staff Sergeant Fontalvo to suffer blunt force polytrauma, skull fractures, spinal fractures, brain stem-spinal cord separation and death as described herein.

27.   The intended result of the design of the polyimide insulation on the wiring leading from the landing gear control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter, by the defendants and particularly DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY and DOES 1 through 100, and each of them, was a reliably durable coating that would prevent unplanned energization of any wire to which it was applied.  Due to the defective manufacture of the product, including without limitation its susceptibility to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat, and disintegration, such manufacture defects being so severe as to have earned the polyimide insulation the nickname of "The Silent Menace" in the aviation and military communities, and which manufacture defects rendered the wiring leading from the landing gear controls prone to arcing events, arc tracking, flashover, deflagration, and other unplanned conduction and energizing events, the insulation on the wiring leading from the landing gear control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter deviated from this intended result in that said insulation did not provide a reliably durable coating capable of preventing unplanned energization of the wire, which resulted in the improper retraction of the landing gear that caused Staff Sergeant Fontalvo to suffer blunt force polytrauma, skull fractures, spinal fractures, brain stem-spinal cord separation and death as described herein.

28.   Due to the defective manufacture of the insulation on the wiring leading from the landing gear control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter, the wiring leading from the landing gear

control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter deviated from other wire insulation in that said insulation was susceptible to corrosion, degradation, deterioration, wear, and disintegration, which resulted, on or about March 17, 2011, while decedent Staff Sergeant Alexis Fontalvo was using said products, including, but not limited to, the landing gear and appurtenant apparatus, its component parts and equipment thereof, in a manner that was reasonably foreseeable by the defendants, and each of them, in the wire path leading to the landing gear being subject to an unplanned and uncommanded energization, which caused the left main landing gear to retract while decedent Staff Sergeant Alexis Fontalvo was beneath the subject CH-53E Super Stallion helicopter, trapping Staff Sergeant Fontalvo's right arm within the collapsing mechanism, which crushed his arm while simultaneously immobilizing him as the weight of the helicopter, in excess of 16 tons, came down on his body, causing blunt force polytrauma and injuries including but not limited to skull fractures, spinal fractures and separation of  Staff Sergeant Fontalvo's brain stem from his spinal cord, such massive injuries being fatal in nature, killing Staff Sergeant Fontalvo as a direct and legal result of the defective and unsafe condition of said products and the component parts and equipment thereof.

29.    The use of said products and their component parts and equipment thereof involved a substantial danger that would not be readily recognized by the ordinary user of the products.

30.    The use of said products and their component parts and equipment thereof involved a substantial danger that was known or knowable by the defendants, and each of them, in light of the generally recognized and prevailing best scientific knowledge available at the time of the manufacture, sale and distribution of said products.

31.    Defendants, and each of them, at all times relevant herein, knew or should have known of the defects in manufacture, which constituted a hazard for

those using the aforesaid products and component parts and equipment thereof, and defendants, and each of them, failed to notify, warn and/or protect those using the aforesaid products and the component parts and equipment thereof, of the substantial danger posed by said products, and such failure to warn was one of the legal causes of the accident and injuries and damages to decedent Staff Sergeant Alexis Fontalvo as herein alleged.

32.    As a direct and legal result of the acts and omissions of the defendants, and each of them, decedent Staff Sergeant Alexis Fontalvo was fatally injured and plaintiff has been, and will be, deprived of the love, companionship, comfort, affection, society, solace, guidance and loss of financial support of his father, Staff Sergeant Alexis Fontalvo, and was otherwise generally and specially damaged, both economically and non-economically, in amounts according to proof and within the jurisdiction of this court.

33.    As a further and legal result of the acts and omissions of the defendants, and each of them, and following the death of plaintiff's decedent Staff Sergeant Alexis Fontalvo, plaintiff has incurred funeral and related expenses in a sum as yet unascertained. Plaintiff will pray leave of court to set forth such amount at the time of trial.

34.    Plaintiff DOMINIC FONTALVO has been generally damaged in an amount within the jurisdictional limits of this court.

### THIRD CAUSE OF ACTION

### NEGLIGENT PRODUCTS LIABILITY [NEGLIGENT DESIGN]

### [As Against All Defendants and DOES 1-100, Inclusive]

35.    Plaintiff repeats, realleges, and repleads all of the First and Second Causes of Action herein and incorporates the same by reference as though here set forth in full.

