FILED

2016 JUN 13 AM 9: 17

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                              DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.F., a minor, by and through his Guardian Ad Litem, TASHINA AMADOR, individually and as successor in interest to ALEXIS FONTALVO, deceased, and T.L., a minor, by and through her Guardian Ad Litem, TASHINA AMADOR,<br><br>            Plaintiffs,<br>v.<br>SIKORSKY AIRCRAFT CORPORATION, et al.,<br><br>            Defendants. | Case No.: 13cv331-GPC(KSC)<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE [Doc. No. 117]** |

Before the Court is a Joint Motion for Determination of Discovery Dispute. [Doc. No. 117.] In the Joint Motion, defendants Sikorsky Aircraft Corporation, Sikorsky Support Services, Inc., and United Technologies Corporation seek an order compelling a third party, the United States Navy, to produce all documents responsive to certain written discovery requests listed in a document subpoena served on the Secretary of the Navy pursuant to Federal Rule of Civil Procedure 45. [Doc. No. 117-1, at pp. 5, 13-14.] In addition, defendants seek an order requiring the Navy to submit for *in camera* review

1

un-redacted copies of certain documents withheld as privileged.[1] For the reasons outlined below, the Court finds that defendants' request for an order compelling the Navy to produce all documents requested by subpoena must be DENIED without prejudice. The Court also finds that defendants' request for an order requiring *in camera* review of documents withheld by the Navy as privileged must be DENIED without prejudice.

## *Background*

Plaintiffs' Amended Complaint arises from a helicopter crash that occurred at Miramar Marine Corps Air Station. [Doc. No. 39, at p. 7.] In the Amended Complaint, plaintiffs allege that the helicopter's landing gear was defective and unexpectedly retracted while Staff Sergeant Alexis Fontalvo was underneath the helicopter. Staff Sergeant Fontalvo was fatally injured during the incident. [Doc. No. 39, at p. 7.] Defendants were allegedly involved in designing and manufacturing the helicopter involved in the accident. [Doc. No. 39, at pp. 2-6.] Plaintiffs' causes of action against defendants include strict products liability (design and/or manufacturing defect); negligent products liability (negligent design and/or manufacturing); and negligence. [Doc. No. 39, at pp. 2-20.] Documents relevant to the parties' claims and defenses are under the custody and control of the United States Navy, which is not a party to the action. [Doc. No. 117-1, at p. 4.]

## *Discussion*

### A.   *Incomplete Responses to Document Requests.*

Defendants served the Navy with their subpoena on December 30, 2015 and the subpoena directed the Navy to produce responsive documents by January 29, 2016. [Doc. No. 117-1, at p. 5.] However, as of the date the Joint Motion was filed, defendants represent that the Navy has not yet produced all documents responsive to Document

---

[1]   Although the subpoena was issued from this Court but identified Washington, D.C. as the place of compliance, the parties stipulated to having the Joint Motion determined here pursuant to Federal Rule of Civil Procedure 45(f). [Doc. No. 114.]

Request Nos. 9, 21, 23, 24, 26, 36, 37, 43, 54, 55, and 57. As a result, defendants seek an order directing the Navy to produce all responsive documents "without further delay." [Doc. No. 117-1, at p. 14.]

Since December 30, 2015, when the Rule 45 subpoena was served, and even prior to that date, the Navy has been locating and producing responsive documents on a rolling basis. At a significant cost of time and manpower, the Navy has already produced thousands of documents. The Navy is also cooperating with the parties in producing a large volume of additional documents that have been archived and maintained by a contractor at an off-site facility. [Doc. No. 117-1, at pp. 4-5.] The volume of documents in this off site facility is "massive," and, as a result, the Navy provided defendants with "spreadsheets indexing the categories of documents located in the archive." [Doc. No. 117-13, at p. 2; Document No. 117-1, at p. 6.] Defendants then reviewed these spreadsheets to provide a more narrowly-tailored list of documents to be produced. [Doc. No. 117-13, at p. 2; Doc. No. 117-2, at p. 2.] The Navy also coordinated physical inspections of helicopters, permitted employees to be interviewed, and made numerous key witnesses available for deposition. [Doc. No. 117, at p. 8; Doc. No. 117-12, at pp. 1-5.] Counsel for the Navy has represented that discussions concerning the production of responsive documents are ongoing and "have not yet reached an impasse." [Doc. No. 117-13, at p. 3.] Moreover, the Court is holding regular Case Management Conferences to ensure that discovery is proceeding at an acceptable pace and without any significant delays.

