UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIC FONTALVO, a minor, by and through his Guardian Ad Litem, TASHINA AMADOR, individually and as successor in interest in Alexis Fontalvo, deceased, and TANIKA LONG, a minor, by and through her Guardian ad Litem, TASHINA AMADOR,<br><br>        Plaintiffs,<br><br>v.<br><br>SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC; DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY; PKL SERVICES INC., and DOES 1 through 100, Inclusive,<br><br>        Defendants. | Case No.: 3:13-cv-00331-GPC-KSC<br><br>**ORDER GRANTING DEFENDANT PKL SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 135.]** |

  Before the Court is Defendant PKL Services, Inc.'s ("Defendant's" or "PKL's") motion for summary judgment on Plaintiffs Dominic Fontalvo, a minor, by and through

his Guardian Ad Litem, Tashina Amador, individually and as successor in interest in Alexis Fontalvo, deceased, and Tanika Long, a minor, by and through her Guardian Ad Litem, Tashina Amador's (collectively, "Plaintiffs'") Second Amended Complaint ("SAC"). (Dkt. No. 135.)[1] Plaintiffs do not oppose PKL's motion for summary judgment. (Dkt. No. 138.) The Court deems PKL's motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having reviewed the motion and the applicable law, and for the reasons set forth below, the Court **GRANTS** PKL's motion for summary judgment on Plaintiffs' SAC.

## FACTUAL BACKGROUND

This action arises from the March 17, 2011 death of United States Marine Corps ("USMC") Staff Sergeant Alexis Fontalvo ("Decedent") in a helicopter accident. (Dkt. No. 71, SAC ¶ 17.) Plaintiff Dominic Fontalvo, a minor, and Tanika Long, a minor, bring this action by and through their mother and Guardian ad Litem, Tashina Amador. (*Id.* ¶¶ 3–5.)

Plaintiffs allege the helicopter accident at issue occurred "when the wire path leading to the landing gear was subject to an unplanned and uncommanded energization, which caused the left main landing gear to retract while decedent . . . was beneath the subject CH-53E Super Stallion helicopter." (*Id.* ¶ 16.) According to Plaintiffs, the helicopter crushed Decedent's arm, immobilizing him as the weight of the helicopter, which exceeded sixteen tons, "came down on his body." (*Id.*) Decedent sustained "blunt force polytrauma and injuries including but not limited to skull fractures, spinal fractures and separation of [Decedent's] brain stem from his spinal cord, such massive injuries being fatal in nature." (*Id.*)

With respect to PKL, Plaintiffs allege PKL

> failed properly to inspect and maintain the landing gear systems and wiring, wiring harness, the landing gear assembly and the attendant hardware and appurtenances

---

[1] Citations to the record are based upon the pagination generated by the CM/ECF system.

and component parts and other items and equipment attendant thereto, despite
having assumed the duty and responsibility to inspect and maintain the fleet of
aircraft that included the subject CH-53E Super Stallion helicopter.

(*Id.* ¶ 51.) These alleged omissions "permitted the wiring leading from the landing gear control panel to the landing gear assembly in the subject CH-53E Super Stallion helicopter to reach a woeful state of disrepair," which "rendered the wiring susceptible to unplanned energization." (*Id.*)

PKL has proffered evidence showing that PKL had a limited role with respect to maintaining the helicopter, contrary to Plaintiffs' allegations. PKL was obligated only to complete the Phase A, B, C, and/or D maintenance as prescribed by the RESET Report provided by the USMC. (Dkt. No. 135-1, Defendant PKL Services, Inc.'s Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("Def.'s SSUF") ¶ 11.)[2] The RESET Report is comprised of maintenance inspection cards which provide PKL with specific instructions on what tasks should be performed under each phase of maintenance. (*Id.*) PKL was not asked to perform any maintenance activities on the section of defective Kapton wire which allegedly caused Decedent's death. (*Id.* ¶¶ 12–13.) Nor did PKL perform any maintenance activities on that section of Kapton wire. (*Id.*) The Kapton wire which allegedly reached a state of disrepair was located at the top of the fuselage of the helicopter. (*Id.* ¶ 14.) No aspect of the landing gear system including the subject Kapton wire was a part of the Phase A, B, C, and/or D maintenance. (*Id.* ¶¶ 15–18.)

At the time of Decedent's death, there was a fleet-wide plan to replace Kapton wiring in aircraft similar to the subject helicopter. (*Id.* ¶ 19.) The program, separate and apart from PKL's maintenance under the RESET Report, is a three-phased program that has never been fully funded. (*Id.* ¶ 20.) The "harness of wires" involved in Decedent's

---

[2] References to paragraphs of PKL's Separate Statement of Undisputed Material Facts ("SSUF") incorporate PKL's citations to the record contained therein.

death was a part of the third phase of the Kapton wiring replacement program which was uncompleted on the date of the incident. (*Id.* ¶¶ 21–22.)

