**James W. Hunt – SBN 122582**
james.hunt@fitzhunt.com
**Christopher S. Hickey – SBN 198938**
christopher.hickey@fitzhunt.com
**FITZPATRICK & HUNT,**
**PAGANO, AUBERT, LLP**
633 West Fifth Street, 60th Floor
Los Angeles, CA 90071
Tel.: (213) 873-2100 / Fax: (213) 873-2125

Attorneys for Defendants
**SIKORSKY AIRCRAFT CORPORATION**
**AND UNITED TECHNOLOGIES CORPORATION**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.F., a minor, by and through his Guardian Ad Litem, TASHINA AMADOR, individually and as successor in interest to Alexis Fontalvo, deceased, and T.L., a minor, by and through her Guardian Ad Litem, TASHINA AMADOR,<br><br>     Plaintiffs,<br><br>vs.<br><br>SIKORSKY AIRCRAFT CORPORATION, et al.,<br><br>     Defendants. | Case No. 13-cv-00331-GPC-KSC<br><br>Judge:  Hon. Gonzalo P. Curiel<br>Magistrate:  Hon. Karen S. Crawford<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SIKORSKY'S MOTION *IN LIMINE* NO. 1 – MOTION TO EXCLUDE EVIDENCE RELATED TO PLAINTIFFS' FAILURE TO WARN CLAIM**<br><br>*[Filed Concurrently with Notice of Motion and Motion; Declaration of Christopher S. Hickey]*<br><br>Date:   April 6, 2018<br>Time:   1:30 p.m.<br>Courtroom: 2D |

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court awarded summary judgment in favor of Sikorsky on Plaintiffs' failure to warn claim, finding that, as a matter of law, "Fontalvo *actually knew* that it was dangerous to pull a resisting pin," and he was therefore adequately warned of this potential danger.  (ECF No. 216, "MSJ Order," at p. 46, emphasis in original.) This Court assessed Plaintiffs' evidence that "there was no such instruction in any manual; that aircrewman or airframes mechanics were not 'formally taught' not to pull a resisting pin; and that a large group of Fontalvo's peers were never taught not to do so until after Fontalvo's death," and ultimately concluded that "[n]one of that evidence refutes the assertion that Fontalvo actually knew that he should never pull out a resisting safety pin because [Jeremiah] Wilcox told him so."  (*Id*.)

Despite this Order, Plaintiffs have designated deposition testimony of other Marine Corps personnel ("Fontalvo's peers") regarding their own training and understanding of the dangers presented by a stuck landing gear safety pin, as well as evidence about warnings provided in the manuals regarding landing gear safety pins.[1]  However, as this Court ruled in its MSJ Order, evidence of other individuals' training and/or experience, as well as evidence of instructions provided in the manuals, has no bearing on what Sgt. Fontalvo knew and had been taught prior to the incident.  As a result, such evidence is not relevant to any claim or defense in this case, and must be excluded under Rules 401 and 402.  Furthermore, such evidence will only serve to confuse and mislead the jurors, and thus should also be excluded under Rule 403 as unfairly prejudicial to Sikorsky.  Specifically, evidence that should be excluded includes:

---

[1] Sikorsky also designated certain testimony of Marine Corps personnel regarding their training on the dangers involved in pulling out a resistant stuck landing gear pin, as well as warnings in the manuals.  However, in the event this motion *in limine* is granted, Sikorsky will not present that testimony to the jury.  It is only if the Court denies this motion that Sikorsky will present countervailing evidence to the jury on these issues.