36.    At all times herein mentioned, defendants, and each of them, so negligently, carelessly, recklessly, and with gross negligence designed, manufactured, assembled, installed, inspected, maintained, endorsed, drafted, tested, franchised, supplied, sold, leased, distributed and placed into the stream of commerce, and negligently failed to warn relative to the said products and the component parts and equipment thereof, and otherwise so negligently conducted themselves, so as to directly and legally cause the accident and injuries and damages to plaintiffs as described herein.  Specifically, but without limitation, defendants, and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, negligently designed the subject CH-53E Super Stallion helicopter by failing to ensure that the wiring, wiring harness and wire path leading from the landing gear control panel to the landing gear assembly properly featured interlocks and failsafes downstream of pin 494 that would prevent unplanned or uncommanded activation and retraction of the landing gear assembly.  In doing so, the acts and omissions of defendants, and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, failed to conform to the conduct of a reasonably prudent person and designer under like circumstances.

37.    Furthermore, specifically but without limitation, defendants and particularly DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY and DOES 1 through 100, and each of them, negligently designed the wire insulation in the subject CH-53E Super Stallion helicopter, such that it was unexpectedly susceptible to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat, and disintegration, such negligent design being so severe as to have earned the polyimide insulation

AMENDED COMPLAINT

the nickname of "The Silent Menace" in the aviation and military communities, and which negligent design rendered the wiring leading from the landing gear controls to the landing gear assembly prone to arcing events, arc tracking, flashover, deflagration, or other unplanned conduction and energizing events, and therefore wholly unsuitable for aviation applications. In doing so, the acts and omissions of defendants, and particularly DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY and DOES 1 through 100, and each of them, failed to conform to the conduct of a reasonably prudent person and designer under like circumstances.

38.    Defendants, and each of them, at all times relevant herein, knew or should have known of the design defects, which constituted a hazard for those using the aforesaid products and component parts and equipment thereof, and defendants, and each of them, failed to notify, warn and/or protect those using the aforesaid products and the component parts and equipment thereof, of the substantial danger posed by said products, and such failure to warn was one of the legal causes of the accident and injuries and damages to decedent Staff Sergeant Alexis Fontalvo as herein alleged. In doing so, the acts and omissions of defendants, and each of them, failed to conform to the conduct of a reasonably prudent person and designer under like circumstances.

39.    As a direct and legal result of the acts and omissions of the defendants, and each of them, decedent Staff Sergeant Alexis Fontalvo was fatally injured when the landing gear retracted due to unplanned energization of the wiring leading from the landing gear control panel to the landing gear assembly while decedent Staff Sergeant Fontalvo was beneath the subject CH-53E Super Stallion helicopter, trapping Staff Sergeant Fontalvo's right arm within the collapsing mechanism, which crushed his arm while simultaneously immobilizing him as the weight of the helicopter, in excess of 16 tons, came down on his body, causing blunt force polytrauma and injuries including but not limited to skull

fractures, spinal fractures, brain stem-spinal cord separation, and death, and plaintiff has been, and will be, deprived of the love, companionship, comfort, affection, society, solace, guidance and loss of financial support of his father, Staff Sergeant Alexis Fontalvo, and was otherwise generally and specially damaged, both economically and non-economically, in amounts according to proof and within the jurisdiction of this court.

40.     As a further and legal result of the acts and omissions of the defendants, and each of them, and following the death of plaintiff's decedent Staff Sergeant Alexis Fontalvo, plaintiff has incurred funeral and related expenses in a sum as yet unascertained. Plaintiff will pray leave of court to set forth such amount at the time of trial.

## FOURTH CAUSE OF ACTION

## NEGLIGENT PRODUCTS LIABILITY [NEGLIGENT MANUFACTURE]

### [As Against All Defendants and DOES 1-100, Inclusive]

41.     Plaintiff repeats, realleges, and repleads all of the First, Second and Third Causes of Action herein and incorporates the same by reference as though here set forth in full.