Under the circumstances presented, the Court finds there is no discovery dispute that requires the Court's intervention at this time. In other words, it is unnecessary at this time for the Court to issue an order directing the Navy to produce any and all responsive documents by a specific date or "without further delay" as defendants have requested. In the future, the parties should only seek the Court's intervention if the Navy has declined to produce specific documents or specific categories of documents known to exist. Of course, before seeking the Court's intervention, the parties must also satisfy the meet and

confer requirements if the Navy declines to produce any specific documents or categories of documents that have been found to exist and that are responsive to the subpoena.

### B. *Documents Withheld by the Navy as Privileged.*

Defendants' Document Request Nos. 45 through 53 seek access to a broad range of investigative materials from the Navy. [Doc. No. 117-5, at pp. 13-16.] Defendants' Document Request No. 46 specifically seeks: "A complete, un-redacted copy of the U.S. Naval Safety Center Aviation Mishap Board (AMB) Investigative Report prepared in connection with the incident and complete, un-redacted copies of all enclosures thereto." [Doc. No. 117-5, at p. 13.]

In response to Document Request No. 46, the Navy said it produced "redacted copies" of its Safety Investigation Report (SIR) into the subject mishap. [Doc. No. 117-5, at p. 13.] The Navy also represented that the redacted version "included all material factual information." [Doc. No. 117-5, at p. 13.] However, the Navy "withheld witness statements and information derived from such statements as privileged safety information not releasable for non-safety purposes. In addition, portions of the SIR containing subjective evaluations, opinions or speculation of the mishap board or endorsers in the chain of command were withheld based on the same privilege." [Doc. No. 117-5, at p. 13.] According to defendants, the Navy did produce two enclosures to the report: "a set of *un-redacted witness statements* and a redacted aeromedical analysis report." [Doc. No. 117-1, at p. 10 (emphasis in original).]

Defendants' Document Request Nos. 57, 58, and 59 further seek production of documents and information about "other incidents" that may be related to the mishap that is the subject of this lawsuit. The Navy also claimed privilege and withheld and redacted documents in response to these requests. [Doc. No. 117-1, at p 13; Doc. No. 117-5, at pp. 15-16.]

In the Joint Motion, defendants argue that the Navy has erroneously relied too broadly on the "safety privilege," and requests that the Court conduct an *in camera* review of all of the above-described documents in order to assess the Navy's privilege

claim and to determine whether the Navy has waived the privilege. [Doc. No. 117-1, at p. 11.] Defendants believe the Navy "undermin[ed]" its privilege claim by producing unredacted witness statements with the SIR. Defendants contend these redacted witness statements show they were not in fact obtained by assurances of confidentiality even though confidentiality is the rationale for the claimed privilege, so the privilege has been waived. [Doc. No. 117-1, at p. 11-12.]

Defendants further contend in the Joint Motion that the Navy waived any privilege it might have had as to causative factors for the mishap, because it previously disclosed "its accepted cause factors" to investigators for the Naval Criminal Investigative Services (NCIS) and because it was inconsistent in making redactions to the SIR. [Doc. No. 117-1, at p. 12.] In addition, citing Federal Rule of Civil Procedure 26(b)(5)(A), defendants argue that the Navy has not supported its privilege claim with enough information to "enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A). [Doc. No. 117-1, at p. 11.]

In the Joint Motion, the Navy has represented that it did not produce the disputed documents or portions thereof, because it believes they are privileged under clearly established law. The Navy also argues that the privilege "should be particularly respected because a wealth of information regarding the cause of the mishap is available to [defendants] through other sources, including the NCIS Reactive Investigation Report, the Wuthrich Mechanical Report, and the Materials Engineering Report prepared by [defendants'] own engineers."[2] [Doc. No. 117, at p. 8; Doc. No. 117-12, at pp. 2-3.]