## PROCEDURAL BACKGROUND

On January 25, 2013, Plaintiffs filed this action in California Superior Court. (Dkt. No. 1, Ex. A.) On February 11, 2013, Defendants Sikorsky Aircraft Corporation, Sikorsky Support Services, Inc., and United Technologies Corporation removed this action to federal court. (Dkt. No. 1.) After this Court denied Plaintiffs' motion to remand, (Dkt. No. 31), and granted Defendant GE Aviation's motion to dismiss Plaintiffs' Complaint, (Dkt. No. 38), Plaintiffs filed an Amended Complaint on August 22, 2013. (Dkt. No. 39.) The Amended Complaint alleged six separate causes of action: (1) strict products liability under a design defect theory; (2) strict products liability under a manufacturing defect theory; (3) negligent products liability under a negligent design theory; (4) negligent products liability under a negligent manufacturing theory; (5) negligence; and (6) a survivor action pursuant to California Code of Civil Procedure § 377.11 *et seq.* (*See* Dkt. No. 39.)

On September 5, 2013, Defendant E.I. Du Pont De Nemours and Company ("E.I Du Pont") filed a motion to dismiss Plaintiffs' sixth cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 41.) Defendants Sikorsky Aircraft Corporation, Sikorsky Support Services, Inc., United Technologies Corporation, and G.E. Aviation Systems, LLC filed two separate notices of joinder to Defendant E.I. Du Pont's motion to dismiss. (Dkt. Nos. 43, 44.)

Also on September 5, 2013, Defendant PKL Services, Inc. filed a separate motion to dismiss the first through fourth and sixth causes of action against PKL as alleged in Plaintiffs' Amended Complaint. (Dkt. No. 42.) PKL joined and incorporated by reference Defendant E.I. Du Pont's motion to dismiss Plaintiffs' sixth cause of action. (Dkt. No. 42-1 at 8–9.)

On June 20, 2014, the Court denied Defendant E.I. Du Pont's motion to dismiss Plaintiffs' sixth cause of action, granted Defendant PKL's motion to dismiss Plaintiff's

first through fourth causes of action, and denied Defendant PKL's motion to dismiss Plaintiffs' sixth cause of action. (Dkt. No. 53.)

On October 9, 2014, the Court granted Plaintiffs' unopposed motion for leave to amend their Amended Complaint. (Dkt. No. 70.) Accordingly, on October 9, 2014, Plaintiffs filed their SAC against Defendants Sikorsky Aircraft Corporation, Sikorsky Support Services, Inc., United Technologies Corporation, G.E. Aviation Systems, LLC, Du Pont Aerospace Co., E.I. Du Pont de Nemours and Company, and PKL Services, Inc. (Dkt. No. 71, SAC.) In their SAC, Plaintiffs asserted two claims against PKL: (1) negligence and (2) a survivor action pursuant to California Code of Civil Procedure § 377.11 *et seq.* (*Id.* ¶¶ 48–60.) The survivor action was subsequently dismissed with prejudice pursuant to the parties' stipulation. (Dkt. No. 119.) Only Plaintiffs' negligence claim remains against PKL. (*See* SAC ¶¶ 48–53.)

On March 29, 2017, PKL filed a motion for summary judgment on Plaintiffs' remaining negligence claim against PKL. (Dkt. No. 135.) On April 21, 2017, Plaintiffs filed a notice of non-opposition to PKL's motion for summary judgment. (Dkt. No. 138.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing

sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

The elements of a negligence claim are: (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury. *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (Cal. 1996). PKL contends that summary judgment is appropriate because PKL did not owe Decedent a duty to maintain or inspect the helicopter beyond what was prescribed in the RESET Report, because Decedent's injuries were not caused by any act or omission of PKL, and because PKL is entitled to the government contractor defense. (DKt. No. 135 at 9–11.)

////

////

**A. Duty of Care**

The existence of a duty of care is a question of law for the court. *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 819 (Cal. 1997). Here, Plaintiffs allege PKL should have inspected or maintained a portion of the helicopter outside of the scope of the areas described in the RESET Report.[3] (SAC ¶ 51; Dkt. No. 153 at 9.) The undisputed facts show that PKL was obligated only to complete the Phase A, B, C, and/or D maintenance as prescribed by the RESET Report provided by the USMC. (Def.'s SSUF ¶ 11.) The maintenance inspection cards in the RESET Report delineated specific tasks PKL should perform under each phase of maintenance. (*Id.*) PKL was not asked to, and did not perform any maintenance activities on the section of defective Kapton wire which allegedly caused Decedent's death. (*Id.* ¶¶ 12–14.) No part of the Phase A, B, C, and/or D maintenance involved any aspect of the landing gear system which included the allegedly defective Kapton wire. (*Id.* ¶¶ 15–18.) Accordingly, PKL had no duty or authority to inspect or perform maintenance on the portion of the helicopter at issue in Plaintiffs' SAC. In light of the above, the Court concludes that summary judgment is proper on Plaintiffs' negligence claim against PKL.[4]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant PKL Services, Inc.'s motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 23, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

[3] Plaintiffs do not allege that PKL was negligent in performing the maintenance activities prescribed by the RESET Report.

[4] Having concluded that PKL did not owe Decedent a duty to inspect or maintain any portion of the helicopter other than what was specified in the RESET Report, the Court does not need to address the issue of proximate cause or the government contractor defense.