- **Training received by other Marines regarding the landing gear safety pin and their understanding of the danger of pulling a resisting safety pin;**
- **Warnings related to the landing gear safety pin in Navy manuals;**
- **Sikorsky's involvement in the content of the Navy's manuals;**
- **Warnings, or lack of warnings, provided by Sikorsky to the Navy regarding the landing gear system; and**
- **The experience of other Marines with regard to safety pins offering resistance.**

### A.    Training of Other Marines

Plaintiffs have designated the testimony of Marine Corps personnel Charles Coffin, Justin Brown, Joshua Perkins, Evan Shelton and Micah Hamilton on their own training regarding the danger of pulling out a stuck landing gear safety pin. (Coffin Dep. at 61:23-62:5; Brown Dep. at 99:18-100:1; Perkins Dep. at 47:24-48:18; Shelton Dep. at 41:6-42:5, 66:19-68:3, 90:7-11, 161:12-162:16; Hamilton Dep. at 42:7-19, designated by Plaintiffs and collectively attached as Ex. A to Hickey Decl.)   Sikorsky presumes Plaintiffs intend to argue that, because these individuals previously testified that they were not taught the dangers of pulling out a resisting safety pin, perhaps Sgt. Fontalvo was also not adequately informed. However, it is uncontroverted that Sgt. Fontalvo was taught that it is dangerous to pull out a resisting safety pin.  (MSJ Order at p. 46.)   Whether other people were separately told of this danger is of no moment, and will only serve to distract the trier of fact from the main question of what actually happened on this particular occasion.   That risk is especially great here, where nine Marine Corps witnesses were questioned about their training.   If Plaintiffs are permitted to introduce testimony from those Marines who did not receive this training, Sikorsky will present countervailing testimony from other Marines who were so trained.   This will result in a significant amount of time spent at trial on the issue of other people's training, which ultimately has no bearing on any claim or defense in this case.

Furthermore, Plaintiffs have not shown that the training received by these other individuals was the same, or substantially similar, to Sgt. Fontalvo's training. Most of them were trained as Marine Corps mechanics, not aerial observers. (Coffin Dep., attached as Ex. B to Hickey Decl., at 25:18-24; Shelton Dep., attached as Ex. C to Hickey Decl., at 45:6-10; Brown Dep., attached as Ex. D to Hickey Decl., at 42:4-9; Perkins Dep., attached as Ex. E to Hickey Decl., at 59:14-23 and 60:17-20.)  This is significant because it was during his aerial observer training that Sgt. Fontalvo was informed of the dangers involved in pulling on a stuck pin.  (Wilcox Dep., attached as Ex. F to Hickey Decl., at 32:22-33:22; 35:7-36:14.)  Only one of the individuals whose testimony Plaintiffs have designated – Micah Hamilton – had served as an aerial observer.  (Hamilton Dep., attached as Ex. G to Hickey Decl., at 18:14-20.)   However, his training preceded Sgt. Fontalvo's by at least seven years, and there is no evidence that their training was the same.  (*See* Wilcox Dep., Ex. F, at 31:23-33:16.) Hamilton also admitted that he has no knowledge of Sgt. Fontalvo's aerial observer training.  (Hamilton Dep., Ex. G, at 18:21-24.)

In sum, the extraneous testimony of other individuals regarding their own training and knowledge is not relevant to the issue of what Sgt. Fontalvo knew or did not know, and should be excluded as irrelevant, confusing, misleading, unfairly prejudicial, and as a waste of time.  Fed. R. Evid. 401, 402 and 403.

## B.    Instructions in Navy Manuals

Plaintiffs further seek to introduce into evidence the deposition testimony of a number of witnesses about whether or not the Navy's operation and maintenance manuals contained warnings about the danger presented by a stuck landing gear safety pin.  (Brown Dep. at 118:2-121:4; Jordan Dep. at 23:3-15, 58:3-19; Perkins Dep. at 25:12-23, 34:3-35:2; Danley Dep. at 59:6-60:15; Wakefield 136:17-138:17; Stevens Dep. at 86:4-88:10, 154:1-18; Fitzsimmons Dep. at 81:18-82:7; Shelton Dep. at 89:7-90:6, designated by Plaintiffs and collectively attached as Ex. H to

Hickey Decl.)  However, this Court has already determined that Sgt. Fontalvo was a "sophisticated user," who "*actually knew* that it was dangerous to pull a resisting pin," and on this basis granted summary judgment in favor of Sikorsky on Plaintiffs' failure to warn claim.  (MSJ Order at p. 46.)  As a result, evidence regarding the adequacy of warnings must be excluded as irrelevant under Rules 401 and 402, and as unfairly prejudicial to Sikorsky under Rule 403.