42.     At all times herein mentioned, defendants, and each of them, so negligently, carelessly, recklessly, and with gross negligence designed, manufactured, assembled, installed, inspected, maintained, endorsed, drafted, tested, franchised, supplied, sold, leased, distributed and placed into the stream of commerce, and negligently failed to warn relative to the said products and the component parts and equipment thereof, and otherwise so negligently conducted themselves, so as to directly and legally cause the accident and injuries and damages to plaintiffs as described herein.  Specifically, but without limitation, defendants,   and   particularly   SIKORSKY   AIRCRAFT   CORPORATION;

SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, negligently manufactured the subject CH-53E Super Stallion helicopter by failing to secure, and failing to install any means of securing, the wiring leading from the landing gear control panel to the landing gear assembly so as to prevent friction and chafing of the wiring during use of the subject CH-53E Super Stallion helicopter.  In doing so, the acts and omissions of defendants, and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, failed to conform to the conduct of a reasonably prudent person and manufacturer under like circumstances.

43.   Furthermore, specifically but without limitation, defendants, and particularly DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY and DOES 1 through 100, and each of them, negligently manufactured the wire insulation in the subject CH-53E Super Stallion helicopter, such that it was unexpectedly susceptible to corrosion, degradation, deterioration, wear, alteration upon contact with water, carbonization upon exposure to heat, and disintegration, which negligent manufacture rendered the wiring leading from the landing gear controls to the landing gear assembly prone to arcing events, arc tracking, flashover, deflagration,  and other unplanned conduction and energizing events, and therefore wholly unsuitable for aviation applications.  In doing so, the acts and omissions of defendants, and particularly DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY and DOES 1 through 100, and each of them, failed to conform to the conduct of a reasonably prudent person and manufacturer under like circumstances.

44.   Defendants, and each of them, at all times relevant herein, knew or should have known of the defects in manufacture, which constituted a hazard for

those using the aforesaid products and component parts and equipment thereof, and defendants, and each of them, failed to notify, warn and/or protect those using the aforesaid products and the component parts and equipment thereof, of the substantial danger posed by said products, and such failure to warn was one of the legal causes of the accident and injuries and damages to decedent Staff Sergeant Alexis Fontalvo as herein alleged.  The acts and omissions of defendants, and each of them, failed to conform to the conduct of a reasonably prudent person under like circumstances.

45.    As a direct and legal result of the acts and omissions of the defendants, and each of them, decedent Staff Sergeant Alexis Fontalvo was fatally injured when the landing gear retracted due to unplanned energization of the wiring leading from the landing gear control panel to the landing gear assembly while decedent Staff Sergeant Alexis Fontalvo was beneath the subject CH-53E Super Stallion helicopter, trapping Staff Sergeant Fontalvo's right arm within the collapsing mechanism, which crushed his arm while simultaneously immobilizing him as the weight of the helicopter, in excess of 16 tons, came down on his body, causing blunt force polytrauma and injuries including but not limited to skull fractures, spinal fractures and separation of  Staff Sergeant Fontalvo's brain stem from his spinal cord, and plaintiff has been, and will be, deprived of the love, companionship, comfort, affection, society, solace, guidance and loss of financial support of his father, Staff Sergeant Alexis Fontalvo, and was otherwise generally and specially damaged, both economically and non-economically, in amounts according to proof and within the jurisdiction of this court.

46.    As a further and legal result of the acts and omissions of the defendants, and each of them, and following the death of plaintiff's decedent Staff Sergeant Alexis Fontalvo, plaintiff has incurred funeral and related expenses in a sum as yet unascertained. Plaintiff will pray leave of court to set forth such amount at the time of trial.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE**

**[As Against All Defendants and DOES 1-100, Inclusive]**

47.     Plaintiff repeats, realleges, and repleads all of the First, Second, Third, and Fourth Causes of Action herein and incorporate the same by reference as though here set forth in full.

48.     At all times herein mentioned, defendants, and each of them, so negligently, carelessly, recklessly, and with gross negligence assembled, installed, inspected, maintained,  tested, supplied and repaired said helicopter and its component parts and assemblies and otherwise so negligently conducted themselves, so as to directly and legally cause the accident and injuries and damages to the plaintiffs as described herein.