///

---

[2] Along with their Joint Motion, the parties submitted copies of these documents for the Court's consideration. Because of the confidential nature of these documents, the parties also submitted a Motion to File Documents Under Seal. [Doc. No. 115.] However, a review of these documents by the Court at this time would not be helpful or necessary to resolve the issues raised in the parties' Joint Motion. As a result, these documents will be returned to the parties and will not remain on file with the Court.

Federal Courts have long recognized a privilege in civil litigation for at least portions of accident investigation reports and other investigative materials gathered or prepared as a result of a mishap involving a military aircraft. For example, under the state secrets doctrine, the Supreme Court has recognized that national security interests may prevent adjudication of claims involving state secrets or may result in the exclusion of critical evidence in a civil case which results in the dismissal of claims. *Totten v. United States*, 92 U.S. 105, 107 (1876); *United States v. Reynolds*, 345 U.S. 1, 73 (1953). The *Reynolds* case involved the crash of a military aircraft that was carrying secret electronic equipment. *Id.* at 3. After the crash, the estates of three civilian observers killed in the crash brought claims against the government and subpoenaed the official accident investigation report prepared by the Air Force, as well as statements made by three surviving crew members during the investigation. *Id.* at 4-5. The Air Force filed a motion to quash the subpoena and made a formal claim of privilege as to the report and the statements but offered to make the three crew members available for examination by the plaintiffs "as to all matters except those of a 'classified nature.'" *Id.* at 3-5. The Supreme Court upheld the government's privilege claim under the state secrets doctrine, because "there was a reasonable danger that the accident investigation report would contain references to the secret electronic equipment which was the primary concern of the mission." *Id.* at 10-11.

Federal Courts have also long recognized a limited privilege for portions of military accident investigation reports prepared to evaluate and improve safety following a mishap involving a military aircraft. In *Machin v. Zuckert*, 316 F.2d 336 (1963), for example, the only survivor of the crash of a military aircraft filed suit against the manufacturer and subpoenaed a copy of the investigative report prepared by the military "immediately after the accident." *Id.* at 337. The military filed a motion to quash the subpoena. Affidavits submitted in support of the motion explained that disclosure of the investigative report would be harmful to the military's flight safety program, which had succeeded in decreasing the rate of accidents, but depended "in

large part on the ability of the investigators to get full information on the cause of any accident." *Id.* at 339. "[T]he investigators encourage frank and full cooperation by means of promises that witnesses' testimony will be used solely for the purposes of flight safety and will not be revealed to persons outside the [military]. . . . [I]f investigators were unable to give such assurances, testimony in many instances would be less than fully factual and the determination of the exact causative factors would be jeopardized, thus seriously hindering the accomplishment of prompt corrective action designed to preclude recurrences of similar accidents. Technical representatives of the aviation industry currently assisting in aircraft accident investigations could not be expected to find their company at fault if their reports could be used in actions against their companies." *Id.*

In *Machin v. Zuckert*, the District of Columbia Circuit held that military accident investigation reports are entitled to a limited privilege, especially when the government is not a party to the action. *Id.* at 339. The privilege extends to "any portions of the report reflecting [military] deliberations or recommendations as to policies that should be pursued." *Id.* The privilege also covers "any conclusions that might be based in any fashion" on privileged information and the testimony of private parties who participated in the investigation with assurances of confidentiality. *Id.* at 339-340. However, "certain portions of the report could be revealed without in any way jeopardizing the future success of [military] accident investigations." *Id.* at 340. For example, the District of Columbia Circuit concluded that factual findings of military mechanics who examined the wreckage should not be withheld as privileged. *Id.* "Their investigations and reports would not be inhibited by knowledge that their conclusions might be made available for use in future litigation, and their findings may well be of utmost importance" in a civil lawsuit. *Id.* "If the mechanics expressed any 'opinions' or 'conclusions' as to possible defects in the [subject aircraft] that might have been due to the negligence of [the manufacturer]," these would not be considered privileged. *Id.* at 341.