### C.   Sikorsky's Involvement in the Content of the Navy Manuals.

In the same vein, Plaintiffs should not be permitted to present evidence at trial regarding the nature and extent of Sikorsky's involvement, if any, in the content of the manuals regarding landing gear safety pins.  (*See* Wakefield Dep. at 136:17-138:17, Perkins Dep. at 25:12-23, and Jordan Dep. at 23:3-15, all at Ex. H.) Because the manual instructions are not relevant to any fact or issue in dispute, neither is their provenance.  *See* Fed. R. Evid. 401 and 402.  Furthermore, evidence regarding any involvement by Sikorsky in preparing the manuals will result in unfair prejudice, as the jury may be misled into believing that some fault can be attributed to Sikorsky based on the content of the manuals, despite the fact that Plaintiffs have no failure to warn claim, and those manuals have no bearing on any issue actually in dispute in this case.   This testimony must therefore also be excluded under Rule 403.

Furthermore, the testimony Plaintiffs designated of Robert Jordan and Joshua Perkins regarding Sikorsky's role with respect to the manuals is non-responsive. Jordan, with NAVAIR, testified as follows:

> Q: So how would you describe your job? You're involved in maintenance but you're not actually maintaining the aircraft?
> A: Right. We write the instructions for maintaining the aircraft. Sikorsky delivered the initial maintenance publications for the aircraft, and we have taken over cognizance of those manuals and we maintain them for maintenance requirements, as well as maintenance instructions.

(Jordan Dep., Ex. H, at 23:3-11.)   Perkins, a Sergeant with the Marine Corps, testified as follows:

Q: Are all of the syllabi and maintenance manuals that you are referring to related to power plant?

A: They are related to just about everything. When Sikorsky, like with all of their publications, came out, it was all from the air frame pretty much all the way to the back of the aircraft, all broken down into different numbers and then different numbers are broken down into numbers for maintenance procedures, theory of operations, parts ordering, and parts breakdown and things of that nature.

(Perkins Dep., Ex. H, at 25:12-23.) Neither Jordan nor Perkins was asked about Sikorsky's involvement in the publications, and their off-the-cuff remarks about Sikorsky should be stricken as non-responsive. Fed. R. Evid. 611(a).

This testimony of Jordan and Perkins must also be excluded for lack of foundation, as neither of these witnesses has personal knowledge of Sikorsky's participation, or lack thereof, in preparing the manuals. Jordan admitted that he was not involved when the original instructions were prepared for the CH-53E, testifying that "was before my time." (Jordan Dep., Ex. H, at 23:3-15.) Plaintiffs did not ask Perkins whether he had personal knowledge of Sikorsky's role, and thus failed to establish any foundation for his testimony.

In contrast, Sikorsky's contract with the Department of the Navy expressly states that the operation and maintenance manuals for the CH-53E "will be furnished by the Government as specified in the publications requirements of the contract." (ECF No. 164-11 at ¶ 20, Ex. 10.) Neither Jordan nor Perkins have the personal knowledge to contradict the clear division of responsibility set forth in the contract, and Plaintiffs should not be permitted to present this misleading and erroneous testimony to the jury. *See* Fed. R. Evid. 602 and 403.

## C.     Warnings to the Navy

Because Plaintiffs' failure to warn claim has been dismissed from this lawsuit, any evidence of Sikorsky's warnings to the Navy or NAVAIR about retraction of the landing gear must also be excluded as irrelevant. *See* Fed. R. Evid. 401 and 402. Specifically, Plaintiffs have designated the testimony of Sikorsky's

1   designated expert, John Wakefield, regarding whether "Sikorsky ever told
2   NAVAIR that there was a danger that the landing gear might inadvertently retract in
3   the event of an electrical short." (Wakefield Dep. at 241:16-242:1, designated by
4   Plaintiffs and attached as Ex. I to Hickey Decl.) However, because Sgt. Fontalvo
5   himself was adequately warned of the dangers of retracting landing gear, as a matter
6   of law, it is irrelevant whether Sikorsky had separately informed the Navy of
7   possible causes of this hazard. As a result, Plaintiffs should not be permitted to
8   present such evidence to the jury at trial. *See* Fed. R. Evid. 401 and 402.