49.     Specifically, but without limitation, defendants, and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, were negligent in failing to secure, and failing to install any means of securing, the wiring leading from the landing gear control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter so as to prevent friction and chafing of the wiring during use of the subject CH-53E Super Stallion helicopter.  In doing so, the acts and omissions of defendants, and particularly SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC, and DOES 1 through 100, and each of them, failed to conform to the conduct of a reasonably prudent person under like circumstances.

50.     Furthermore, specifically but without limitation, defendants, and particularly PKL SERVICES, INC.,  and DOES 1 through 100, and each of them, negligently failed properly to inspect and maintain the landing gear systems and

wiring, wiring harness, the landing gear assembly and the attendant hardware and appurtenances and component parts and other items and equipment attendant thereto, despite having assumed the duty and responsibility to inspect and maintain the fleet of aircraft that included the subject CH-53E Super Stallion helicopter. This omission by defendants, and each of them, permitted the wiring leading from the landing gear control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter to reach a woeful state of disrepair, in which state said wiring remained at the time it was used by decedent Staff Sergeant Alexis Fontalvo, and which disrepair had rendered the wiring susceptible to unplanned energization. In doing so, the acts and omissions of defendants, and particularly PKL SERVICES, INC., and DOES 1 through 100, and each of them, failed to conform to the conduct of a reasonably prudent person under like circumstances.

51.    As a direct and legal result of the acts and omissions of the defendants, and each of them, decedent Staff Sergeant Alexis Fontalvo was fatally injured when the landing gear retracted due to unplanned energization of the wiring leading from the landing gear control panel to the landing gear assembly while Staff Sergeant Fontalvo was beneath the subject CH-53E Super Stallion helicopter, trapping Staff Sergeant Fontalvo's right arm within the collapsing mechanism, which crushed his arm while simultaneously immobilizing him as the weight of the helicopter, in excess of 16 tons, came down on his body, causing blunt force polytrauma and injuries including but not limited to skull fractures, spinal fractures and separation of  Staff Sergeant Fontalvo's brain stem from his spinal cord, and plaintiff has been, and will be, deprived of the love, companionship, comfort, affection, society, solace, guidance and loss of financial support of Staff Sergeant Alexis Fontalvo, and was otherwise generally and specially damaged, both economically and non-economically, in amounts according to proof and within the jurisdiction of this court.

52.     As a further and legal result of the acts and omissions of the defendants, and each of them, and following the death of plaintiff's decedent Staff Sergeant Alexis Fontalvo, plaintiff has incurred funeral and related expenses in a sum as yet unascertained. Plaintiff will pray leave of court to set forth such amount at the time of trial.

53.     Plaintiff DOMINIC FONTALVO has been generally damaged in an amount within the jurisdictional limits of this court.

## SIXTH CAUSE OF ACTION

### SURVIVOR ACTION PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 377.11, ET. AL.

**[As Against All Defendants and DOES 1-100, Inclusive]**

54.     Plaintiff repeats, realleges, and repleads all of the First, Second, Third, Fourth and Fifth Causes of Action herein and incorporates the same by reference as though here set forth in full.

55.     Plaintiff DOMINIC FONTALVO is the only child of Alexis Fontalvo, and is the sole and exclusive heir of Alexis Fontalvo, and is the successor in interest to the action of Alexis Fontalvo pursuant to California Code of Civil Procedure, Sections 377.11, 377.20, 377.30 and 377.34, and has filed a Declaration of Successor in Interest under Section 377.32.

56.     Prior to the occurrence of this accident, decedent Staff Sergeant Alexis Fontalvo was an able-bodied individual, capable of performing his usual work for an indefinite period of time in the future.

57.     On or about March 17, 2011, Staff Sergeant Alexis Fontalvo was injured and subsequently died as the direct result of the injuries he sustained in the aforementioned accident, and plaintiff DOMINIC FONTALVO brings this survivor action as the successor in interest to the action of Staff Sergeant Alexis

Fontalvo, deceased, pursuant to Code of Civil Procedure sections 377.11, 377.30, and 377.34.

58.     As a legal result of the acts and omissions of the defendants, and each of them, Alexis Fontalvo incurred expenses for medical and related care costs during the period of his disability before he died, all in an amount which is at present unknown, and to his special damages.   Plaintiff will pray leave of court to show the exact amount of said expenses at the time of trial.