1  A later case entitled *Brockway v. Department of the Air Force*, 518 F.2d 1184
2  (1975), was brought pursuant to the Freedom of Information Act (FOIA) by a father
3  seeking access to certain witness statements in order to learn the cause of an aircraft
4  crash that killed his son during a military training exercise.[3] *Id.* at 1185. The Eighth
5  Circuit explained that Air force regulations required two separate and independent
6  investigations into the crash: (1) a confidential, safety investigation "for the sole
7  purpose of accident prevention"; and (2) a collateral investigation "to obtain and
8  preserve all available evidence for use in claims, litigation, disciplinary action, and
9  adverse administrative proceedings, and for all other purposes except for safety and
10 accident prevention purposes." *Id.* The purpose for this "dual investigation" is to
11 encourage witnesses to testify freely and frankly during the safety investigation in
12 confidence without fear of disciplinary action or other adverse consequences. *Id.*
13 According to the Air Force, these procedures contribute to a reduction in the frequency
14 of accidents. *Id.* at 1186.

15  The plaintiff in B*rockway v. Department of the Air Force*, 518 F.2d at 1184, was
16 given access to portions of both the collateral report and the safety report that did not
17 include opinions, conclusions, and recommendations. *Id.* at 1186. The Air Force also
18 offered to allow each of the witnesses to review their statements and then decide
19 whether they wished to reveal their testimony to the plaintiff. *Id.* However, the Air
20 Force argued that the witness statements were given in confidence during the course of

---

[3] FOIA cases are instructive, because FOIA's Exemption 5 "allows agencies to withhold documents protected by traditional discovery privileges." *Loving v. Department of Defense*, 550 F.3d 32, 36 (D.C. Cir. 2008). For example, in *United States v. Weber Aircraft Corp.*, 465 U.S. 792 (1984), which was a FOIA action, the Supreme Court upheld a privilege claim as to confidential statements obtained during the investigation of an air crash by the Air Force pursuant to the privilege outlined in *Machin v. Zukert*, 316 F.2d at 336, and FOIA's Exemption 5. *Id.* at 802-803. In *Weber*, the Supreme Court also said that FOIA could not be used to obtain access to "material that is normally privileged" in order to "supplement civil discovery." *Id.* at 801.

the safety investigation and were therefore immune from discovery in litigation. *Id.* at 1187. Citing FOIA and the executive privilege for witness statements and other safety materials discussed in *Machin v. Zuckert*, 114 U.S. App. D.C. 335, the Eighth Circuit agreed with the Air Force "[o]n the narrow facts of the case," because it was convinced that the deliberative processes of the Air Force "in establishing appropriate safety policies" would "be best protected by permitting these witness statements to be exempted from disclosure." *Id.* at 1194. However, the Eighth Circuit acknowledged that "purely factual material" in the reports was discoverable to the extent it was "in a form that is severable without compromising the private remainder of the documents." *Id.*

Similarly, in *Badhwar v. United States Department of the Air Force*, 829 F.2d 182 (D.C. Cir. 1987), which was also a FOIA action, the District of Columbia Circuit concluded that confidential statements provided by third party witnesses to the military accident investigative boards could be withheld from disclosure under the privilege set forth in *Machin v. Zuckert*, 316 F.2d at 336 and FOIA's Exemption 5. *Id.* at 184-185. The District Court of Columbia Circuit in *Badhwar* also upheld the privilege as to confidential witness statements by government employees, and factual statements submitted confidentially by contractors' representatives. *Id.* at 184-185.