9           **D.    Experience of Other Marines**

10          Plaintiffs have also designated testimony of several Marine witnesses
11  regarding their own experiences with resistant safety pins, caused by conditions
12  other than a retracting landing gear (i.e., the pin was corroded, bent, etc.). (Wilcox
13  Dep. at 21:1-21:24; Shelton Dep. at 51:22-54:7; Coffin Dep. at 65:11-67:23,
14  designated by Plaintiffs and collectively attached as Ex. J to Hickey Decl.)
15  Specifically, Jeremiah Wilcox testified that, of the "[o]ver a thousand times" he had
16  pulled out a landing gear safety pin, he once encountered a pin that "was starting to
17  get some resistance" due to corrosion build up. (Wilcox Dep., Ex. J, at 21:1-21:24.)
18  Wilcox did not specify the amount of resistance he felt, and testified that he did not
19  discuss this experience with Sgt. Fontalvo when he trained him regarding landing
20  gear safety pins. (Wilcox Dep., Ex. F, at 21:25-22:2.) Evan Shelton testified that,
21  on two or three occasions, he encountered slightly resistant landing gear safety pins
22  while the aircraft was in maintenance and powered off. He testified that, although
23  "my thought was that the pin was bent," he ultimately determined that the pins
24  "wouldn't go in and out smoothly" "because of the size of the pin or because of the
25  spring mechanism." (Shelton Dep., Ex. J, at 52:4-19.) On these occasions, he was
26  able to extract the pins in one to two seconds with only manual force. (*Id*. at 53:13-
27  ///
28  ///

---

54:7)[2]   Charles Coffin testified that he or someone else—he could not recall—had encountered a bent auxiliary tank pin (an entirely different component) that "can cause resistance," although he did not quantify the amount of resistance.   (Coffin Dep., Ex. J, at 66:12-16, 66:21-67:1.)  Coffin clarified that his testimony is "just for axillary [sic] tanks.  Landing gear pins, again, that wouldn't be my – my shop."  (*Id.* at 67:3-4.)

Here, again, the experience of these other individuals is not evidence of the experience and knowledge of Sgt. Fontalvo.   There is no evidence that Sgt. Fontalvo had previously encountered a resistant landing gear safety pin, or that he had knowledge of other individuals' experiences with a resistant pin.  As a result, such testimony is entirely irrelevant to Sgt. Fontalvo's knowledge, and must be excluded under Rules 401 and 402.

Moreover, these prior incidents are not relevant to Plaintiffs' design defect or negligence claims because there is no evidence that they were substantially similar to the incident involving Sgt. Fontalvo.  *See Cooper v. Firestone Tire & Rubber Co.,* 945 F.2d 1103, 1105 (9th Cir. 1991) ("[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.")   The cause of resistance on these other occasions was NOT the cause of the resistance felt by Sgt. Fontalvo in this instance.   And it appears from the testimony that the relatively minor resistance these witnesses encountered was materially different from the resistance encountered by Sgt. Fontalvo, who was under the aircraft for 45 seconds, attempting to pull out the resisting safety pin.  (Danley Dep., attached as Ex. K to Hickey Decl., at 37:13-38:5.)  As a result, this evidence of prior events, which have

---

[2] Shelton also testified that, on the day of the accident, he had difficulty removing the nose landing gear safety pin of the subject aircraft, at the same time that Fontalvo was attempting to remove the left main landing gear safety pin.  That testimony is not part of this motion *in limine*.

1  no meaningful resemblance to the subject incident, must be excluded as irrelevant

2  under Rules 401 and 402.