59.     Prior to the occurrence of this accident, Alexis Fontalvo was an able-bodied individual, but after said accident was unable to engage fully in his occupation all to Alexis Fontalvo's damage in an amount which is at present unascertained.  Plaintiff will pray leave of court to show the exact amount of lost earnings at the time of trial.   As a further direct result of the actions of defendants, and each of them, Alexis Fontalvo suffered property damage and loss of use of such property.

60.     Plaintiff is informed and believes and thereon alleges that the defendants, and each of them, and their officers, directors and/or managing agents, knew at all relevant times before March 17, 2011, that the subject CH-53E Super Stallion helicopter was defective and/or dangerous and knew would result in injuries or death when sold and/or maintained with defects in design and manufacture which constituted a hazard for those using the aforesaid products or component parts thereof and not recalled.   Plaintiff is further informed and believes and thereon alleges that the conduct of the Defendants as alleged herein was reckless, willful, oppressive, malicious and done with reckless and wanton disregard for the rights and safety of the Plaintiff and/or Plaintiff's decedent with knowledge of the defects at issue, and in conscious disregard of the safety hazards raised by those defects, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

1

*AS TO ALL CAUSES OF ACTION:*

2      1.     For general damages within the jurisdiction of this court;

3      2.     For special damages according to proof;

4      3.     For prejudgment interest;

5      4.     For attorneys' fees according to proof;

6      5.     For costs of suit incurred herein; and

7      6.     For such other and further relief as the court may deem just and

8 proper.

9

*AS TO THE SEVENTH CAUSE OF ACTION:*

10      1.     For general damages within the jurisdiction of this court;

11      2.     For special damages according to proof;

12      3.     For prejudgment interest;

13      4.     For attorneys' fees according to proof;

14      5.     For costs of suit incurred herein;

15      6.     For such other and further relief as the court may deem just and

16 proper; and

17      7.     For exemplary damages.

18

19  DATED: August 22, 2013        GRASSINI, WRINKLE & JOHNSON
                                       A Law Corporation

20

21                                S/ Lars C. Johnson
                By   _____

22                              LARS C. JOHNSON
                             Attorneys for Plaintiffs

23

24

25

26

27

28

AMENDED COMPLAINT

1  LARS C. JOHNSON — Cal. SBN 205712
   MARSHALL J. SHEPARDSON — Cal. SBN 263637
2  GRASSINI, WRINKLE & JOHNSON
   20750 Ventura Boulevard, Suite 221
3  Woodland Hills, CA  91364-6235
   Tel:    (818) 348-1717
4  Fax:   (818) 348-7921
   Email:  mail@gwandjlaw.com
5
   Attorneys for Plaintiff
6

7              **UNITED STATES DISTRICT COURT**

8             **SOUTHERN DISTRICT OF CALIFORNIA**

9   DOMINIC FONTALVO, a minor, by
    and through his Guardian Ad  Litem,
10  NORMA FONTALVO, individually
    and as successor in interest to Alexis
11  Fontalvo, deceased,                          Case No.:  3:13-cv-00331-GPC-KSC
12
                     Plaintiffs,                 Judge: Hon. Gonzalo P. Curiel
13
             vs.
14
15  SIKORSKY AIRCRAFT                            <u>**DEMAND FOR A JURY TRIAL**</u>
    CORPORATION;
16  SIKORSKY SUPPORT SERVICES,
    INC.; UNITED TECHNOLOGIES
17  CORPORATION;
    G.E. AVIATION SYSTEMS, LLC;
18  DUPONT AEROSPACE CO.;
    E.I. DUPONT DE NEMOURS AND
19  COMPANY;
    PKL SERVICES, INC.; and
20  DOES 1 through 100, Inclusive
21                   Defendants.
22

23       Plaintiff s DOMINIC FONTALVO, a minor, by and through his guardian ad

24  litem,  and NORMA FONTALVO, individually and as successor in interest to

25  Alexis Fontalvo, deceased,  hereby demands a trial by jury.

26

27  ///

28  ///

1   DATED:  August 22, 2013        GRASSINI, WRINKLE & JOHNSON
2                                  A Law Corporation

3                                  By    S/ Lars C. Johnson
4                                     _____
                                      LARS C. JOHNSON
5                                     Attorneys for Plaintiffs