Here, the Court is unconvinced at this time by defendants' arguments that the Navy's privilege claims are too broad or have been "undermined" or waived. First, defendants did not cite, and the Court was unable to locate, any relevant case law indicating the Navy's privilege could be waived by producing some witness statements and not others. Rather, the case law indicates that some witness statements may be privileged while others are not. Case law further indicates that witnesses who gave confidential statements during the course of a safety investigation could later be given the option to allow disclosure of their statements to third parties outside the military if they could do so without revealing military secrets. Second, it is unclear at this time why the Navy produced some documents or portions of documents and withheld others

as privileged. As discussed more fully below, the Navy has only made general objections to full production of the disputed documents or portions thereof based on privilege and has not submitted a formal privilege claim to the Court that is supported by a privilege log and/or an affidavit or affidavits signed by appropriate government officials with authority to claim the privilege. Under these circumstances, it is not possible for the Court to reach any conclusions as to whether the privilege applies to any particular document or any portion of a document. In this regard, the Court does agree with defendants' contention that the Navy has not supported its privilege claim with enough information to "enable other parties to assess the claim" as required by Federal Rule 26(b)(5)(A).

C.  *Plaintiff's Request for an In Camera Review.*

As noted above, defendants argue that the Court should conduct an *in camera* review of the SIR to assess the Navy's claim of privilege and to determine whether the Navy has waived the privilege. The Navy objects to an *in camera* review of an un-redacted version of the SIR and its enclosures, because such a review implies "without basis that the Navy is abusing the privilege." [Doc. No. 117-12, at p. 6.] According to the Navy, there is no basis to even suggest it has abused the safety privilege, because it has "made great effort to cooperate" and provide the parties with all relevant, non-privileged information even though it is not a party to this action. [Doc. No. 117-12, at p. 6 n.3.] In addition, the Navy argues that defendants have access to "a wealth of information regarding the cause of the mishap" from other sources, including an NCIS Reactive Investigation Report, numerous witness statements, a Mechanical Analysis Report outlining troubleshooting tests performed on the helicopter involved in the incident, and extensive testing of certain components of the helicopter completed by defendants' own engineers shortly after the incident. [Doc. No. 117-12, at pp. 7-8.]

Based on a review of relevant case law, an *in camera* review of the disputed documents would not be appropriate at this time. In *United States v. Reynolds*, 345 U.S. 1, the Supreme Court provided some procedural guidance for future cases

involving privilege claims by the military. First, the Supreme Court in *Reynolds* indicated that Federal Courts are "in no position to decide" that a particular document is privileged until the military makes "a formal claim of privilege." *Id.* at 10. Second, when a formal claim of privilege is made, the Supreme Court in *Reynolds* said it is not always necessary to consider evidence *in camera* to sustain a claim of privilege. *Id.* "It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. . . . In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate." *Id.*

In *Machin v. Zuckert*, 316 F.2d at 336, the District of Columbia Circuit concluded that *in camera* review was necessary under the particular circumstances of that case, because it was too difficult to draw the line between privileged and un-privileged information "without reviewing the reports themselves in their entirety." *Id.* at 341. The District of Columbia Circuit also noted that "in contrast to *Reynolds*, [which involved matters of national security,] no substantial harm could result from submission of the report to judicial scrutiny" in order to decide matters of privilege. *Id.*

In other cases, the District of Columbia Circuit has instructed what is required to assert common law privileges, such as the executive and deliberative process privileges: "(1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *See, e.g., Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000).

In the context of a FOIA action, "several general principles guide the court in its review" of privilege claims involving a government agency. "First, the agency has the burden of justifying non-disclosure by establishing the applicability of the claimed

exemption to each document or portion thereof that is withheld. . . ." *Ashley v. U.S. Dept. of Labor*, 589 F.Supp. 901, 905-906 (D.C. 1983). "Second, the agency must sustain its burden of proof through submission of detailed affidavits which identify the documents at issue and why they fall under the claimed exemption." *Id.* at 906. "The court must conduct a *de novo* review of the agency's exemption claims, but generally should not do so on the basis of *in camera* review of the disputed documents; it should do so on the basis of the agency's affidavits. [Citations omitted.] If the affidavits are specific, clear, and reasonably detailed, and there is no evidence in the record contradicting them or demonstrating agency bad faith, then the court need not question the veracity of the affidavits and must accord them substantial weight in its decision." *Id.* at 906, 910.