3       This "other incident" testimony must also be excluded for its highly

4  prejudicial effect.  The jury is likely to be misled into concluding that Sgt. Fontalvo

5  attributed the resistance he encountered to one of these other conditions, even

6  though there is no evidence he had any notion that a safety pin could become stuck

7  for any reason other than retraction of the landing gear.  Furthermore, the jury

8  might consider these other incidents evidence of a design defect or notice to

9  Sikorsky of a defect, even though the incidents were dissimilar to the condition

10  encountered by Sgt. Fontalvo, and even though the incidents are much too sporadic

11  and distinct to be considered a pattern of which Sikorsky, or anyone, would have

12  had notice.  Consequently, the testimony of Wilcox, Shelton, Coffin, or any other

13  witness, regarding their own experiences with safety pins that offered some degree

14  of resistance for entirely different reasons, should be excluded as irrelevant,

15  confusing, misleading and unfairly prejudicial.  Fed. R. Evid. 401, 402 and 403.

16       Similarly, Plaintiffs have designated Hamilton's testimony regarding what he

17  might have done in Sgt. Fontalvo's place, had he been the one to encounter a stuck

18  landing gear safety pin.  (*See* Hamilton Dep. at 64:10-16, 65:19-66:23, 84:11-85:4,

19  87:8-88:23, designed by Plaintiffs and attached as Ex. L to Hickey Decl.)  Hamilton

20  testified that he has never encountered a stuck landing gear pin (Hamilton Dep., Ex.

21  G, at 82:21-24:  "Q:  Now, on any of those 150 times or more that you pulled the

22  landing gear safety pin, did you ever get any resistance to the pin coming out?  A:

23  No, sir."), but went on to speculate that, had he encountered a stuck pin, "I think we

24  would have pulled the pin," "I would have continued to try to pull that pin out," "I

25  would have found a way to get [sic] pin out … I would have kept pushing or kept

26  pulling on it till I could get it out."  (Hamilton Dep., Ex. L, at 64:10-16, 66:1-6,

27  84:11-85:4.)  Such a speculative opinion by Hamilton, or any other witness, about

28  what they may or may not have done in Sgt. Fontalvo's place also has no relevance

1    to any claim or defense in this case.   Unlike Sgt. Fontalvo, Hamilton testified he

2    was never instructed on what to do if he encountered a stuck landing gear pin.

3    (Hamilton Dep., Ex. G, at 42:7-19.)[3]   His alleged lack of understanding of the

4    dangers involved in pulling out a resistant pin make his speculative "what if"

5    opinion testimony entirely irrelevant to the question of whether Sgt. Fontalvo—who

6    was specifically taught to never pull out a resisting landing gear safety pin—was

7    negligent.   (*See* Wilcox Dep., Ex. F, at 32:22-33:22, 35:7-36:14.)   Furthermore,

8    Hamilton's speculative opinion testimony, which is based on an incomplete

9    hypothetical scenario (he was not asked about, and cannot know, all of the factors

10   encountered by Sgt. Fontalvo that led to his decision), should be excluded as

11   improper lay witness opinion testimony under Rule 701.

12           In sum, the experiences of other individuals with safety pins offering some

13   level of resistance for entirely different reasons, or their speculative opinions of

14   how they might have dealt with a resistant safety pin, must be excluded as

15   irrelevant, unfairly prejudicial, confusing, a waste of time and improper opinion

16   testimony.   Fed. R. Evid. 401, 402, 403 and 701.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

25

26   [3] This testimony has been designated by Sikorsky, but will only be presented at trial if Plaintiffs
     are permitted to present Hamilton's testimony regarding what he would have done in Fontalvo's
27   shoes, had he been the one to encounter a stuck pin.   Assuming this irrelevant and unfairly
     prejudicial testimony designated by Plaintiffs is excluded from trial, Sikorsky does not intend to
28   present Hamilton's testimony regarding whether or not he was trained regarding the dangers of
     pulling out a stuck pin.

1    **E.     Conclusion**

2        For the above reasons, Sikorsky respectfully requests that this Court grant

3    Sikorsky's Motion in Limine No. 1, and exclude all evidence and testimony in this

4    action related to Plaintiffs' now dismissed failure to warn claim.

5

6    Dated: March 23, 2018                    **FITZPATRICK & HUNT,**

7                                             **PAGANO, AUBERT, LLP**

8                                      By: /s  Christopher S. Hickey

9                                          James W. Hunt

10                                         Christopher S. Hickey

                                           Attorneys for Defendants

11                                         Sikorsky Aircraft Corporation and

12                                         United Technologies Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28