On a number of occasions and in different contexts, the Ninth Circuit has indicated that a party seeking an *in camera* review to challenge a privilege claim must present a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Rock River Communications, Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 353 (9th Cir. 2014), quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1074-1075 (9th Cir.1992).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). However, the scope of discovery must be "proportional to the needs of the case" and must take into consideration "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). In addition, "[o]n motion *or on its own*, the court must limit discovery otherwise allowed by [the Federal Rules] or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. . . ." Fed.R.Civ.P. 26(b)(C) (emphasis added). Under Federal

Rule 45, the Court may also modify or quash a subpoena that is overly burdensome or requires disclosure of privileged matter. Fed.R.Civ.P. 45(3)(1)&(3).

Here, the Navy has not asserted a formal privilege claim as to any of the disputed documents. Rather than making a formal claim of privilege supported by affidavits and an index or privilege log, the Navy simply produced some redacted documents and apparently withheld others. It is unclear why the Navy elected to proceed with an informal, unsupported claim of privilege. However, the Court notes that the Navy has been very cooperative with the parties in a number of ways and has obviously made a good faith attempt to ensure that the parties obtain the documents and information they need to resolve the matters at issue in this case. The Navy has not only provided the parties with access to a voluminous number of documents, it has also made helicopters and key witnesses available for interviews and depositions. [*See, e.g.*, Doc. No. 117-12, at pp. 2-4.] As a result, the Court will not question the Navy's motives for electing not assemble and submit a formal privilege log and an appropriate affidavit to support its privilege claim. Without more, the Court assumes the Navy did not assert a formal privilege claim because it was simply attempting to make as much information available to the parties as quickly as possible without incurring the additional time and expense necessary to do so.

Given the law that clearly supports the Navy's privilege claim, as well as the large volume of documents and information already made available to the parties by the Navy from various sources, the Court questions the need for the Navy, which is not a party to the action, to incur the additional time and expense that will undoubtedly be necessary to present the parties and the Court with a formal, detailed privilege claim addressing all disputed documents. The Navy has argued convincingly that "a wealth of information" has already been made available to defendants from other sources, particularly about the purported cause or causes of the crash. [Doc. No. 117, at p. 8; Doc. No. 117-12, at pp. 2-3.] As a result, the Court also questions "whether the burden or expense" of requiring the Navy to assemble a formal, detailed privilege claim for evaluation by the Court

"outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Without more, defendants' need for the documents in question seems to be superfluous.

In sum, under the circumstances presented, it would not be appropriate for the Court to order the *in camera* review that defendants have requested. The Court is "in no position to decide" that a particular document is privileged unless the military makes "a formal claim of privilege." *United States v. Reynolds*, 345 U.S. at 10. Nor would it be appropriate for the Court to order the Navy to submit a detailed, formal privilege claim for consideration at this time. Further, the Court has no reason to conclude the Navy's privilege claim is overly broad or unfounded. As a result, the Court declines to place a further burden on the Navy to provide a detailed justification for its privilege claim.

To the extent defendants continue to believe the Navy's privilege claim is overly broad, the Court's view is that the burden should be placed on defendants to meaningfully meet and confer with the Navy in order to determine whether there is a viable basis for further litigation of this issue. If, for example, defendants discover a good faith and well-supported factual basis for believing the Navy's privilege claim has resulted in making specific, non-privileged evidence essential to their defense unavailable, defendants may seek relief in another joint motion. However, defendants are forewarned that the Court will seriously consider imposing monetary sanctions under Federal Rule 37 if the motion lacks specificity, is speculative or unsupported, and is not decided in their favor. If the parties do submit another joint motion challenging the Navy's privilege claim as to the same disputed documents in the future, the Navy is strongly advised to assemble and present the Court with a formal, well-supported privilege claim.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED THAT:

(1) Defendants' request for an order compelling the Navy to produce all documents requested by subpoena is DENIED without prejudice; and

/ / /

(2) Defendants' request for an order requiring *in camera* review of documents withheld by the Navy as privileged is DENIED without prejudice.

IT IS SO ORDERED.

Dated: June 13, 2016

Hon. Karen S. Crawford
United States Magistrate Judge