# EXHIBIT A

**<u>D.F., et al. v. Sikorsky Aircraft Corporation, et al.</u>**
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

D.F., a minor, by and through      :
his Guardian Ad Litem,
TASHINA AMADOR, individually       :
and as successor in interest
to Alexis Fontalvo, deceased,      :
and T.L., a minor, by and              Case No.
through her Guardian Ad            :   13-cv-00331-GPC-KSC
Litem, TASHINA AMADOR,
                                   :
            Plaintiffs,
                                   :   Deposition of:
      -v-                              CHARLES WILLIAM COFFIN
                                   :
SIKORSKY AIRCRAFT
CORPORATION; SIKORSKY SUPPORT      :
SERVICES, INC.; UNITED
TECHNOLOGIES CORPORATION;          :
G.E. AVIATION SYSTEMS, LLC;
DUPONT AEROSPACE CO.; E.I.         :
DUPONT DE NEMOURS AND
COMPANY; PKL SERVICES INC.;        :
and DOES 1 through 100,
Inclusive,                         :

            Defendants.            :


         Place:        TEMPEST REPORTING, INC.
                       175 South Main Street, #710
                       Salt Lake City, Utah 84111

         Date:         February 11, 2016
                       10:02 a.m.

         Reporter:     Vickie Larsen, CSR/RMR

1         A.     I don't know what specifically it was

2    being trained for.  Maybe the accessory gear box,

3    because that's something I worked on and that's --

4    that's another component in that system.  But I --

5    beyond that, I don't have a specific answer.

6         Q.     Okay.  But you recall being trained on it

7    during your basic training for MAPMEP?

8         A.     Right.  Again, that's what I recall, but

9    there -- it could have been in -- part of any one of

10   those syllabi.  I -- I don't have a -- a specific

11   recollection of that.

12        Q.     Okay.  Other than saying that the landing

13   gear safety pins were one of five interlocks for the

14   system, were they described in any more detail?  How

15   they work?  What their purpose was?

16        A.     Just -- no.  Just that their part --

17   they're an interlock, removed or installed, you know.

18   If it's removed, the interlock's no longer active.

19   That particular interlock's not active.

20        Q.     Okay.

21        A.     How or why, I don't have an answer.  I

22   wasn't trained on that.  Not that I recall.

23        Q.     Were you kind of taught or trained on

24   what to do if the landing gear pin were -- were stuck

25   or feeling resistance?

1          A.     No.

2          Q.     Okay.  In the course of the work you were

3    doing, would you have any reason to pull the landing

4    gear pin?

5          A.     No.

6          Q.     Okay.  Did you ever remove or install a

7    landing gear pin?

8          A.     Yes.

9          Q.     Okay.  And what context was that?  And

10   removed or installed?

11         A.     Both.  I'm sorry.

12         Q.     That was my bad question.

13         A.     I don't remember.  I know that there's a

14   point where we were replacing pins because of

15   deteriorating flags.

16         Q.     Okay.

17         A.     So that's as specific as I can get on

18   that.  I don't remember why or where or how.  I

19   remember replacing a couple pins that had flags in

20   there because someone, you know, couldn't see the

21   flags.  They were just greased up and dirty and old,

22   so they're, like, Hey, we want new flags out there.

23         Q.     Okay.  And so do you know when you

24   removed and replaced them, was the helicopter on?

25         A.     No.  No.

1    STATE OF UTAH            )
                              )
2    COUNTY OF SALT LAKE      )

3                 I, Vickie Larsen, Certified Shorthand

4    Reporter No. 109887-7801 for the State of Utah, do

5    hereby certify:

6                 That prior to being examined, the witness

7    named in the foregoing deposition was duly sworn to

8    testify to the truth, the whole truth, and nothing but

9    the truth;

10                That said deposition was taken down by me

11   in shorthand at the time and place herein named and

12   thereafter reduced by me to typewritten form and that

13   the same is a true, correct, and complete transcript of

14   said proceedings.

15                Before completion of the deposition,

16   review of the transcript [X] was [ ] was not requested.

17   If requested, and changes made by the deponent (and

18   provided to the reporter) during the period allowed are

19   appended hereto.

20                I further certify that I am not interested

21   in the outcome of the action.

22

23                Vickie Larsen, CSR/RMR

24   Witness my hand this 26th day of February, 2016.

25

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

 4                 AGENCY Case No. 13-cv-00331-GPC-KSC

 5   - - - - - - - - - - - - - - - - - - x

 6   Dominic Fontalvo a minor, by and through

 7   his Guardian Ad Litem, Tashina Amador,

 8   individually and as successor in interest

 9   to Alexis Fontalvo, deceased, and T.L.

10   a minor, by and through her Guardian

11   Ad Litem, Tashina Amador,

12
                         Plaintiffs,
13   vs

14   Sikorsky Aircraft Corporation, Sikorsky

15   Support Services, Inc., et al,

16

17                         Defendants.

18   - - - - - - - - - - - - - - - - - - x

19        DEPOSITION OF JUSTIN ROBERT BROWN

20                Quantico, Virginia

21                February 19, 2016

22                  1:15  p.m.

23

24                 * * * * *

25
```

1      Q     And that is with the CH-53 E Helicopter,

2  correct?

3      A     Correct, yes.

4      Q     During any of those flights had your

5  flight crew, either you or your flight crew,

6  encountered a stuck landing gear pin?

7      A     Not that I am aware of, no.

8      Q     At the time of the accident, do you have

9  an understanding, if you did have a stuck pin,

10 what is the procedure for dealing with that

11 particular issue on the helicopter, on CH-53

12 Helicopter?

13     A     I would have been so junior that I

14 wouldn't have known if there even was a procedure.

15           To my recollection that is not discussed

16 anywhere in that NATOPS, the NFM 000, so I

17 wouldn't have known that to be an issue.

18     Q     So we have someone who is junior.  Were

19 you taught, and if the procedure is not in any of

20 the manuals, were you taught how to find out what

21 to do with a problem like that?

22     A     No, just word of mouth and just ask

23 someone in maintenance.

24     Q     Who in maintenance would you ask?

25     A     Probably someone within Air Frames or

1    Flight Line that had resident knowledge, but yes.

2        Q    Who in the maintenance shop would have

3    knowledge of the landing gear system?

4        A    I would say the most senior person that

5    I could find that had been around the longest,

6    meaning they had the most time in the service in

7    the community within those two divisions, so the

8    most senior enlisted member most probably in

9    either Air Frames or Flight Line, I would have

10   asked.

11       Q    You mentioned someone who is in Air

12   Frames.  Why would you contact someone who is in

13   Air Frames?

14       A    They are part of what is called like the

15   Big 3, and the other one would be Avionics, so

16   Avionics would not have much of an issue with it

17   so either Flight Line or Air Frames.

18       Q    What is the third of the Big 3?

19       A    Avionics, Flight Line and Air Frames.

20       Q    And Flight Line encompasses what tasks?

21       A    That is where all the crew chiefs come

22   from, designated crew chiefs, and then they are

23   responsible for most of the daily turnaround

24   inspections with help from the other shops such as

25   Avionics and Air Frames.

1

2    UNITED STATES OF AMERICA   )

3                                  ss:
     COMMONWEALTH OF VIRGINIA   )
4

5
               I, T. S. HUBBARD, JR., a Notary Public
6
     within and for the District of Columbia do hereby
7
     certify that the witness whose deposition is
8
     hereinbefore set forth was duly sworn and that the
9
     within transcript is a true record of the testimony
10
     given by such witness.
11

12
               I further certify that I am not related
13
     to any of the parties to this action by blood or
14
     marriage and that I am in no way interested in the
15
     outcome of this matter.
16

17
               IN WITNESS WHEREOF, I have hereunto set
18
     my hand this 29TH day of February 2016.
19

20    _____

21    Thomas S. Hubbard, Jr.
      Notary Public Commonwealth of Virginia
22

23

24

25

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

- - - - - - - - - - - - - - - - - -
4                                    )
D.F., a minor, by and through his   )
5    Guardian Ad Litem, TASHINA AMADOR,  )
individually and as successor in    )
6    interest to Alexis Fontalvo,        )
deceased, and T.L., a minor, by and )
7    through her Guardian Ad Litem,      )
TASHINA AMADOR,                     )
8                                    )   CASE NO.
Plaintiffs,        )   13-cv-00331
9                                    )   GPC-KSC
vs.              )
10                                    )
SIKORSKY AIRCRAFT CORPORATION;       )
11   SIKORSKY SUPPORT SERVICES, INC.;    )
UNITED TECHNOLOGIES CORPORATION;    )
12   G.E. AVIATION SYSTEMS, LLC; DUPONT  )
AEROSPACE CO.; E.I. DUPONT DE       )
13   NEMOURS AND COMPANY; PKL SERVICES,  )
INC.; and DOES 1 through 100,       )
14   Inclusive,                          )
                                     )
15              Defendants.        )
                                     )
16   - - - - - - - - - - - - - - - - - -

17

18          DEPOSITION OF EVAN REID SHELTON

19

20          TAKEN ON: Wednesday, May 25, 2016

21          TAKEN AT: 501 West Broadway
                      Suite 400
22                    San Diego, California

23          REPORTED BY:  KATHRYN B. CONNELL
                          CSR NO. 3079, RPR, CRR
24

25

1      Q.    Okay.  But do you recall specifically being

2   trained on that?

3      A.    Yes.

4      Q.    And is that common knowledge?

5      A.    Yes.

6      Q.    Do you know if other shops were trained on

7   that as well?

8      A.    I do not know.

9      Q.    If the removal of the landing gear safety pin

10  takes more than one or two seconds, if it's stuck or

11  encounters resistance, were you trained on what to do

12  next?

13     A.    There is -- there is -- there is a difference

14  between doing a daily inspection.  So if I'm doing a

15  daily inspection and the aircraft is off, there is no

16  power to it.  So if I found that the -- if I found that

17  the pin was not -- if I found that the pin was stuck,

18  then that means that even with hydraulic power off, it

19  would -- you know, with all of the systems not getting

20  power to them, then the aircraft is probably just trying

21  to collapse on it, on the landing gear.

22             But during the start-up of the aircraft when

23  we are trying to remove the pins, we have already had a

24  daily inspection done, we have already had a pre-flight

25  inspection done.  So if we couldn't get that pin out,

1    there wasn't really, you know -- I wouldn't know what to

2    do at that point.  Is the pin bent?  I'm not sure what

3    the problem is at that point, because the inspections

4    have already been done saying that the landing gear is

5    good.

6         Q.   So at the time of the start-up of the

7    aircraft, the daily inspection would have already been

8    performed, the pre-flight would have already been

9    performed.  Would a turnaround inspection already have

10   been performed?

11        A.   It all depends because a daily inspection was

12   done every 72 hours, I believe, and that depends -- that

13   depends on if -- that also has -- depends on the flight

14   schedule.  I can't remember what it was exactly.  But if

15   it's flown at a certain time, then the daily inspection

16   needs to be done within 72 hours of that time; and the

17   same with the turnaround, I believe that the turnaround

18   has to be completed within 24 hours of if an aircraft

19   just landed or if its taken off.

20             So there is a lot of different variables about

21   when a turnaround and daily inspection needs to be done,

22   but they would have been done regardless within that

23   last 24 hours for a turnaround or the last 72 hours for

24   a daily inspection.  But the pre-flight inspection

25   100 percent would have been done right before that

1    kind of procedures are done; and once we got a basic of

2    what would be done, then we would start to do our -- our

3    on-the-job training.

4             And we would start flying, and we would start

5    doing more and more different -- different things

6    besides just flying and making sure that the aircraft is

7    safe.  We would start to do external lifts; we would

8    start to, you know -- we would start to be in charge of

9    calling -- telling the pilots when it's safe to land.

10   And we would start to get more and more responsibilities

11   until they -- they deemed us capable of being --

12   becoming a crew chief.  So --

13        Q.   Okay.  Did you have continuous classroom

14   training during that time?

15        A.   Yes.

16        Q.   And did you study or train on manuals

17   regarding those procedures?

18        A.   Yes.

19        Q.   Okay.  But you received training and

20   information outside of the scope of those manuals as

21   well?

22        A.   Well, outside of the scope of the manuals?

23        Q.   Bad question.

24             Was everything you learned in the manuals or

25   did you learn details regarding the performance of the

1    standard procedures that weren't reflected in the

2    manuals?

3              For instance, everything you know about

4    landing gear safety pins, is that all documented in

5    manuals or did you learn some of that through

6    performance of on-the-job activities, knowledge from

7    your peers?

8        A.   For the landing gear -- yeah, I don't think --

9    I can't recall any speculative training where people

10   would say, "Hey, this isn't in the manual, but this is

11   actually how it's done."  I think that all of the

12   training that we got from people was based off of what

13   was in the manuals.

14       Q.   I'll try to phrase my question better, because

15   I don't think I'm getting it.

16              If someone were to study just the manuals,

17   could they do your job?

18       A.   No, because they haven't experienced -- they

19   haven't -- they haven't -- yeah, they haven't

20   experienced -- the manuals say, "Do this"; but until

21   you've seen what it means by the manual saying "Do

22   this," then you haven't really experienced it and it

23   wouldn't be safe.

24       Q.   So there is fundamental components of your

25   training outside --

1      A.    Yes.

2      Q.    -- of pure textbook?

3      A.    Yes.

4      Q.    Have you ever worked in the Airframe shop?

5      A.    No.

6      Q.    Have we discussed all of the positions and

7      qualifications you've had with CH-53E helicopters?

8      A.    There is -- that I have?

9      Q.    Uh-huh.

10     A.    Yes.

11     Q.    Okay.  So we have crew chief, Flight Line

12     mechanic, plane captain, and CDI?

13     A.    Yes.

14     Q.    And earlier you referred to crew chief school.

15     Is that synonymous with the aircrew candidate school?

16     A.    Yes.

17     Q.    Okay.  Have we discussed all of the

18     specialized training you received with respect to the

19     CH-53E helicopter?

20     A.    Say that one more time.  Sorry.

21     Q.    Have you received any additional specialized

22     training with respect to the CH-53E helicopter that we

23     haven't discussed?

24     A.    No.

25     Q.    Okay.

1      A.   So if I knew that there was something wrong,

2   then yes, I would know that I shouldn't pull it.

3      Q.   Okay.  Can you read the next sentence.

4      A.   "Doing so may allow the landing gear to

5   inadvertently retract on the ground, causing injury or

6   death."

7      Q.   Did you know, prior to the accident, that

8   forcibly removing a landing gear safety pin might cause

9   inadvertent retraction?

10      A.   I did not.  I did not know that it could cause

11   a retraction.

12           Well, yeah, removing it wouldn't cause it, but

13   it would allow it to.  I did know that removing it would

14   allow it to retract, but -- this is kind of confusing.

15   Can you repeat the question one more time?

16           MS. VAGLE:  Sure.

17           Could you read it back, please.

18           (Record read as follows:

19      Q.   Did you know, prior to the accident, that

20   forcibly removing a landing gear safety pin might cause

21   inadvertent retraction?)

22           THE WITNESS:  I did know that if you moved the

23   pin, now that -- now the landing gear can retract.

24   Inadvertent.  I'm going to say yes.

25   ///

1  much experience, then you can -- you can take a test.

2  And basically, if you pass this huge test, then you can

3  become a CDI.

4       Q.   Okay.

5       A.   So that's just a qualification, not a school.

6       Q.   Okay.  So crew chief school was after mechanic

7  school?

8       A.   Yes.

9       Q.   And was there another intervening school in

10  between those?

11       A.   No.

12       Q.   Okay.  And did you -- do you remember ever

13  telling the panel that you talked to that -- that the

14  knowledge that you are not supposed to pull a stuck pin

15  was passed to you by word of mouth during crew chief

16  school?

17       A.   I can't recall.

18       Q.   Okay.  Do you remember telling them that to

19  your knowledge, no non-crew chiefs were aware that you

20  weren't supposed to pull a stuck pin?

21       A.   It's also hard to say too -- yeah, I can't

22  recall that either.  But there is a difference, too,

23  with the aircraft off versus the aircraft on.

24       Q.   Okay.  What's that?

25       A.   So basically, with the aircraft off, if the

1    hydraulics -- you know, with the aircraft off, if the

2    hydraulic level is down and the down-and-locked pin is

3    not in, there is nothing -- there is absolutely nothing

4    that can keep that landing gear up -- or, sorry -- that

5    can keep it down.  There is nothing that can keep it

6    down.

7         Q.   Yeah.

8         A.   But if the aircraft is on --

9         Q.   Yeah.

10        A.   -- if the landing gear handle is down, saying

11   go down in the down position, now you've got at least

12   hydraulic pressure trying to push it down --

13        Q.   Right.

14        A.   -- even if the down-and-locked pin is not in.

15        Q.   Uh-huh.

16        A.   So it's different.

17        Q.   So am I understanding you right, then, because

18   I think this is very new to me, let's -- let's just

19   posit that you were to lift the whole aircraft up on

20   jacks while it was powered down.

21        A.   Yes.

22        Q.   Okay.  And the landing gear is down at that

23   time.  If you lifted it up on jacks and removed the

24   safety pins from all of the landing gear and you put it

25   back down, would it collapse just by gravity?

1    STATE OF CALIFORNIA  )

2                        :  SS.

3    COUNTY OF SAN DIEGO  )

4

5          I, Kathryn B. Connell, Certified Shorthand

6    Reporter No. 3079 for State of California, do hereby

7    certify:

8          That prior to being examined, the witness named

9    in the foregoing deposition was duly sworn to testify to

10   the truth, the whole truth, and nothing but the truth;

11         That said deposition was taken down by me in

12   shorthand at the time and place therein named and

13   thereafter reduced by me to typewritten form and that

14   the same is a true, correct, and complete transcript of

15   said proceedings.

16         Before completion of the deposition, a review of

17   the transcript [ X ] was [  ] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed are

20   appended hereto.

21         I further certify that I am not interested in the

22   outcome of the action.

23         Witness my hand this 6th day of June, 2016.

24                   _Kathryn B. Connell_

25                   _____
                     Kathryn B. Connell, CSR No. 3079

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA
 2
 3   D.F., a minor, by and through  )
     his Guardian Ad Litem, TASHINA )
 4   AMADOR, individually and as    )
     successor in interest to       )
 5   Alexis Fontalvo, deceased, and )
     T.L., a minor, by and through  )
 6   her Guardian Ad Litem, TASHINA )  No. 3:13-cv-00331-
     AMADOR,                        )              GPC-KSC
 7                                  )
                 Plaintiffs,        )
 8                                  )
          vs.                       )
 9                                  )
     SIKORSKY AIRCRAFT CORPORATION; )
10   SIKORSKY SUPPORT SERVICES,     )
     INC.; UNITED TECHNOLOGIES      )
11   CORPORATION; G.E. AVIATION     )
     SYSTEMS, LLC; DUPONT AEROSPACE )
12   CO.; E.I. DUPONT DE NEMOURS    )
     AND COMPANY; IKL SERVICES INC.;)
13   and DOES 1 through 100,        )
     inclusive,                     )
14                                  )
                 Defendants.        )
15   _____)
16
17
18       VIDEOTAPED DEPOSITION OF MICAH HAMILTON
19               San Diego, California
20             Thursday, January 26, 2016
21                    Volume I
22
23   Reported By:
     CATHERINE A-M GAUTEREAUX
24   CSR No. 3122
     Job No. 2528199
25   PAGES 1 - 96
```

Veritext Legal Solutions
866 299-5127

```
 1        Q    Okay.  And with regard to maintenance, how      08:51:43

 2   many times have you done it?

 3        A    Upward of a hundred times, at least.

 4        Q    Okay.  Have you ever encountered a stuck

 5   landing gear safety pin?                                   08:51:53

 6        A    No, sir.

 7        Q    As you sit here today, do you know what to

 8   do if you encounter a stuck landing gear safety pin?

 9        A    As I sit here today, no, sir.  Obviously,

10   after what happened, I would change what I would --        08:52:05

11   if I felt one now, I would never touch it.  But we

12   were never instructed.  It was not common knowledge,

13   if you felt, you know, something that was stuck, not

14   to pull it out.

15        Q    Okay.  So when you were working as an            08:52:17

16   airframe mechanic, you don't believe you were ever

17   instructed as to what to do if you encountered a

18   stuck landing gear safety pin?

19        A    No, sir.

20        Q    Okay.  If there is an issue with the            08:52:33

21   landing gear, who's the person that would have -- or

22   who would you go to in order to discuss the landing

23   gear, that particular landing gear issue?

24        A    I would be in the airframe shop.

25        Q    Okay.  And within the airframe shop, who        08:52:58
```

Veritext Legal Solutions
866 299-5127

```
 1            I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify:
 4            That the foregoing proceedings were
 5   reported by me at the time and place herein set
 6   forth; that any witnesses in the foregoing
 7   proceedings, prior to testifying, were placed under
 8   oath; that a verbatim record of the proceedings was
 9   made by me using machine shorthand which was
10   thereafter transcribed under my direction; further,
11   that the foregoing is an accurate transcription
12   thereof.
13            That a review of the transcript by the
14   deponent was requested.
15            I further certify I am neither financially
16   interested in the action nor a relative or employee
17   of any attorney of any of the parties.
18            IN WITNESS WHEREOF, I have this date
19   subscribed my name.
20   Dated:  February 8, 2017.
21
22
23
24
         CATHERINE A-M GAUTEREAUX
25       CSR NO. 3122
```

Veritext Legal Solutions
866 299-5127

1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

4                  AGENCY Case No. 13-cv-00331-GPC-KSC

5   - - - - - - - - - - - - - - - - - - x

6   Dominic Fontalvo a minor, by and through

7   his Guardian Ad Litem, Tashina Amador,

8   individually and as successor in interest

9   to Alexis Fontalvo, deceased, and T.L.

10  a minor, by and through her Guardian

11  Ad Litem, Tashina Amador,

12                      Plaintiffs,

13  vs

14  Sikorsky Aircraft Corporation, Sikorsky

15  Support Services, Inc., et al,

16

17                      Defendants.

18  - - - - - - - - - - - - - - - - - - x

19       DEPOSITION OF JOSHUA DAVID PERKINS

20                  Quantico, Virginia

21                  February 19, 2016

22                      9:00 a.m.

23

24                  * * * * *

25

1      A     Yes, sir.

2      Q     Take a look at what is marked as

3  Deposition Exhibit No. 4.  In the fourth

4  paragraph, do you see where it says, "The standard

5  procedure is pulling the landing gear pin first

6  and then the aux tanks second."

7      A     Yes, sir.

8      Q     We just talked about that and you

9  testified that you do pull the landing gear first

10  and then the aux tanks and you explained why.

11           But you used the term "standard

12  procedure."  So is there a manual that states that

13  you are supposed do it in that order?

14      A     I can't recall honestly at this time,

15  sir.  It was just something that was instilled in

16  us from school from training out in our first

17  unit.  I couldn't recall at this time if I

18  actually read that in one of our maintenance

19  procedures flight procedures.

20      Q     What school would you have covered this

21  in?

22      A     I would have covered that in HMT 302,

23  the training squadron for crew chiefs.

24      Q     During this school for crew chiefs, you

25  were never taught what to do if you encountered a

1   stuck landing gear safety pin?

2        A    The difference of me and most crew

3   chiefs is, I basically only go through the

4   academic only portion.  I never actually flew in

5   the flight portion of the 302's Flight Training

6   School.

7        Q    Is it your belief that that information

8   would be covered in the flight portion of that

9   school?

10       A    It possibly could have been, and like I

11  said, I wasn't part of it so I could not tell you,

12  I don't know what actually happens on the flight

13  portion at 302.

14             I got all of my flight training at HMH

15  361 from one of our weapons and tactics

16  instructors, so I learned probably a little bit

17  differently than the guys actually at the school

18  house.

19       Q    Now go down to the second to last

20  sentence where it says, "I did not see Sergeant

21  Fontalvo."

22            Do you see that?

23       A    Yes, sir.

24       Q    It says, "I did not see Sergeant

25  Fontalvo approach or pull the auxiliary tank pin."

1

2    UNITED STATES OF AMERICA   )

3                                    ss:
     COMMONWEALTH OF VIRGINIA   )
4

5

6              I, T. S. HUBBARD, JR., a Notary Public

7    within and for the District of Columbia do hereby

     certify that the witness whose deposition is
8
     hereinbefore set forth was duly sworn and that the
9
     within transcript is a true record of the testimony
10
     given by such witness.
11

12
               I further certify that I am not related
13
     to any of the parties to this action by blood or
14
     marriage and that I am in no way interested in the
15
     outcome of this matter.
16

17
               IN WITNESS WHEREOF, I have hereunto set
18
     my hand this 29TH day of February 2016.
19

20    _____

21    Thomas S. Hubbard, Jr.
      Notary Public Commonwealth of Virginia
22

23

24

25

# EXHIBIT B

<u>**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**</u>
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

D.F., a minor, by and through    :
his Guardian Ad Litem,
TASHINA AMADOR, individually     :
and as successor in interest
to Alexis Fontalvo, deceased,    :
and T.L., a minor, by and            Case No.
through her Guardian Ad          :   13-cv-00331-GPC-KSC
Litem, TASHINA AMADOR,
                                 :
          Plaintiffs,
                                 :   Deposition of:
     -v-                             CHARLES WILLIAM COFFIN
                                 :

SIKORSKY AIRCRAFT
CORPORATION; SIKORSKY SUPPORT    :
SERVICES, INC.; UNITED
TECHNOLOGIES CORPORATION;        :
G.E. AVIATION SYSTEMS, LLC;
DUPONT AEROSPACE CO.; E.I.       :
DUPONT DE NEMOURS AND
COMPANY; PKL SERVICES INC.;      :
and DOES 1 through 100,
Inclusive,                       :

          Defendants.           :


          Place:        TEMPEST REPORTING, INC.
                        175 South Main Street, #710
                        Salt Lake City, Utah 84111

          Date:         February 11, 2016
                        10:02 a.m.

          Reporter:     Vickie Larsen, CSR/RMR

1    work, this is the level of review required?

2          A.    Correct.

3          Q.    Okay.  Could you explain a little bit of

4    the on-the-job training that you received regarding --

5    or in preparation for receiving your collateral duty

6    inspector certification?

7          A.    Just what we've already reviewed.

8          Q.    Okay.  So nothing additional?

9          A.    No.

10         Q.    And I think we're starting to get this,

11   but could you describe for me the command structure of

12   the flight line shop.

13         A.    Just like any other military environment.

14   There's rank and billet.  So higher ranks, obviously,

15   are in command of lower ranks, and billets, as far as

16   collateral duty inspectors, are in charge of the

17   maintenance evolutions, similarly to rank.

18         Q.    Okay.  So other than your experience with

19   CH53 helicopters as a flight line mechanic, did you

20   have any other CH53-E experience as a -- maybe as a

21   crew chief?

22         A.    No.

23         Q.    What about an aerial observer?

24         A.    No.

25         Q.    How about as a pilot?

1    STATE OF UTAH          )
                            )
2    COUNTY OF SALT LAKE    )

3              I, Vickie Larsen, Certified Shorthand

4    Reporter No. 109887-7801 for the State of Utah, do

5    hereby certify:

6              That prior to being examined, the witness

7    named in the foregoing deposition was duly sworn to

8    testify to the truth, the whole truth, and nothing but

9    the truth;

10             That said deposition was taken down by me

11   in shorthand at the time and place herein named and

12   thereafter reduced by me to typewritten form and that

13   the same is a true, correct, and complete transcript of

14   said proceedings.

15             Before completion of the deposition,

16   review of the transcript [X] was [ ] was not requested.

17   If requested, and changes made by the deponent (and

18   provided to the reporter) during the period allowed are

19   appended hereto.

20             I further certify that I am not interested

21   in the outcome of the action.

22

23             Vickie Larsen, CSR/RMR

24   Witness my hand this 26th day of February, 2016.

25

# EXHIBIT C

**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

```
 1              UNITED STATES DISTRICT COURT

 2             SOUTHERN DISTRICT OF CALIFORNIA

 3

     - - - - - - - - - - - - - - - - - -
 4                                        )
     D.F., a minor, by and through his    )
 5   Guardian Ad Litem, TASHINA AMADOR,   )
     individually and as successor in     )
 6   interest to Alexis Fontalvo,         )
     deceased, and T.L., a minor, by and  )
 7   through her Guardian Ad Litem,       )
     TASHINA AMADOR,                      )
 8                                        )  CASE NO.
                   Plaintiffs,           )  13-cv-00331
 9                                        )  GPC-KSC
                        vs.               )
10                                        )
     SIKORSKY AIRCRAFT CORPORATION;       )
11   SIKORSKY SUPPORT SERVICES, INC.;     )
     UNITED TECHNOLOGIES CORPORATION;     )
12   G.E. AVIATION SYSTEMS, LLC; DUPONT   )
     AEROSPACE CO.; E.I. DUPONT DE        )
13   NEMOURS AND COMPANY; PKL SERVICES,   )
     INC.; and DOES 1 through 100,        )
14   Inclusive,                           )
                                          )
15                 Defendants.            )
                                          )
16   - - - - - - - - - - - - - - - - - -

17

18          DEPOSITION OF EVAN REID SHELTON

19

20          TAKEN ON: Wednesday, May 25, 2016

21          TAKEN AT: 501 West Broadway
                      Suite 400
22                    San Diego, California

23          REPORTED BY:  KATHRYN B. CONNELL
                          CSR NO. 3079, RPR, CRR
24

25
```

1    if somebody knows why something is happening.

2         Q.   So during the start-up -- I think I'm getting

3    ahead of myself here -- but you'd be performing certain

4    procedures as a crew chief?

5         A.   Yes.

6         Q.   Okay.  Have you ever worked as a pilot on a

7    CH-53E?

8         A.   No.

9         Q.   How about as an aerial observer?

10        A.   No.

11        Q.   You hesitate.  Why do you hesitate?

12        A.   Because, you know, I'm a crew chief.  A crew

13   chief is a designation, and on every flight -- on a

14   regular flight, we will have three crew members in the

15   back of the aircraft and two pilots; and you'll have a

16   crew chief who is in charge, and then regardless -- you

17   could have three crew chiefs in the back of the cabin.

18   One of them is going to be the lead crew chief, and I

19   don't know if technically the other two are aerial

20   observers at that moment, but we are still crew chiefs.

21   We still have that knowledge, but we are not the lead

22   crew chief on that mission.

23        Q.   Okay.  Now, is a crew chief, is that a -- what

24   you call your MOS?

25        A.   Yes.

1   STATE OF CALIFORNIA   )

2                        :  SS.

3   COUNTY OF SAN DIEGO   )

4

5        I, Kathryn B. Connell, Certified Shorthand

6   Reporter No. 3079 for State of California, do hereby

7   certify:

8        That prior to being examined, the witness named

9   in the foregoing deposition was duly sworn to testify to

10  the truth, the whole truth, and nothing but the truth;

11       That said deposition was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced by me to typewritten form and that

14  the same is a true, correct, and complete transcript of

15  said proceedings.

16       Before completion of the deposition, a review of

17  the transcript [ X ] was [   ] was not requested.  If

18  requested, any changes made by the deponent (and

19  provided to the reporter) during the period allowed are

20  appended hereto.

21       I further certify that I am not interested in the

22  outcome of the action.

23       Witness my hand this 6th day of June, 2016.

24                    _Kathryn B. Connell_

25                    _____
                     Kathryn B. Connell, CSR No. 3079

# EXHIBIT D

**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**
United States District Court, Case No. 13-cv-00331-GPC-KSC

1             UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4            AGENCY Case No. 13-cv-00331-GPC-KSC

5  - - - - - - - - - - - - - - - - - - - x

6  Dominic Fontalvo a minor, by and through

7  his Guardian Ad Litem, Tashina Amador,

8  individually and as successor in interest

9  to Alexis Fontalvo, deceased, and T.L.

10  a minor, by and through her Guardian

11  Ad Litem, Tashina Amador,

12
                  Plaintiffs,

13  vs

14  Sikorsky Aircraft Corporation, Sikorsky

15  Support Services, Inc., et al,

16

17                Defendants.

18  - - - - - - - - - - - - - - - - - - - x

19     DEPOSITION OF JUSTIN ROBERT BROWN

20          Quantico, Virginia

21          February 19, 2016

22           1:15  p.m.

23

24            * * * * *

25

1   after they meet ex-number of requirements and

2   qualifications they are designated an aerial

3   observer and get Air Crewman Wings.

4        Q    Is it correct to say an aerial observer

5   is there to assist the flight crew?

6        A    Correct.

7        Q    Are you familiar with the training that

8   an aerial observer goes through?

9        A    No, not really.

10       Q    Do you know if an aerial observer is

11  qualified to do any preflight activities?

12       A    I'm not exactly sure what their actual

13  role is with the preflight other than assisting

14  the crew chiefs.

15            Crew chiefs are ultimately going to be

16  responsible for their portions just like the

17  aircraft commander would ultimately be

18  responsible.

19       Q    The two crew chiefs that were part of

20  the helicopter flight that day, what were their

21  roles?

22       A    They would just help clear the aircraft

23  if we were doing our section work first, so

24  formation flight with two aircraft at this time.

25            And then keeping us clear of

1

2    UNITED STATES OF AMERICA   )

3                                    ss:
     COMMONWEALTH OF VIRGINIA   )

4

5

6             I, T. S. HUBBARD, JR., a Notary Public

7    within and for the District of Columbia do hereby

     certify that the witness whose deposition is

8    hereinbefore set forth was duly sworn and that the

9    within transcript is a true record of the testimony

10   given by such witness.

11

12

13            I further certify that I am not related

     to any of the parties to this action by blood or

14   marriage and that I am in no way interested in the

15   outcome of this matter.

16

17

18            IN WITNESS WHEREOF, I have hereunto set

     my hand this 29TH day of February 2016.

19

20   _____

21   Thomas S. Hubbard, Jr.
     Notary Public Commonwealth of Virginia

22

23

24

25

# EXHIBIT E

**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

 4               AGENCY Case No. 13-cv-00331-GPC-KSC

 5   - - - - - - - - - - - - - - - - - - x

 6   Dominic Fontalvo a minor, by and through

 7   his Guardian Ad Litem, Tashina Amador,

 8   individually and as successor in interest

 9   to Alexis Fontalvo, deceased, and T.L.

10   a minor, by and through her Guardian

11   Ad Litem, Tashina Amador,

12
                        Plaintiffs,
13   vs

14   Sikorsky Aircraft Corporation, Sikorsky

15   Support Services, Inc., et al,

16

17                     Defendants.

18   - - - - - - - - - - - - - - - - - - x

19      DEPOSITION OF JOSHUA DAVID PERKINS

20              Quantico, Virginia

21              February 19, 2016

22                 9:00 a.m.

23

24                * * * * *

25
```

1      A    Yes, sir.

2      Q    Was he a crew member of Helicopter 69?

3      A    Yes, sir.

4      Q    At any time after the accident, meaning

5  a few days, a few years, have you ever talked to

6  Corporal Shelton about the accident?

7      A    I might have.  I honestly cannot

8  remember.  He shortly got out of the Marine Corps

9  after that and since he has been out of the Marine

10  Corps I haven't spoken with him.

11          It probably could have happened maybe

12  the next week or so and maybe we chatted about it

13  a little bit, but I honestly cannot remember.

14      Q    You explained a little while ago the

15  difference between a crew chief and an aerial

16  observer.  Have you ever gone through the training

17  to be an aerial observer?

18      A    It pretty much falls hand in hand with

19  the same codes that a crew chief were to get

20  during his flight training to make that person

21  qualified, so in that aspect, yes, I have been

22  through everything that an aerial observer has

23  been through.

24      Q    Do you know specifically what training

25  an aerial observer receives?

1      A    As in what type of training are we

2   talking, sir?

3      Q    What type of training does a person have

4   to obtain in order to become an aerial observer?

5      A    There's a list of flight codes that need

6   to get completed amongst a NATOPS test open and

7   closed book, an NATOPS flight examination and a

8   Currie Source Management examination as well and

9   you can get your gold wings at that point, your

10  aerial observer wings, you're considered an aerial

11  observer.

12     Q    Would that include preflight procedures?

13     A    Yes, sir.

14     Q    To your knowledge would that training

15  also include removing both landing gear pins?

16     A    They almost would go hand in hand.

17     Q    Do you know specifically what type of

18  training an aerial observer receives related to

19  removing landing gear safety pins?

20     A    No, sir.

21     Q    Do you know if the training is just in a

22  classroom?

23     A    It would be more out on the aircraft

24  with a qualified individual.  Whether it is

25  another plane captain teaching you how to

1

2    UNITED STATES OF AMERICA   )

3                                        ss:
     COMMONWEALTH OF VIRGINIA   )
4

5

6              I, T. S. HUBBARD, JR., a Notary Public

     within and for the District of Columbia do hereby
7
     certify that the witness whose deposition is
8
     hereinbefore set forth was duly sworn and that the
9
     within transcript is a true record of the testimony
10
     given by such witness.
11

12
               I further certify that I am not related
13
     to any of the parties to this action by blood or
14
     marriage and that I am in no way interested in the
15
     outcome of this matter.
16

17
               IN WITNESS WHEREOF, I have hereunto set
18
     my hand this 29TH day of February 2016.
19

20    _____

21    Thomas S. Hubbard, Jr.
     Notary Public Commonwealth of Virginia
22

23

24

25

# EXHIBIT F

**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

1            UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF CALIFORNIA

3

4

5   Dominic Fontalvo, a minor,    )
    by and through his Guardian   )
6   Ad Litem, Tashina Amador,     ) Civil Action No.
    individually and as           )
7   successor in interest to      ) 13-cv-00331-GPC-KSC
    Alexis Fontalvo, deceased,    )
8   and T.L., a minor, by and     )
    through her Guardian Ad       )
9   Litem, Tashina Amador,        )
                                  )
10              Plaintiffs,       ) Pages 1-59
                                  )
11        VS.                     )
                                  )
12  Sikorsky Aircraft             )
    Corporation, Sikorsky         )
13  Support Services, Inc.,       )
    et al.,                       )
14                                )
                Defendants.       )
15  _____ )

16

17  VIDEOTAPED DEPOSITION OF:

18          JEREMIAH WILCOX

19          THURSDAY, MARCH 17, 2016

20          2:49 P.M.

21

22

23

24  Reported by:  LINDA NICKERSON

25              CSR No. 8746

1     Q     Have you ever experienced a stuck -- or a          03:05:29

2  pin that was stuck or landing gear safety pin that          03:05:33

3  was stuck or offered resistance?          03:05:36

4     A     I have.          03:05:37

5     Q     Can you tell us the circumstances?          03:05:38

6     A     The circumstances on that was aircraft that          03:05:40

7  were parked on the deck of a ship while deployed in          03:05:44

8  the Pacific Ocean.  Due to the salt water spray, the          03:05:47

9  landing gear pins and any exposed metal that's not          03:05:51

10 painted can corrode and one of the aircraft or the          03:05:55

11 landing gear pins was starting to get some          03:05:58

12 resistance because it had corrosion built up, and          03:06:00

13 that's the only other time I've seen it, sir.          03:06:05

14    Q     Okay.  That was the first -- the only time          03:06:08

15 you've seen that?          03:06:09

16    A     Yes, sir.          03:06:10

17    Q     How many times have you -- have you pulled          03:06:10

18 landing gear safe -- safety pins on CH-53          03:06:12

19 helicopters in your career?          03:06:16

20    A     Over a thousand times, sir, at least.          03:06:18

21    Q     Okay.  When -- when did that happen, the          03:06:24

22 incident you just mentioned, the stuck or the          03:06:26

23 binding pin?          03:06:28

24    A     I believe it was 2009, sir.          03:06:29

25    Q     Did you discuss that with Sergeant Fontalvo          03:06:31

 1    when you instructed him in Okinawa?                03:06:34

 2         A    I did not, sir.                          03:06:36

 3         Q    But did you discuss the subject of the   03:06:37

 4    binding or stuck pin with him when you discussed -- 03:06:42

 5    when you instructed him in Okinawa?                03:06:43

 6         A    Yes, sir.                                03:06:46

 7         Q    Okay.  Then you've also brought with you 03:06:47

 8    something that's -- a document that's been marked as 03:06:51

 9    Wilcox Exhibit 4, and it's dated 1 May 2015, and it 03:06:54

10    says at the top "Organizational Maintenance         03:07:00

11    Principles of Operation, Landing Gear Control       03:07:03

12    System."                                            03:07:04

13         A    Yes, sir.                                03:07:04

14              (The document referred to was marked by the

15    Reporter as Wilcox Exhibit 4 for identification and

16    is attached hereto.)

17    BY MR. HUNT:                                        03:07:05

18         Q    Why -- what do you think is significant to 03:07:05

19    this case in this document?                         03:07:08

20         A    In this case, this would give the        03:07:09

21    principles of operation of landing gear systems and 03:07:14

22    how they work.  It is more detailed than the NATOPS 03:07:17

23    or other documents.  These principles of operation  03:07:21

24    manuals the -100 at the end of the manual designator 03:07:24

25    is what tells us the principles of operation.        03:07:29

1    Q    Then if you go to -- and I gather that from          03:17:13

2   the way these forms are filled out, that Sergeant          03:17:15

3   Fontalvo's performance was adequate, that he -- or          03:17:17

4   that he passed, he was found to be qualified?          03:17:21

5    A    Yes, sir.          03:17:25

6    Q    Okay.  What are the -- just there are          03:17:28

7   letters at the top of each column here, Q, U -- I          03:17:29

8   can't read the others.          03:17:34

9    A    They stand for -- Q for qualified, U for          03:17:36

10   unqualified, and DND, did not do, and NA, not          03:17:40

11   applicable.          03:17:45

12    Q    Thank you.  If you turn next to Exhibit --          03:17:46

13   I'm sorry -- Enclosure 11, so 11 through -- which          03:17:50

14   is -- which is Bates stamped MIL073062, let's see,          03:18:02

15   we have -- it looks like we have three pages of          03:18:14

16   flight log records here.          03:18:17

17            Is that what these are?          03:18:18

18    A    Yes, sir, these are from his log book.          03:18:19

19    Q    And just looking at the -- so this is          03:18:31

20   Sergeant -- this is from Sergeant Fontalvo's log          03:18:33

21   book?          03:18:36

22    A    Yes, sir.          03:18:36

23    Q    So looking at the first one, which is dated          03:18:37

24   August of 2010, it's got three entries.  Those are          03:18:48

25   the days of August 2010, I gather?          03:18:52

```
 1        A     Yes, sir.                                    03:18:54

 2        Q     Okay.  You can see that -- what the          03:18:54

 3    aircraft serial number is, we see three different --   03:18:59

 4    or three CH-53Es or flights on three CH-53Es,          03:19:03

 5    rather, correct?                                       03:19:10

 6        A     Yes, sir.                                    03:19:10

 7        Q     And the kind of flight says IAI and          03:19:10

 8    something else.                                        03:19:14

 9              Can you tell us what that means?             03:19:14

10        A     The kind of flight is a -- designated as     03:19:16

11    the type of flight conducted --                        03:19:17

12        Q     Okay.                                        03:19:20

13        A     -- whether it's training or FCF or in        03:19:20

14    country.                                               03:19:26

15        Q     And then the hours, we have 6.5 hours, 4.2,  03:19:26

16    and 5.0?                                               03:19:32

17        A     Yes, sir.                                    03:19:33

18        Q     And then in the -- you've also -- there was  03:19:34

19    also some -- some of that was nighttime apparently,    03:19:35

20    right?                                                 03:19:37

21        A     Yes, sir.                                    03:19:37

22        Q     And then in the far column on the right, we  03:19:38

23    have entries -- some sort of entries.                  03:19:44

24              Can you please tell us what those three      03:19:45

25    entries are and what they mean?                        03:19:48
```

 1      A    Those entries for the 12th of August list          03:19:49

 2   Dejarnatt as the instructor -- the crew chief              03:19:55

 3   instructor onboard.  The 13th, the shop S3 that            03:19:57

 4   makes these entries looks like mistakenly put the          03:20:04

 5   pilot's name as the instructor, and then on the 19th       03:20:08

 6   of August is my name of the instructor.  The three        03:20:13

 7   digit codes are the training codes listed of what         03:20:17

 8   they flew on those days.                                   03:20:20

 9      Q    Does that refer to Sergeant Fontalvo?             03:20:24

10      A    Yes, sir.                                          03:20:27

11      Q    In other words, that's the training he got        03:20:27

12   on those days?                                             03:20:29

13      A    Yes, sir.                                          03:20:30

14      Q    This was part of his training to be an            03:20:31

15   aerial observer?                                           03:20:33

16      A    Yes, sir.                                          03:20:34

17      Q    Would -- would that training have included        03:20:34

18   the subject of preflight and pretaxi operations?          03:20:39

19      A    Yes, sir.                                          03:20:44

20      Q    And would that include the handling of a --       03:20:45

21   of landing gear safety pins?                               03:20:50

22      A    Yes, sir.                                          03:20:51

23      Q    And also auxiliary tank safety pins?              03:20:52

24      A    Yes.                                               03:20:55

25      Q    Is there a procedure or practice that's           03:20:55

1        A      Yes, sir.                                        03:22:19

2        Q      Can you tell me what they mean from memory?      03:22:20

3        A      From memory, no, sir.  This -- these codes       03:22:22

4    are from a previous edition of the training                03:22:25

5    readiness manual.  Since then, we have gone to             03:22:29

6    four-digit training codes.                                 03:22:32

7        Q      Okay.  Would it have been the standard           03:22:37

8    practice when training someone to be an aerial             03:22:39

9    observer on a CH-53E to have him or her pull the           03:22:44

10   landing gear safety pins and the auxiliary tank            03:22:53

11   safety pins?                                               03:22:55

12       A      Yes, sir.                                        03:22:56

13       Q      Why is that?                                     03:22:56

14       A      We train to a two-man crew.  The crew chief      03:22:59

15   will be on the right gun and the aerial observer           03:23:01

16   will be on the left gun.                                   03:23:02

17              So as we're getting ready to pretaxi, the       03:23:02

18   aerial observer typically pulls the left side aux          03:23:05

19   tank and landing gear pin while the crew chief will        03:23:10

20   circle around to the right and pull the right side         03:23:14

21   aux tank and landing gear safety pin followed by the       03:23:16

22   nose landing gear pin and the chocks.                      03:23:18

23       Q      Was there a standard practice as to             03:23:19

24   instructing such an AO trainee on the -- on what to        03:23:23

25   do if the landing gear safety pin was binding or           03:23:27

1   resistant?                                              03:23:30

2       A    Anytime we train anybody, whether it's        03:23:33

3   maintenance or aircrew, if any resistance or binding    03:23:35

4   is felt, just stop and get somebody to help you out     03:23:38

5   and look at it.                                         03:23:44

6       Q    And what's the reason for that?               03:23:45

7       A    Typically the reason is, at that stage,       03:23:47

8   they do not have enough knowledge of what's going       03:23:48

9   on.  So if they do find any resistance or binding in    03:23:51

10  an auxiliary fuel tank pin, then they need to talk      03:23:54

11  to a flightline qualified mechanic about it.  If        03:23:58

12  there's any resistance or binding any landing gear      03:24:03

13  safety pin, then they will get an airframes mechanic    03:24:06

14  to take a look at it.                                   03:24:10

15      Q    Would you take a look at the next form --      03:24:12

16  similar form.  It's MIL073064, and this is -- this      03:24:14

17  is the flight log for Sergeant Fontalvo for             03:24:25

18  September 2010, September 7th, 27th, and 29th,          03:24:27

19  correct?                                                03:24:31

20      A    Yes, sir.                                      03:24:31

21      Q    And this also would have been in Okinawa?     03:24:31

22      A    Yes, sir.                                      03:24:33

23      Q    Are you -- it doesn't look to me -- I can't    03:24:34

24  tell for sure, but are you one of the three             03:24:40

25  gentlemen noted in the "Remarks" column?                03:24:43

1    STATE OF CALIFORNIA    )

2                          )  ss

3    COUNTY OF ORANGE       )

4            I, LINDA NICKERSON, CSR #8746, in and for

5    the State of California do hereby certify:

6            That, prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify the truth, the whole truth, and

9    nothing but the truth;

10           That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewritten form at my

13   direction, and the same is a true, correct, and

14   complete transcript of the testimony at said

15   proceedings.

16           Before completion of the deposition, review

17   of transcript [X] was [ ] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed

20   are appended hereto.

21           I further certify that I am not interested

22   in the event of the action.

23   WITNESS MY HAND this 30th day of March, 2016.

24   _____

25   LINDA NICKERSON, CSR No. 8746

# EXHIBIT G

<u>**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**</u>
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

```
1                  UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF CALIFORNIA
2
3    D.F., a minor, by and through  )
     his Guardian Ad Litem, TASHINA )
4    AMADOR, individually and as    )
     successor in interest to       )
5    Alexis Fontalvo, deceased, and )
     T.L., a minor, by and through  )
6    her Guardian Ad Litem, TASHINA )  No. 3:13-cv-00331-
     AMADOR,                        )            GPC-KSC
7                                   )
                 Plaintiffs,        )
8                                   )
           vs.                      )
9                                   )
     SIKORSKY AIRCRAFT CORPORATION; )
10   SIKORSKY SUPPORT SERVICES,     )
     INC.; UNITED TECHNOLOGIES      )
11   CORPORATION; G.E. AVIATION     )
     SYSTEMS, LLC; DUPONT AEROSPACE )
12   CO.; E.I. DUPONT DE NEMOURS    )
     AND COMPANY; IKL SERVICES INC.;)
13   and DOES 1 through 100,        )
     inclusive,                     )
14                                  )
                 Defendants.        )
15   _____)
16
17
18         VIDEOTAPED DEPOSITION OF MICAH HAMILTON
19                  San Diego, California
20               Thursday, January 26, 2016
21                      Volume I
22
23   Reported By:
     CATHERINE A-M GAUTEREAUX
24   CSR No. 3122
     Job No. 2528199
25   PAGES 1 - 96
```

Veritext Legal Solutions
866 299-5127

```
 1    really, my training and what I worked on when I was       08:21:22

 2    a mechanic on CH-53 Echos.

 3              And the -- also, the duties and

 4    responsibilities of a -- talking about the aerial

 5    observer and the crew chief is also outside my MOS,       08:21:37

 6    my military occupational specialty.

 7         Q    Okay.  So what is your MOS?

 8         A    At that time it was a 6153, which is a

 9    CH-53Echo airframe mechanic.

10         Q    Okay.  And did you -- do you have any            08:21:54

11    knowledge of the CH-53E phased Kapton replacement

12    program?

13         A    No, I do not.

14         Q    I believe you just testified, you have

15    never been an aerial observer for --                      08:22:16

16         A    I was, sir.  Yes, I was an aerial

17    observer.  The last time I did fly was 2005, but

18    that was a voluntary duty that I did.  It was not

19    required of me.  I just did it to -- to help out as

20    far as the squadron.  It was during the war time.         08:22:33

21              But, like I said, last time I flew was

22    2005, which is before I met Alex Fontalvo.  So

23    whatever training he did with that, I have no

24    knowledge of.

25         Q    Okay.  When did you get your commission?         08:22:51
```

                                              Page 18

```
 1          Q    Okay.  And with regard to maintenance, how    08:51:43
 2   many times have you done it?
 3          A    Upward of a hundred times, at least.
 4          Q    Okay.  Have you ever encountered a stuck
 5   landing gear safety pin?                                  08:51:53
 6          A    No, sir.
 7          Q    As you sit here today, do you know what to
 8   do if you encounter a stuck landing gear safety pin?
 9          A    As I sit here today, no, sir.  Obviously,
10   after what happened, I would change what I would --       08:52:05
11   if I felt one now, I would never touch it.  But we
12   were never instructed.  It was not common knowledge,
13   if you felt, you know, something that was stuck, not
14   to pull it out.
15          Q    Okay.  So when you were working as an          08:52:17
16   airframe mechanic, you don't believe you were ever
17   instructed as to what to do if you encountered a
18   stuck landing gear safety pin?
19          A    No, sir.
20          Q    Okay.  If there is an issue with the           08:52:33
21   landing gear, who's the person that would have -- or
22   who would you go to in order to discuss the landing
23   gear, that particular landing gear issue?
24          A    I would be in the airframe shop.
25          Q    Okay.  And within the airframe shop, who       08:52:58
```

Page 42

```
 1   them.                                            09:54:34
 2                      EXAMINATION
 3   BY MR. MONTANARI:
 4        Q    Captain Hamilton, my name is Gary
 5   Montanari.  I represent Dupont.  I just have a few  09:54:58
 6   questions.
 7        A    Okay.
 8        Q    Do I understand from your prior testimony
 9   that between 1999 and 2010, you pulled the landing
10   gear safety pin on CH-53E helicopters at least      09:55:11
11   150 times?
12        A    Yes, sir.
13        Q    All right.  And that's both prior to
14   flight and during maintenance operations?
15        A    Yes, sir.                                09:55:22
16        Q    And you testified that one of the things
17   you knew was that you kept the landing gear safety
18   pin in if you wanted to prohibit the landing gear
19   from retracting, correct?
20        A    Yes, sir.                                09:55:35
21        Q    Now, on any of those 150 times or more
22   that you pulled the landing gear safety pin, did you
23   ever get any resistance to the pin coming out?
24        A    No, sir.
25        Q    So each -- it comes out fairly easily,    09:55:47
```

Page 82

Veritext Legal Solutions
866 299-5127

```
 1              I, the undersigned, a Certified Shorthand

 2    Reporter of the State of California, do hereby

 3    certify:

 4              That the foregoing proceedings were

 5    reported by me at the time and place herein set

 6    forth; that any witnesses in the foregoing

 7    proceedings, prior to testifying, were placed under

 8    oath; that a verbatim record of the proceedings was

 9    made by me using machine shorthand which was

10    thereafter transcribed under my direction; further,

11    that the foregoing is an accurate transcription

12    thereof.

13              That a review of the transcript by the

14    deponent was requested.

15              I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney of any of the parties.

18              IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20    Dated:  February 8, 2017.

21

22

23

24

              CATHERINE A-M GAUTEREAUX

25              CSR NO. 3122


                                           Page 96
```

# EXHIBIT H

D.F., et al. v. Sikorsky Aircraft Corporation, et al.
United States District Court, Case No. 13-cv-00331-GPC-KSC

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

 4              AGENCY Case No. 13-cv-00331-GPC-KSC

 5    - - - - - - - - - - - - - - - - - - x

 6    Dominic Fontalvo a minor, by and through

 7    his Guardian Ad Litem, Tashina Amador,

 8    individually and as successor in interest

 9    to Alexis Fontalvo, deceased, and T.L.

10    a minor, by and through her Guardian

11    Ad Litem, Tashina Amador,

12
                        Plaintiffs,
13    vs

14    Sikorsky Aircraft Corporation, Sikorsky

15    Support Services, Inc., et al,

16

17                      Defendants.

18    - - - - - - - - - - - - - - - - - - x

19        DEPOSITION OF JUSTIN ROBERT BROWN

20                 Quantico, Virginia

21                 February 19, 2016

22                   1:15  p.m.

23

24                  * * * * *

25
```

1    can recollect.  I don't recall.

2         Q    As you sit here you don't recall there

3    was any change made to the NATOPS, any permanent

4    change made to the NATOPS manual?

5         A    I believe there was, but I don't have

6    like the utmost confidence.  I want to say yes,

7    but I'm not sure.  I cannot remember.

8         Q    Was there a warning added to the NATOPS

9    manuals?

10        A    It would have been probably either a

11   note warning or a caution, most likely a warning

12   because serious injury or death could result.

13             MR. HICKEY:  Two more exhibits.  If you

14        want copies?

15   (Whereupon, Deposition J. Brown Exhibit No. 15 is

16   marked for Identification.)

17   (Whereupon, Deposition J. Brown Exhibit No. 16 is

18   marked for Identification.)

19             MR. HICKEY:  Deposition Exhibit 15 is a

20        portion of the NATOPS manual from July 2012.

21             It has Bates Numbers MIL 012064 through

22        66 and then some additional pages MIL 012382

23        to 012385.

24   BY MR. HICKEY:

25        Q    Captain Brown, do you have Deposition

1    Exhibit 15 in front of you?

2        A    I do.

3        Q    Do you recognize this document?

4        A    Yes.

5        Q    What is this document?

6        A    It is excerpts out of a NATOPS manual

7    dated 1 July 2012, so an updated version.

8        Q    If you could turn to page MIL 012384.

9    Go down to step Number 21, Pins and Chocks.  Do

10   you see the warning underneath there?

11       A    I sure do.

12       Q    I will just read it.  "If any

13   resistance or binding is felt while pulling a

14   landing gear safety pin, reseat it immediately and

15   do not attempt to remove any of the remaining

16   pins.

17            "Failure to do so may allow the landing

18   gear to inadvertently retract from the ground."

19            Having read this, does this refresh your

20   memory as to whether any changes were made to the

21   manuals after the accident involving Sergeant

22   Fontalvo?

23       A    Clearly.

24       Q    To your knowledge is that warning still

25   in place in the NATOPS manuals?

1          A     To the best of my knowledge.

2     (Whereupon, Deposition J. Brown Exhibit No. 16 is

3     marked for Identification.)

4     BY MR. HICKEY:

5          Q     If you will go to Deposition Exhibit 16

6     dated 1 January 2015, and go to page 014900, again

7     on Step 21, do you see that the warning is still

8     there?

9          A     Correct.

10          Q     Other than that warning being put into a

11     NATOPS manual, are you aware of any other changes

12     to the NATOPS manuals for CH-53 E Helicopter that

13     are the result of the accident involving Sergeant

14     Fontalvo?

15          A     Not that I am aware of.

16          Q     Do you know if a similar warning was put

17     in the NATOPS check list for the CH-53 E

18     Helicopter?

19          A     The pocket check list, the NFM 500?

20          Q     Correct.

21          A     I would assume so since this is Chapter

22     7, so this is basically the pocket check list, so

23     an exact mirrored version would most likely be in

24     the NFM 500.

25          Q     Would the same warning also have been

1   put into the pocket check list for the air crew,

2   the NFM-900?

3        A    I would assume, but that is an

4   assumption.

5        Q    Does the NATOPS flight manual contain

6   emergency procedures?

7        A    It does.

8        Q    What information is given to the flight

9   crew of a CH-53 E in the emergency procedures that

10  are listed in the flight manual?

11       A    It is step-by-step instructions of what

12  to do if you are presented with an emergency just

13  classified by different systems in the aircraft.

14            It is pretty lengthy.  I believe it is

15  Chapter 12 perhaps.  It is pretty lengthy

16  especially in the 53s since it has a lot of

17  systems.

18            So to recap step-by-step instructions of

19  what to do.  The pilots have a set of steps and

20  the air crew have their set of steps and sometimes

21  they overlap.

22       Q    Theses are designed to give the flight

23  crew information in the event of a variety of

24  different types of emergencies that could occur?

25       A    That are known, correct, yes.

1

2   UNITED STATES OF AMERICA   )

3                              ss:
    COMMONWEALTH OF VIRGINIA   )
4

5
            I, T. S. HUBBARD, JR., a Notary Public
6
    within and for the District of Columbia do hereby
7
    certify that the witness whose deposition is
8
    hereinbefore set forth was duly sworn and that the
9
    within transcript is a true record of the testimony
10
    given by such witness.
11

12
            I further certify that I am not related
13
    to any of the parties to this action by blood or
14
    marriage and that I am in no way interested in the
15
    outcome of this matter.
16

17
            IN WITNESS WHEREOF, I have hereunto set
18
    my hand this 29TH day of February 2016.
19

20   _____

21   Thomas S. Hubbard, Jr.
     Notary Public Commonwealth of Virginia
22

23

24

25

```
 1              UNITED STATES DISTRICT COURT
 2             SOUTHERN DISTRICT OF CALIFORNIA
 3               CASE NO. 13-CV-00331-GPC-KSC
 4    _____
      D.F. a minor, by and through his Guardian Ad)
 5    Litem, TASHINA AMADOR, individually and as  )
      successor in interest t Alexis Fontalvo,    )
 6    deceased, and T.L. a minor, by and through  )
      her Guardian Ad Litem, TASHINA AMADOR,      )
 7                                                )
              Plaintiffs                          )
 8                                                )
         VS.                                      )
 9                                                )
      SIKORSKY AIRCRAFT CORPORATION; SIKORSKY     )
10    SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES )
      CORPORATION; G.E. AVIATION SYSTEMS, LLC;    )
11    DUPONT AEROSPACE CO,; E.I. DUPONT DE NEMOURS)
      AND COMPANY; PKL SERVICES, INC.; and DOES 1 )
12    through 100, inclusive,                     )
                                                  )
13            Defendants                          )
                                                  )
14
15
16
17       Deposition of ROBERT JORDAN, taken on behalf of
18    the Defendants, before Tamara Violette, Professional
19    Reporter and Notary Public, at Courtyard by Marriott, 218
20    East Front Street, New Bern, North Carolina on the 16th day
21    of November, 2016, commencing at 9:05 a.m.
22
23
24
25    Pages 1 - 62
```

Veritext Legal Solutions
866 299-5127

```
 1   tools?

 2        A    No.

 3        Q    So how would you describe your job?  You're

 4   involved in maintenance but you're not actually maintaining

 5   the aircraft?

 6        A    Right.  We write the instructions for maintaining

 7   the aircraft.  Sikorsky delivered the initial maintenance

 8   publications for the aircraft, and we have taken over

 9   cognizance of those manuals and we maintain them for

10   maintenance requirements, as well as maintenance

11   instructions.

12        Q    Do you know what -- were you involved --

13   withdrawn.  Were you involved when the original

14   instructions were agreed upon for the CH-53E aircraft?

15        A    No, that was before my time.

16        Q    Again, when did you join NAVAIR?

17        A    In 1984, November of 1984.

18        Q    Just after you got your degree?

19        A    Yes.

20        Q    Going on something over twenty years now?

21        A    Thirty-two as of last Sunday.

22        Q    Briefly just describe the job titles you've had

23   -- thirty-two?

24        A    Yes.

25        Q    I missed a decade, I'm sorry.
```

Veritext Legal Solutions
866 299-5127

```
 1   in your --
 2        A    That was correct, I did not attend any.
 3        Q    You did mention that your responsibilities
 4   include the landing gear and hydraulic systems.  Were there
 5   any changes to either the landing gear or hydraulic systems
 6   as a result of the 2011 accident with respect to
 7   maintenance?
 8        A    Maintenance, yes.  As far as the requirements to
 9   not remove the safety pins, for any other thing than going
10   flight, and that is covered in an operational manual that
11   we do not have cognizance over the NATOPS, but we did add
12   warnings or cautions in to several publications saying
13   don't remove the pins unless aircraft is jacked; and if you
14   are removing the pins, if there's any resistance felt, do
15   not pull the pin out.
16        Q    Okay, with respect to the landing gear other than
17   pins, were there any changes made to the maintenance
18   manuals?
19        A    No -- well, again, that was warnings added.
20        Q    Okay.
21        A    There were inspection requirements, I believe,
22   added on the daily to look at the wire bundle going to the
23   utility module control valve for the landing gear; that
24   they should be looking for chaffing and damage that is in
25   there.  Now, when that was put in, I don't know exactly but
```

Page 58

```
 1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF CALIFORNIA
 2              CASE NO. 13-CV-00331-GPC-KSC
      _____
 3    D.F. a minor, by and through his Guardian Ad)
      Litem, TASHINA AMADOR, individually and as  )
 4    successor in interest t Alexis Fontalvo,     )
      deceased, and T.L. a minor, by and through   )
 5    her Guardian Ad Litem, TASHINA AMADOR,       )
                                                   )
 6          Plaintiffs                             )
                                                   )CERTIFICATE
 7        VS.                                      )
                                                   )
 8    SIKORSKY AIRCRAFT CORPORATION; SIKORSKY      )
      SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES  )
 9    CORPORATION; G.E. AVIATION SYSTEMS, LLC;     )
      DUPONT AEROSPACE CO,; E.I. DUPONT DE NEMOURS )
10    AND COMPANY; PKL SERVICES, INC.; and DOES 1  )
      through 100, inclusive,                      )
11                                                 )
            Defendants                             )
12                                                 )
13
           I, Tamara Violette, PR, a certified court reporter and
14    notary public for Pender County, North Carolina, do hereby
      certify that Robert Jordan appeared before me on November
15    16, 2016 and was duly sworn by me; that he was required to
      review the transcript; that he was thereupon examined and
16    his testimony transcribed by me or under my direct
      supervision; that the foregoing 60 pages constitute a true
17    and accurate record of the proceedings to the best of my
      knowledge and belief;
18         I further certify that I am neither attorney or
      counsel for, nor related to or employed by, any of the
19    parties to the action in which this deposition was taken,
      and further, that I am not a relative or employee of any
20    attorney or counsel employed by the parties hereto, not
      interested, directly or indirectly, in the matters of
21    controversy nor financially interested in the results of
      this action.
22         In witness whereof, I have hereunto set my hand on
      this, the 1st day of December, 2016.
23
24
                              <%signature%>
25                            TAMARA VIOLETTE
                              PROFESSIONAL REPORTER

                                                      Page 61
```

1              UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4              AGENCY Case No. 13-cv-00331-GPC-KSC

5  - - - - - - - - - - - - - - - - - - - x

6  Dominic Fontalvo a minor, by and through

7  his Guardian Ad Litem, Tashina Amador,

8  individually and as successor in interest

9  to Alexis Fontalvo, deceased, and T.L.

10  a minor, by and through her Guardian

11  Ad Litem, Tashina Amador,

12                 Plaintiffs,

13  vs

14  Sikorsky Aircraft Corporation, Sikorsky

15  Support Services, Inc., et al,

16

17                 Defendants.

18  - - - - - - - - - - - - - - - - - - - x

19     DEPOSITION OF JOSHUA DAVID PERKINS

20            Quantico, Virginia

21            February 19, 2016

22              9:00 a.m.

23

24             * * * * *

25

1          Then once I got out to my first unit,

2     HMH 361, there are multiple different syllabi that

3     we follow under our training program that

4     step-by-step takes you along the way to get you to

5     where you need to be for each qualification.

6          There are hundreds of maintenance

7     manuals that you're constantly reading, looking

8     at, and going out with experienced guys learning

9     the jobs turning these things apart and back

10    together, fixing and doing what it is we need to

11    do.

12          Q    Are all of the syllabi and maintenance

13    manuals that you are referring to related to power

14    plant?

15          A    They are related to just about

16    everything.  When Sikorsky, like with all of their

17    publications, came out, it was all from the air

18    frame pretty much all the way to the back of the

19    aircraft, all broken down into different numbers

20    and then different numbers are broken down into

21    numbers for maintenance procedures, theory of

22    operations, parts ordering, and parts breakdown

23    and things of that nature.

24          Q    Were you given any training regarding a

25    preflight inspection of helicopters?

1   let the pilots know, and let's start to

2   investigate so this does not further happen.

3        Q    Do you know if there were any changes to

4   the NATOPS check list with regard to pulling the

5   landing gear pin?

6        A    At the time someone higher up in the

7   Marine Corps said, "We're going to safety wire all

8   of these landing gear pins in and they are not

9   going to be removed until the investigation is

10  complete."

11            Once the investigation was complete, and

12  I'm not 100 percent sure if it was actually

13  physically a black and white change, but we're not

14  going to pull any landing gear pins or we will be

15  pulling landing gear pins, but we will do that

16  before the auxillary power plant comes on so there

17  is no electricity going to the aircraft so that

18  there was no chance at that point of somebody

19  being under the aircraft if this were to happen

20  again, so we would pull our pins first, then start

21  our normal daily turn up and flight, then we would

22  shut down the aircraft and put our pins back in.

23            I don't know if that made it 100 percent

24  black and white in the book, but I know that

25  that's what we went by and then deployment

1  happened, so the next thing you know, I was

2  PCS'ing out of there.

3       Q    You mentioned two things, I think.  I

4  will just confirm this.  So post accident with

5  regard to the CH-53 Helicopter, for a certain

6  amount of time you kept the landing gear safety

7  pins in the landing gear?

8       A    Yes.

9       Q    While you're flying?

10       A    Yes, sir.

11       Q    While flying, the landing gear was

12  always extended?

13       A    Yes, sir.

14       Q    At some point did that procedure stop

15  and go back to what it was before the accident

16  being that you would pull the pin out and retract

17  the gear?

18       A    It went not 100 percent back.  We just

19  went back to pulling the pins before our APU came

20  online or when we were at 100 percent with the

21  main rotor head ready to actually taxi out, so

22  that's when we would pull them.

23            And now when the new change came into

24  place, once the investigation was over, we would

25  pull the pins before the APU comes online, outside

1

2    UNITED STATES OF AMERICA   )

3                                         ss:
     COMMONWEALTH OF VIRGINIA   )
4

5
             I, T. S. HUBBARD, JR., a Notary Public
6
     within and for the District of Columbia do hereby
7
     certify that the witness whose deposition is
8
     hereinbefore set forth was duly sworn and that the
9
     within transcript is a true record of the testimony
10
     given by such witness.
11

12
             I further certify that I am not related
13
     to any of the parties to this action by blood or
14
     marriage and that I am in no way interested in the
15
     outcome of this matter.
16

17
             IN WITNESS WHEREOF, I have hereunto set
18
     my hand this 29TH day of February 2016.
19

20    _____

21    Thomas S. Hubbard, Jr.
      Notary Public Commonwealth of Virginia
22

23

24

25

```
1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
2
3    D.F., a minor, by and through  )
     his Guardian Ad Litem, TASHINA )
4    AMADOR, individually and as    )
     successor in interest to       )
5    Alexis Fontalvo, deceased, and )
     T.L., a minor, by and through  )
6    her Guardian Ad Litem, TASHINA )  No. 3:13-cv-00331-
     AMADOR,                        )            GPC-KSC
7                                   )
                Plaintiffs,         )
8                                   )
          vs.                       )
9                                   )
     SIKORSKY AIRCRAFT CORPORATION; )
10   SIKORSKY SUPPORT SERVICES,     )
     INC.; UNITED TECHNOLOGIES      )
11   CORPORATION; G.E. AVIATION     )
     SYSTEMS, LLC; DUPONT AEROSPACE )
12   CO.; E.I. DUPONT DE NEMOURS    )
     AND COMPANY; IKL SERVICES INC.;)
13   and DOES 1 through 100,        )
     inclusive,                     )
14                                  )
                Defendants.         )
15   _____)
16
17
18      VIDEOTAPED DEPOSITION OF CHRISTOPHER A. DANLEY
19               San Diego, California
20             Tuesday, November 22, 2016
21                    Volume I
22
23   Reported By:
     CATHERINE A-M GAUTEREAUX
24   CSR No. 3122
25   Job No. 2482433
     PAGES 1 - 68                                      1
```

Veritext Legal Solutions
866 299-5127

```
 1    where the aux tank pin was, you don't know whether      10:51:57

 2    he was using it to try to pull out the landing gear

 3    safety pin or not?

 4         A    I don't.  I don't know if he was trying to

 5    use it as leverage, no.                                 10:52:07

 6         Q    You talked about getting some training

 7    from the Marines after the incident on what to do in

 8    the event of a stuck landing gear safety pin,

 9    correct?

10         A    Yes.                                          10:52:24

11         Q    And how long was that after the accident

12    that you got that training?

13         A    We -- once we started doing flight ops

14    again, we immediately started saying -- or training

15    about it.                                               10:52:36

16         Q    Was that within a week or two weeks or a

17    month or --

18         A    I believe it was two weeks.  I'm not -- I

19    can't recall.

20         Q    And was that training verbal?                10:52:45

21         A    Yes.

22         Q    Was there any written documentation also

23    given to you?

24         A    At that point, no.  Later on, they made a

25    change to the publication.                              10:52:56
```

Veritext Legal Solutions
866 299-5127

1    Q    Which pub- -- publication?                    10:52:58

2    A    I believe, in the 130 and the pocket

3    checklist.

4    Q    What's the 130?

5    A    130 is the landing gear systems.  I also    10:53:10

6    believe -- not 100 percent sure -- that's in the

7    GAI.  General Aircraft Information.

8    Q    You said it was in the 130, which is the

9    landing gear systems?

10   A    Yes.                                          10:53:32

11   Q    Is that the maintenance manual or --

12   A    Yes, it's the maintenance manual.

13   Q    And you said there was also a change in

14   the -- did you say pocket checklist?

15   A    Yes.                                          10:53:41

16   Q    When you -- strike that.  On the day of

17   the incident, when you were going to taxi the

18   aircraft, is there a checklist or document that you

19   were referring to?

20   A    I was not -- I did not -- it didn't          10:53:55

21   require me to have one with me.

22   Q    After this incident, did you have any

23   discussion with anyone else, any other Marines who

24   had ever had any problems pulling a landing gear

25   safety pin?                                        10:54:37

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby
 3    certify:
 4              That the foregoing proceedings were
 5    reported by me at the time and place herein set
 6    forth; that any witnesses in the foregoing
 7    proceedings, prior to testifying, were placed under
 8    oath; that a verbatim record of the proceedings was
 9    made by me using machine shorthand which was
10    thereafter transcribed under my direction; further,
11    that the foregoing is an accurate transcription
12    thereof;
13              That a review of the transcript by the
14    deponent was requested;
15              I further certify I am neither financially
16    interested in the action nor a relative or employee
17    of any attorney of any of the parties.
18              IN WITNESS WHEREOF, I have this date
19    subscribed my name.
20    Dated:  December 9, 2016
21
22
23
24
25              CATHERINE A-M GAUTEREAUX
                 CSR NO. 3122


                                       Page 68
```

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4

5    DOMINIC FONTALVO, a minor,  )Case No.
     by and through his Guardian )3:13-cv-00331-GPC-KSC
6    Ad Litem,TASHINA AMADOR,    )
     individually and as a       )
7    successor in interest to    )
     Alexis Fontalvo, deceased,  )
8    and TANIKA LONG, a minor,   )
     by and through her Guardian )
9    Ad Litem, TASHINA AMADOR,   )
                                 )
10             Plaintiff,        )
                                 )
11   v.                          )
                                 )
12   SIKORSKY AIRCRAFT           )
     CORPORATION; SIKORSKY       )
13   SUPPORT SERVICES, INC.;     )
     UNITED TECHNOLOGIES         )
14   CORPORATION, et al.,        )
                                 )
15             Defendants.       )VOLUME 2
     _____)Pages 102 - 284
16

17   DEPOSITION OF:

18                  JOHN WAKEFIELD

19                  TUESDAY, MAY 9, 2017

20                  10:19 A.M.

21

22

23

24   REPORTED BY:   c. jane harman

25                  CSR No. 5266

1        There are general guidance not only in

2   SD24J and other detailed -- other reference

3   specifications for the Navy.  So it may not be

4   there, it could be in another Navy specification.

5        Q.  Okay.  So still in Appendix B of your

6   report on page twelve, you've got a list of items

7   under the heading "Additional Consideration Relating

8   to the Contract and Specification Are Listed Below."

9        Do you see that?

10       A.  I do.

11       Q.  Okay.  So item A there is:

12             "U.S. Navy had its own engineers

13             and routinely reviews and approves

14             even the smallest detail of the

15             design, test and manufacturing

16             process."

17             Is there any evidence in either of these

18   binders that the U.S. Navy engineers reviewed or

19   approved any detail of the landing gear wiring

20   harness of the CH-53E?

21       A.  There is nothing in those manuals that I --

22   that information that I've provided you.

23       Q.  Now, you used the term "manual."  I was --

24   I was going to ask you --

25       A.  I misspoke on manuals.  Those are

1   specifications and reports.

2        Q.  Okay.  What is a manual?

3        A.  In my experience --

4        Q.  Yeah.

5        A.  -- a manual is something that's produced

6   relative to aviation manuals are produced by the

7   government and delivered to the user at one level or

8   the other.

9        Q.  Okay.  And in your capacity working as a

10  program manager within military aviation, did you

11  ever participate in the drafting of a manual?

12       A.  No, I never did.

13       Q.  Okay.  And did you ever participate in

14  the contracting for the drafting of a manual?

15       A.  No.

16           And let me explain.  Manuals are not

17  drafted by Sikorsky Aircraft.  Sikorsky Aircraft

18  provides to the Navy engineering data for which the

19  Navy produces a manual.

20       Q.  Do you -- is there any documentary evidence

21  in either of these binders that Sikorsky ever

22  provided engineering data to the Navy with respect

23  to the risk of an inadvertent landing gear

24  retraction in the event of a short circuit?

25       A.  Very specific question.  Can I have that

 1   read back?

 2            MR. SHEPARDSON:  Please.

 3            (The record was read as follows:

 4            QUESTION:  Is there any documentary

 5            evidence in either of these binders

 6            that Sikorsky ever provided engineering

 7            data to the Navy with respect to the

 8            risk of an inadvertent landing gear

 9            retraction in the event of a short

10            circuit?)

11            THE WITNESS:  There is nothing in those

12   manuals that I have utilized to prepare my opinions.

13   BY MR. SHEPARDSON:

14       Q.  And again, did you misspeak when you said

15   "manuals," you meant --

16       A.  I apologize.  It's a -- I did misspeak, so

17   my apologies.  It is information provided.

18       Q.  Okay.  So going back to the list in

19   Appendix B here, sub letter B is:

20            "U.S. Navy has its own flight

21            worthiness approval authority and

22            determines whether the helicopter

23            is safe for flight and safe for

24            use."

25            MR. HUNT:  Where are you reading from,

1
STATE OF CALIFORNIA    )
2                      )  ss
COUNTY OF LOS ANGELES )
3

4          I, c. jane harman, CSR No. 5266, in and

5    for the State of California do hereby certify:

6          That, prior to being examined, the

7    witness named in the foregoing deposition was by me

8    duly sworn to testify the truth, the whole truth,

9    and nothing but the truth;

10          That said deposition was taken down by me

11   in shorthand at the time and place therein named,

12   and thereafter reduced to typewritten form

13   direction, and the same is a true, correct and

14   complete transcript of said proceedings.

15          Before completion of the deposition,

16   review of transcript [ ] was [ ] was not requested.

17          If requested, any changes made by the

18   deponent (and provided to the reporter) during the

19   period allowed are appended hereto.

20          I further certify that I am not

21   interested in the event of the action.

22          WITNESS MY HAND this 25TH day of MAY,

23   2017.

24          _____

25          c. jane harman, CSR No. 5266

1                    UNITED STATES DISTRICT COURT

2               SOUTHERN DISTRICT OF CALIFORNIA

3

4

5    Dominic Fontalvo, a minor,    )
     by and through his Guardian   )
6    Ad Litem, Tashina Amador,     ) Civil Action No.
     individually and as           )
7    successor in interest to      ) 13-cv-00331-GPC-KSC
     Alexis Fontalvo, deceased,    )
8    and T.L., a minor, by and     )
     through her Guardian Ad       )
9    Litem, Tashina Amador,        )
                                   )
10                   Plaintiffs,   ) Pages 1-226
                                   )
11        VS.                      )
                                   )
12   Sikorsky Aircraft             )
     Corporation, Sikorsky         )
13   Support Services, Inc.,       )
     et al.,                       )
14                                 )
                     Defendants.   )
15   _____ )

16

17   VIDEOTAPED DEPOSITION OF:

18         IAN DANIEL STEVENS

19         WEDNESDAY, MARCH 16, 2016

20         10:23 A.M.

21

22

23

24   Reported by:  LINDA NICKERSON

25               CSR No. 8746

1      Q     And your source for that was Enclosure 23;     11:45:43

2   am I correct?     11:45:53

3      A     Yes, sir.     11:45:54

4      Q     Let's take a look at Enclosure 23.  Do you     11:45:54

5   have it?     11:46:01

6      A     Yes, sir.     11:46:01

7      Q     Okay.  What is -- what is Enclosure 23?     11:46:02

8      A     It is a page of the maintenance manual.     11:46:06

9      Q     This says, "GAI" up on top?     11:46:09

10      A     Yes, sir.     11:46:12

11      Q     Does that mean general aircraft     11:46:12

12   information?     11:46:14

13      A     It might, sir.     11:46:15

14      Q     Okay.     11:46:16

15      A     Sounds accurate to me, but I simply don't     11:46:18

16   know.     11:46:21

17      Q     Okay.  And on that page, on the -- let's     11:46:21

18   see here -- I guess Enclosure 23 is one page.     11:46:27

19   There's a section down in the middle in the first     11:46:32

20   column which says "Safety Pins"?     11:46:34

21      A     Yes, sir.     11:46:36

22      Q     Would you read into the record the last     11:46:36

23   paragraph on the left side?     11:46:44

24      A     Yes.  "Landing gear pins (three) provide a     11:46:48

25   mechanical lock to landing gear drag struts to     11:46:52

1   prevent accidental retraction of landing gear or      11:46:56

2   collapsing of gear resulting from a malfunction of     11:46:58

3   drag strut.  Safety pin is installed in each          11:47:01

4   auxiliary tank to prevent accidental dropping of       11:47:03

5   tank while the helicopter is on the ground.  Safety    11:47:07

6   pins mechanically and electrically lock out in the     11:47:11

7   jettison mechanism in tank."                           11:47:11

8        Q    Okay.  And what's the date of Enclosure 23,  11:47:13

9   the GAI?                                               11:47:16

10       A    It looks like it's change 4, 1 July 2003.    11:47:16

11       Q    So preaccident obviously?                    11:47:21

12       A    Yes, sir.                                    11:47:24

13       Q    So this existed preaccident.  What -- where  11:47:25

14  did you get this -- throughout your report, you have   11:47:27

15  a number of manuals or extracts from a number of       11:47:30

16  manuals?                                               11:47:35

17       A    Yes, sir.                                    11:47:35

18       Q    Where did you get those manuals?             11:47:36

19       A    We have a public -- a publication library    11:47:37

20  maintained by the -- sorry -- publication library      11:47:41

21  maintained by the quality assurance shop, sir.         11:47:45

22       Q    Okay.  Did you get any of the manuals from   11:47:47

23  the accident aircraft?                                 11:47:51

24       A    Each aircraft doesn't have its own manual.   11:47:53

25  So these are -- these are maintenance manuals          11:47:56

1    specific only to the CH-53 Echo.                    11:47:58

2        Q    Okay.  So you got it from the -- from the  11:48:01

3    HMH-361 shop or from --                             11:48:05

4        A    I don't recall.                            11:48:11

5        Q    Okay.  You got it from one of the shops    11:48:11

6    anyway?                                             11:48:19

7        A    Our publications would be the same.  So I  11:48:19

8    estimate that I would have gotten it from my own    11:48:21

9    squadron because I knew everybody there, and I      11:48:25

10   didn't know anybody in 361, but that's speculation. 11:48:28

11       Q    Okay.  Did you question various witnesses  11:48:43

12   as to their knowledge of the purpose of the landing 11:48:45

13   gear safety pin?                                    11:48:47

14       A    Yes, sir.                                  11:48:49

15       Q    And did everybody know what the purpose of 11:48:50

16   the landing gear safety pin was?                    11:48:53

17       A    Yes, sir.                                  11:48:54

18       Q    And the purpose is again?                  11:48:55

19       A    As a mechanical stop from inadvertent      11:48:57

20   retraction or collapsing.                           11:49:00

21       Q    Is that -- is that safety pin considered to 11:49:01

22   be a so-called interlock?                           11:49:07

23       A    I would not consider it an interlock, sir. 11:49:09

24       Q    Do you know what an interlock is?          11:49:12

25       A    In my world, I do, yes, sir.               11:49:14

 1       Q    And then in your recommendations, you -- in    02:16:21
 2   number 2, you recommended that verbiage should be    02:16:32
 3   added to the -- to NATOPS -- to a portion of the    02:16:34
 4   NATOPS manual describing the purpose of the landing    02:16:39
 5   gear pins, including a warning in the pocket    02:16:42
 6   checklist, etcetera.    02:16:44
 7            Do you know if those things were done?    02:16:45
 8       A    I believe that they were, sir.    02:16:50
 9       Q    By the Navy?    02:16:51
10       A    Yes, sir.    02:16:52
11       Q    And, similarly, in recommendation number 3,    02:16:52
12   you recommend the description and explanation of the    02:17:02
13   landing gear safety pin's function should be added    02:17:04
14   to all appropriate technical publications, include a    02:17:07
15   warning regarding the danger of removing a pin that    02:17:10
16   is impeded.    02:17:13
17            Has that been done also?    02:17:14
18       A    I do not know, sir.    02:17:15
19            MR. HUNT:  Okay.  I'm going to pass the    02:17:27
20   witness, give somebody else a chance --    02:17:28
21            THE REPORTER:  Can we take a bathroom    02:17:32
22   break?    02:17:34
23            MR. SHEPARDSON:  Yes.    02:17:34
24            THE VIDEOGRAPHER:  Going off the record,    02:17:37
25   the time, 2:17 p.m.    02:17:38

1    STATE OF CALIFORNIA      )

2                             )  ss

3    COUNTY OF SAN DIEGO      )

4            I, LINDA NICKERSON, CSR #8746, in and for

5    the State of California do hereby certify:

6            That, prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify the truth, the whole truth, and

9    nothing but the truth;

10           That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewritten form at my

13   direction, and the same is a true, correct, and

14   complete transcript of the testimony at said

15   proceedings.

16           Before completion of the deposition, review

17   of transcript [X] was [ ] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed

20   are appended hereto.

21           I further certify that I am not interested

22   in the event of the action.

23   WITNESS MY HAND this 29th day of March, 2016.

24   _____

25   LINDA NICKERSON, CSR No. 8746

1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4                        AGENCY Case No. 13-cv-00331-GPC-KSC

5      - - - - - - - - - - - - - - - - - - x

6      Dominic Fontalvo a minor, by and through

7      his Guardian Ad Litem, Tashina Amador,

8      individually and as successor in interest

9      to Alexis Fontalvo, deceased, and T.L.

10     a minor, by and through her Guardian

11     Ad Litem, Tashina Amador,

12
                            Plaintiffs,
13     vs

14     Sikorsky Aircraft Corporation, Sikorsky

15     Support Services, Inc., et al,

16

17                          Defendants.

18     - - - - - - - - - - - - - - - - - - x

19              DEPOSITION OF REBECCA FITZSIMMONS

20                      Quantico, Virginia

21                     February 18, 2016

22                       10:00 a.m.

23

24                        * * * * *

25

1  Shelton, and then the third crew chief that I made

2  note of was on the neighboring aircraft, Lance

3  Corporal Joshua Perkins.

4           Corporal Shelton and Corporal Justin

5  Walker were conducting the training with the

6  mishap aircraft and Lance Corporal Joshua Perkins

7  was on a neighboring aircraft, so those are the

8  three crew chiefs that were involved in my

9  investigation.

10          MR. SHEPARDSON:  Now I understand.

11      Thank you.

12  BY MR. SHEPARDSON:

13      Q    Did you personally make any

14  recommendations with regard to --

15          MR. SHEPARDSON:  Actually, hold on.

16      Strike that.  I will get back to that.

17  BY MR. SHEPARDSON:

18      Q    In your notes you said that there was a

19  finding that no operations, maintenance or

20  training publications, provided a warning of the

21  hazard of retracting landing gear on the ground,

22  correct?

23      A    Correct, yes.

24      Q    Did anything in your investigation

25  suggest that there actually was any such warning

1    in any of the operations maintenance or training

2    publications?

3         A    Can you repeat that question?

4         Q    My question is:  Did your investigation

5    give rise to any suggestion that that finding was

6    inaccurate?

7         A    No.

8         Q    Did you personally make any

9    recommendations to any entity to close that

10   knowledge gap as you described it earlier?

11        A    No, that is outside the scope of my

12   duty.

13        Q    Do you know whether the Death Review

14   Panel made any recommendations of that nature?

15        A    No, that is outside of their scope duty

16   as well, especially this.

17             MR. SHEPARDSON:  Thank you.  I would

18        like to briefly go over with you the thing

19        that is designated as Exhibit 19 in your --

20             Well, let me ask you this.

21   BY MR. SHEPARDSON:

22        Q    The way this report is arranged is in

23   reverse chronological order by entry, is that

24   right?

25        A    Yes, so the oldest document would go on

1

2

3   UNITED STATES OF AMERICA   )

4                              ss:
    COMMONWEALTH OF VIRGINIA   )
5

6
                I, T. S. HUBBARD, JR., a Notary Public
7
    within and for the District of Columbia do hereby
8
    certify that the witness whose deposition is
9
    hereinbefore set forth was duly sworn and that the
10
    within transcript is a true record of the testimony
11
    given by such witness.
12

13
                I further certify that I am not related
14
    to any of the parties to this action by blood or
15
    marriage and that I am in no way interested in the
16
    outcome of this matter.
17

18
                IN WITNESS WHEREOF, I have hereunto set
19
    my hand this 29TH day of February 2016.
20

21   _____

22   Thomas S. Hubbard, Jr.
     Notary Public Commonwealth of Virginia
23

24

25

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

     - - - - - - - - - - - - - - - - - -
 4                                    )
     D.F., a minor, by and through his )
 5   Guardian Ad Litem, TASHINA AMADOR, )
     individually and as successor in  )
 6   interest to Alexis Fontalvo,       )
     deceased, and T.L., a minor, by and )
 7   through her Guardian Ad Litem,     )
     TASHINA AMADOR,                    )
 8                                    )  CASE NO.
                   Plaintiffs,         )  13-cv-00331
 9                                    )  GPC-KSC
                   vs.                 )
10                                    )
     SIKORSKY AIRCRAFT CORPORATION;    )
11   SIKORSKY SUPPORT SERVICES, INC.;  )
     UNITED TECHNOLOGIES CORPORATION;  )
12   G.E. AVIATION SYSTEMS, LLC; DUPONT )
     AEROSPACE CO.; E.I. DUPONT DE      )
13   NEMOURS AND COMPANY; PKL SERVICES, )
     INC.; and DOES 1 through 100,      )
14   Inclusive,                         )
                                      )
15                 Defendants.         )
                                      )
16   - - - - - - - - - - - - - - - - - -

17

18         DEPOSITION OF EVAN REID SHELTON

19

20         TAKEN ON: Wednesday, May 25, 2016

21         TAKEN AT: 501 West Broadway
                     Suite 400
22                   San Diego, California

23         REPORTED BY:  KATHRYN B. CONNELL
                         CSR NO. 3079, RPR, CRR
24

25
```

 1       Q.   Okay.  So you would not pull the auxiliary

 2  tank pins before you pulled the landing gear pins?

 3       A.   Yes.

 4       Q.   You would only pull them first if you weren't

 5  pulling the landing gear pins?

 6       A.   Yes.

 7       Q.   Okay.  If you see, under the step for pins and

 8  chocks, there is a warning.  Do you know whether this

 9  warning existed at the time of the accident or if it was

10  added afterwards?

11       A.   I do not recall.

12       Q.   Okay.  Could you read the warning out loud.

13       A.   "Do not use excessive force to remove any

14  landing gear safety pin if the pin fails to move

15  freely."

16       Q.   Can I stop you for a second?

17       A.   Yes.

18       Q.   Before this warning was added, did you know

19  that you were not supposed to use excessive force to

20  remove any landing gear safety pin if the pin failed to

21  move freely?

22       A.   I knew that there was something wrong.  If it

23  wouldn't move freely, I would know that there is

24  something wrong; but I'm not sure what would be wrong.

25       Q.   Okay.

1       A.    So if I knew that there was something wrong,

2    then yes, I would know that I shouldn't pull it.

3       Q.    Okay.  Can you read the next sentence.

4       A.    "Doing so may allow the landing gear to

5    inadvertently retract on the ground, causing injury or

6    death."

7       Q.    Did you know, prior to the accident, that

8    forcibly removing a landing gear safety pin might cause

9    inadvertent retraction?

10      A.    I did not.  I did not know that it could cause

11   a retraction.

12            Well, yeah, removing it wouldn't cause it, but

13   it would allow it to.  I did know that removing it would

14   allow it to retract, but -- this is kind of confusing.

15   Can you repeat the question one more time?

16            MS. VAGLE:  Sure.

17            Could you read it back, please.

18            (Record read as follows:

19      Q.    Did you know, prior to the accident, that

20   forcibly removing a landing gear safety pin might cause

21   inadvertent retraction?)

22            THE WITNESS:  I did know that if you moved the

23   pin, now that -- now the landing gear can retract.

24   Inadvertent.  I'm going to say yes.

25   ///

1    STATE OF CALIFORNIA  )

2                        :  SS.

3    COUNTY OF SAN DIEGO  )

4

5         I, Kathryn B. Connell, Certified Shorthand

6    Reporter No. 3079 for State of California, do hereby

7    certify:

8         That prior to being examined, the witness named

9    in the foregoing deposition was duly sworn to testify to

10   the truth, the whole truth, and nothing but the truth;

11        That said deposition was taken down by me in

12   shorthand at the time and place therein named and

13   thereafter reduced by me to typewritten form and that

14   the same is a true, correct, and complete transcript of

15   said proceedings.

16        Before completion of the deposition, a review of

17   the transcript [ X ] was [  ] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed are

20   appended hereto.

21        I further certify that I am not interested in the

22   outcome of the action.

23        Witness my hand this 6th day of June, 2016.

24                    _Kathryn B. Connell_

25                    _____
                      Kathryn B. Connell, CSR No. 3079

# EXHIBIT I

**<u>D.F., et al. v. Sikorsky Aircraft Corporation, et al.</u>**
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

4

5    DOMINIC FONTALVO, a minor,  )Case No.
     by and through his Guardian )3:13-cv-00331-GPC-KSC
6    Ad Litem,TASHINA AMADOR,    )
     individually and as a       )
7    successor in interest to    )
     Alexis Fontalvo, deceased,  )
8    and TANIKA LONG, a minor,   )
     by and through her Guardian )
9    Ad Litem, TASHINA AMADOR,   )
                                 )
10               Plaintiff,      )
                                 )
11   v.                          )
                                 )
12   SIKORSKY AIRCRAFT           )
     CORPORATION; SIKORSKY       )
13   SUPPORT SERVICES, INC.;     )
     UNITED TECHNOLOGIES         )
14   CORPORATION, et al.,        )
                                 )
15               Defendants.     )VOLUME 2
     _____)Pages 102 - 284
16

17   DEPOSITION OF:

18                    JOHN WAKEFIELD

19                    TUESDAY, MAY 9, 2017

20                    10:19 A.M.

21

22

23

24   REPORTED BY:   c. jane harman

25                    CSR No. 5266

1   was the maintenance of helicopters that you worked

2   with always perfect?

3        A.  No.

4             MR. SHEPARDSON:  Okay.  We can take a

5   break.

6             MR. HUNT:  Okay.

7             (Recess taken from 3:33 to 3:44.)

8   BY MR. SHEPARDSON:

9        Q.  So, Mr. Wakefield, continuing to page 32 of

10  your report.  This is the final conclusions which go

11  on for --

12       A.  Forever.

13       Q.  -- five pages.

14            So I'm just going to hit the highlights

15  here.

16            In opinion number one, you say that:

17            "NAVAIR personnel had full knowledge

18            and a complete understanding of the

19            design, including their landing gear

20            system."

21            So do you have any documentary evidence in

22  these binders or that you otherwise relied on that

23  Sikorsky ever told NAVAIR that there was a danger

24  that the landing gear might inadvertently retract in

25  the event of an electrical short?

1        A.   I have no documentation for that.

2        Q.   So number three:

3             "NAVAIR provided or approved all

4             specifications for the manufacture

5             of the first YCH-53 Echo

6             developmental prototype."

7             Do you have any drawing or specification

8   to the landing gear wiring harness of the CH-53 Echo

9   bearing any approval by the U.S. government?

10       A.   No, I do not.

11       Q.   Okay.  Going on to number five.

12            "NAVAIR and Sikorsky conducted

13            numerous technical interchange

14            and review meetings during the

15            design, etcetera, of the CH-53

16            Echo."

17            Do you have any evidence either in these

18   binders or that you otherwise relied on that the

19   landing gear wiring harness was ever addressed at

20   any technical interchange or review meeting?

21       A.   The Reference A, the final report and

22   multiple other SER reports address the similarity of

23   the CH-53E main landing gear system, which includes

24   wiring harnesses and other hydraulic components and

25   everything else associated with the landing gear

1   STATE OF CALIFORNIA    )
2                          )  ss
    COUNTY OF LOS ANGELES )
3

4           I, c. jane harman, CSR No. 5266, in and

5   for the State of California do hereby certify:

6           That, prior to being examined, the

7   witness named in the foregoing deposition was by me

8   duly sworn to testify the truth, the whole truth,

9   and nothing but the truth;

10          That said deposition was taken down by me

11  in shorthand at the time and place therein named,

12  and thereafter reduced to typewritten form

13  direction, and the same is a true, correct and

14  complete transcript of said proceedings.

15          Before completion of the deposition,

16  review of transcript [ ] was [ ] was not requested.

17          If requested, any changes made by the

18  deponent (and provided to the reporter) during the

19  period allowed are appended hereto.

20          I further certify that I am not

21  interested in the event of the action.

22          WITNESS MY HAND this 25TH day of MAY,

23  2017.        _C. jane harman_

24          _____

25          c. jane harman, CSR No. 5266

# EXHIBIT J

**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

1          UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF CALIFORNIA

3

4

5  Dominic Fontalvo, a minor,  )
    by and through his Guardian )
6  Ad Litem, Tashina Amador,  ) Civil Action No.
    individually and as       )
7  successor in interest to   ) 13-cv-00331-GPC-KSC
    Alexis Fontalvo, deceased,  )
8  and T.L., a minor, by and   )
    through her Guardian Ad    )
9  Litem, Tashina Amador,     )
                         )
10            Plaintiffs,   ) Pages 1-59
                         )
11      VS.               )
                         )
12  Sikorsky Aircraft       )
    Corporation, Sikorsky    )
13  Support Services, Inc.,   )
    et al.,              )
14                       )
            Defendants.   )
15  _____ )

16

17  VIDEOTAPED DEPOSITION OF:

18       JEREMIAH WILCOX

19       THURSDAY, MARCH 17, 2016

20       2:49 P.M.

21

22

23

24  Reported by:  LINDA NICKERSON

25         CSR No. 8746

1        Q     Have you ever experienced a stuck -- or a          03:05:29

2    pin that was stuck or landing gear safety pin that           03:05:33

3    was stuck or offered resistance?                             03:05:36

4        A     I have.                                            03:05:37

5        Q     Can you tell us the circumstances?                 03:05:38

6        A     The circumstances on that was aircraft that        03:05:40

7    were parked on the deck of a ship while deployed in          03:05:44

8    the Pacific Ocean.  Due to the salt water spray, the         03:05:47

9    landing gear pins and any exposed metal that's not           03:05:51

10   painted can corrode and one of the aircraft or the           03:05:55

11   landing gear pins was starting to get some                   03:05:58

12   resistance because it had corrosion built up, and            03:06:00

13   that's the only other time I've seen it, sir.                03:06:05

14       Q     Okay.  That was the first -- the only time         03:06:08

15   you've seen that?                                            03:06:09

16       A     Yes, sir.                                          03:06:10

17       Q     How many times have you -- have you pulled         03:06:10

18   landing gear safe -- safety pins on CH-53                    03:06:12

19   helicopters in your career?                                  03:06:16

20       A     Over a thousand times, sir, at least.             03:06:18

21       Q     Okay.  When -- when did that happen, the          03:06:24

22   incident you just mentioned, the stuck or the                03:06:26

23   binding pin?                                                 03:06:28

24       A     I believe it was 2009, sir.                       03:06:29

25       Q     Did you discuss that with Sergeant Fontalvo       03:06:31

1    STATE OF CALIFORNIA    )

2                          )  ss

3    COUNTY OF ORANGE       )

4            I, LINDA NICKERSON, CSR #8746, in and for

5    the State of California do hereby certify:

6            That, prior to being examined, the witness

7    named in the foregoing deposition was by me duly

8    sworn to testify the truth, the whole truth, and

9    nothing but the truth;

10           That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewritten form at my

13   direction, and the same is a true, correct, and

14   complete transcript of the testimony at said

15   proceedings.

16           Before completion of the deposition, review

17   of transcript [X] was [ ] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed

20   are appended hereto.

21           I further certify that I am not interested

22   in the event of the action.

23   WITNESS MY HAND this 30th day of March, 2016.

24   _____

25           LINDA NICKERSON, CSR No. 8746

1            UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

- - - - - - - - - - - - - - - - - - -
4                                    )
   D.F., a minor, by and through his  )
5   Guardian Ad Litem, TASHINA AMADOR, )
   individually and as successor in   )
6   interest to Alexis Fontalvo,       )
   deceased, and T.L., a minor, by and )
7   through her Guardian Ad Litem,     )
   TASHINA AMADOR,                     )
8                                    )  CASE NO.
             Plaintiffs,            )  13-cv-00331
9                                    )  GPC-KSC
                vs.                 )
10                                   )
   SIKORSKY AIRCRAFT CORPORATION;     )
11   SIKORSKY SUPPORT SERVICES, INC.;   )
   UNITED TECHNOLOGIES CORPORATION;   )
12   G.E. AVIATION SYSTEMS, LLC; DUPONT )
   AEROSPACE CO.; E.I. DUPONT DE      )
13   NEMOURS AND COMPANY; PKL SERVICES, )
   INC.; and DOES 1 through 100,      )
14   Inclusive,                         )
                                      )
15            Defendants.            )
                                      )
16   - - - - - - - - - - - - - - - - - - -

17

18          DEPOSITION OF EVAN REID SHELTON

19

20          TAKEN ON: Wednesday, May 25, 2016

21          TAKEN AT: 501 West Broadway
                     Suite 400
22                     San Diego, California

23          REPORTED BY:  KATHRYN B. CONNELL
                       CSR NO. 3079, RPR, CRR
24

25

1   pins and chocks, is that a gesture that's requesting

2   assistance or is he just noting that this is the stage

3   we are at in the process?

4        A.   If -- both.

5        Q.   Okay.

6        A.   If there is somebody there to witness it

7   besides, you know -- because the pilots would be able to

8   see you at all times.  If there is an aerial observer

9   that's able to see you at the time, they will take it as

10  a -- as a request to help pull pins.

11            MR. SHEPARDSON:  Can we take a quick break?

12            MS. VAGLE:  Yes.

13            (Brief recess.)

14  BY MS. VAGLE:

15       Q.   So we were talking before our break a little

16  bit about during the start-up procedures of the aircraft

17  if you noticed that a landing gear safety pin was stuck

18  or sort of resistant, you wouldn't know what to do but

19  you would still be on ICS as the lead crew chief and

20  would then -- or could then contact the pilots.

21       A.   Yes.

22       Q.   Okay.  So if you could walk me through a

23  little bit of your knowledge and understanding of what

24  might be a cause for a landing gear safety pin to be

25  stuck or experience resistance at that stage.

 1        A.    You're asking about during the daily or while

 2   the aircraft was on?

 3        Q.    During start-up.

 4        A.    During start-up.  What would make the pin --

 5   my -- when it happened to me that day, my thought was

 6   that the pin was bent.  That was my first thought,

 7   because I had never seen anything or had any issues

 8   especially with the aircraft on where I could not remove

 9   the pin.  So that was my -- that was my first -- first

10   thought about why the pin wouldn't come out.

11        Q.    Prior to your experience on the day of the

12   incident, had you ever experienced a bent pin in any

13   circumstance whether start-up or otherwise?

14        A.    I don't think I've seen a bent pin, but I've

15   had pins that because of the size of the pin or because

16   of the spring mechanism, they wouldn't go in and out

17   smoothly.  But that wasn't -- so that was a malfunction

18   in the pin, but it wasn't bent, and I've seen that

19   before.

20        Q.    Prior to the accident?

21        A.    Yes.

22        Q.    Okay.  And in what context had you seen that?

23        A.    In what context?

24        Q.    Start-up.  Daily.  Turnaround.

25        A.    Oh, not start-up, but it would have been -- I

 1   don't know what inspection, but it would have been an

 2   inspection where the aircraft wasn't on.

 3         Q.   Okay.  And in those -- around how many times

 4   would you have experienced that before the incident?

 5         A.   Maybe -- maybe two or three times I've seen a

 6   pin -- there was something wrong with the pin.

 7         Q.   And what did you do in those circumstances?

 8         A.   We had to order new pins.

 9         Q.   Was that a pin that wouldn't come out or a pin

10   that wouldn't go in?

11         A.   It was -- from what I can remember, it was

12   difficult both ways, going in and out.

13         Q.   And when you say difficult going in and out,

14   did it still go in and out?

15         A.   Yes.  Not easily though.

16         Q.   Did you exert force?

17         A.   Yes.

18         Q.   How much force would you have exerted to

19   remove it?

20         A.   I don't know how to answer that.

21         Q.   Did you do it by hand or did you --

22         A.   Yes.

23         Q.   -- use a tool?

24              And you said you did it by hand?

25         A.   Yes, I did it by hand.

1        Q.   And how long did it take to remove it?

2        A.   Probably not much longer than it normally

3    would have.   I just used more effort or, you know, it

4    took more effort.   That's all.

5        Q.   Okay.   So again roughly one to two seconds but

6    more manual effort using your hand?

7        A.   Yes.

8        Q.   Okay.   And what did you do at that time?   You

9    said you ordered new pins.   Did you have to submit with

10   a maintenance action form?

11       A.   Yes.

12       Q.   And how do you go about that process?

13       A.   So the inspection on the aircraft -- whatever

14   inspection I was doing at the time, it would be

15   completed.   Anything I noticed wrong, I would write down

16   on a note pad.   And then, you know, when I was done with

17   the inspection, I'd bring all these -- all these

18   problems back, you know, to my shop and I would enter

19   them on to a computer, on to a system where we could --

20   we could annotate all of these problems.   And then -- I

21   can't remember, like -- we would somehow -- I can't

22   remember exactly how we got the ordering information for

23   the parts and stuff like that.   But that was basically

24   it.

25       Q.   Okay.   So you notified someone and it went

1    STATE OF CALIFORNIA   )

2                          :   SS.

3    COUNTY OF SAN DIEGO   )

4

5         I, Kathryn B. Connell, Certified Shorthand

6    Reporter No. 3079 for State of California, do hereby

7    certify:

8         That prior to being examined, the witness named

9    in the foregoing deposition was duly sworn to testify to

10   the truth, the whole truth, and nothing but the truth;

11        That said deposition was taken down by me in

12   shorthand at the time and place therein named and

13   thereafter reduced by me to typewritten form and that

14   the same is a true, correct, and complete transcript of

15   said proceedings.

16        Before completion of the deposition, a review of

17   the transcript [ X ] was [  ] was not requested.  If

18   requested, any changes made by the deponent (and

19   provided to the reporter) during the period allowed are

20   appended hereto.

21        I further certify that I am not interested in the

22   outcome of the action.

23        Witness my hand this 6th day of June, 2016.

24                    _Kathryn B. Connell_

25                    _____
                      Kathryn B. Connell, CSR No. 3079

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

D.F., a minor, by and through    :
his Guardian Ad Litem,
TASHINA AMADOR, individually     :
and as successor in interest
to Alexis Fontalvo, deceased,    :
and T.L., a minor, by and             Case No.
through her Guardian Ad          :    13-cv-00331-GPC-KSC
Litem, TASHINA AMADOR,
                                 :

        Plaintiffs,

                                 :    Deposition of:
     -v-                              CHARLES WILLIAM COFFIN
                                 :

SIKORSKY AIRCRAFT
CORPORATION; SIKORSKY SUPPORT    :
SERVICES, INC.; UNITED
TECHNOLOGIES CORPORATION;        :
G.E. AVIATION SYSTEMS, LLC;
DUPONT AEROSPACE CO.; E.I.       :
DUPONT DE NEMOURS AND
COMPANY; PKL SERVICES INC.;      :
and DOES 1 through 100,
Inclusive,                       :

        Defendants.             :


          Place:        TEMPEST REPORTING, INC.
                        175 South Main Street, #710
                        Salt Lake City, Utah 84111

          Date:         February 11, 2016
                        10:02 a.m.

          Reporter:     Vickie Larsen, CSR/RMR

1        A.    Or little resistance, I guess.  Grease

2  and other things that will, you know, that -- it won't

3  feel tough, though, if that's what you're asking.

4        Q.    It will feel smooth?

5        A.    Right.  Right.  The only -- that's based

6  on my knowledge of the aux tank pins.  They say they

7  work exactly the same, and I removed aux tank pins so

8  many times I couldn't count them, as part of our

9  shop's involvement on replacing the aux tanks or

10  inspecting the aux tanks.

11        Q.    So for the landing gear safety pins, you

12  just removed them in the context of those

13  deteriorating flags?

14        A.    Right.  Knowledge based on how smooth

15  they should be is being, you know, told that they

16  should be smooth like the aux tank pins.

17        Q.    So they should feel the same?

18        A.    Right.

19        Q.    Okay.  And you have a lot of experience

20  removing the aux tank pins?

21        A.    Right.

22        Q.    Did you ever find one of those pins stuck

23  or with resistance?

24        A.    Oh, sure.  If you install it, you know,

25  something wrong, it will go in rough.  That's part of

1    our -- my inspection when I'm replacing an aux tank

2    is -- is verifying that that pin comes in and out

3    smoothly.

4         Q.    Okay.

5         A.    If it doesn't, you pull it down and find

6    out what, you know, did you do wrong?  Because if you

7    follow the steps, you know, it's right, but sometimes

8    maybe you turn just a little bit too tight and, you

9    know, you got to redo everything and --

10         Q.    Okay.

11         A.    -- make sure it's nice and smooth.

12    Verify that the pin's straight.  You know, a bent pin,

13    if you pull it out and you put it, you know, where it

14    goes while you're doing maintenance up there, but

15    something happens and a wrench falls on it, a bent pin

16    can cause resistance.

17         Q.    Okay.

18         A.    So, you know, it's not just something not

19    functioning on the aircraft.  For the aux tanks,

20    anyway, because it's a big pin.

21         Q.    Did you find a bent pin in the course of

22    your experience?

23         A.    I mean, I bent a pin, I'm sure, or

24    somebody had.  I definitely felt and looked at it and

25    gone, that's a bent pin, and had to put in an order to

 1   replace it.

 2        Q.      Okay.

 3        A.      Just for axillary tanks.  Landing gear

 4   pins, again, that wouldn't be my -- my shop.

 5        Q.      Okay.  And you said that's part of the

 6   inspection, that making sure the pins enter and exit

 7   smoothly?

 8        A.      Right.

 9        Q.      Okay.  And if it doesn't, if there's

10   resistance, you troubleshoot it and write up a work

11   order if there's anything defective?

12        A.      Well, it depends on what you find,

13   because you're already on a maintenance action for

14   that, you know, that component.

15               So you're really -- the inspection is,

16   like, the post-maintenance -- after the end of every

17   maintenance action there's a -- or a maintenance

18   procedure, there's usually a type of inspection to

19   verify your work.

20        Q.      Okay.

21        A.      For that particular one, you know, one of

22   them is pulling the pin in and out.  If it's not

23   smooth, the maintenance action is not complete.

24        Q.      Okay.  So it's not like you need to go

25   and start a new maintenance action.  You're still in a

1    STATE OF UTAH          )
                            )
2    COUNTY OF SALT LAKE    )

3                I, Vickie Larsen, Certified Shorthand

4    Reporter No. 109887-7801 for the State of Utah, do

5    hereby certify:

6                That prior to being examined, the witness

7    named in the foregoing deposition was duly sworn to

8    testify to the truth, the whole truth, and nothing but

9    the truth;

10               That said deposition was taken down by me

11   in shorthand at the time and place herein named and

12   thereafter reduced by me to typewritten form and that

13   the same is a true, correct, and complete transcript of

14   said proceedings.

15               Before completion of the deposition,

16   review of the transcript [X] was [ ] was not requested.

17   If requested, and changes made by the deponent (and

18   provided to the reporter) during the period allowed are

19   appended hereto.

20               I further certify that I am not interested

21   in the outcome of the action.

22

23               Vickie Larsen, CSR/RMR

24   Witness my hand this 26th day of February, 2016.

25

# EXHIBIT K

<u>**D.F., et al. v. Sikorsky Aircraft Corporation, et al.**</u>
**United States District Court, Case No. 13-cv-00331-GPC-KSC**

```
 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
 2
 3  D.F., a minor, by and through  )
    his Guardian Ad Litem, TASHINA )
 4  AMADOR, individually and as    )
    successor in interest to       )
 5  Alexis Fontalvo, deceased, and )
    T.L., a minor, by and through  )
 6  her Guardian Ad Litem, TASHINA )  No. 3:13-cv-00331-
    AMADOR,                        )          GPC-KSC
 7                                 )
                Plaintiffs,        )
 8                                 )
        vs.                        )
 9                                 )
    SIKORSKY AIRCRAFT CORPORATION; )
10  SIKORSKY SUPPORT SERVICES,     )
    INC.; UNITED TECHNOLOGIES      )
11  CORPORATION; G.E. AVIATION     )
    SYSTEMS, LLC; DUPONT AEROSPACE )
12  CO.; E.I. DUPONT DE NEMOURS    )
    AND COMPANY; IKL SERVICES INC.;)
13  and DOES 1 through 100,        )
    inclusive,                     )
14                                 )
                Defendants.        )
15  _____)
16
17
18    VIDEOTAPED DEPOSITION OF CHRISTOPHER A. DANLEY
19             San Diego, California
20           Tuesday, November 22, 2016
21                  Volume I
22
23  Reported By:
    CATHERINE A-M GAUTEREAUX
24  CSR No. 3122
25  Job No. 2482433
    PAGES 1 - 68                                      1
```

Page 1

```
 1        Q    Okay.  All right.  So from the time he    10:26:46
 2    pulled the aux tank pin to the time of the collapse,
 3    how much time would you say elapsed?
 4        A    Probably as soon as the pin came out.
 5        Q    No, no, no.  I'm sorry.  I think we're    10:26:53
 6    confused.  Or maybe I'm confused.  From the time he
 7    pulled the auxiliary tank pin out --
 8        A    Oh, I see what you're saying.  Okay.
 9        Q    -- the auxiliary tank pin to the time of
10    the collapse of the landing gear, how much time had    10:27:05
11    elapsed?
12        A    That would be about 45 seconds, yes.
13        Q    Okay.  So from the time Sergeant Fontalvo,
14    with the aux tank pin in his hand, went underneath
15    the aircraft and was, you know, working to try to    10:27:20
16    get the landing gear safety pin out, about how much
17    time passed between when he went under the aircraft
18    to when the landing gear actually retracted?
19        A    That would be the 45 seconds.
20        Q    Oh, 45 seconds.  Okay.  All right.  So    10:27:34
21    earlier, when you had mentioned 10 to 15 seconds,
22    were you just mistaken?
23        A    That was me thinking about him being on
24    his back.
25        Q    Okay.  All right.  Got it.  Okay.  So    10:27:43
```

Veritext Legal Solutions
866 299-5127

1    total 45 seconds initially, as you testified, got on      10:27:45

2    his knees, was working to try to get the safety pin

3    out, then got on his back and was continuing to work

4    on the safety pin?

5         A    Yes.                                            10:27:56

6         Q    Okay.  Got it.  Okay.  Understand.

7              (Exhibit 5 was marked for identification

8         by the court reporter and is attached hereto.)

9              MR. HICKEY:  So Exhibit 5 has a Bates

10   stamp of MIL073543.  It is another -- appears to be      10:28:23

11   another statement by, at that time, Lance Corporal

12   Christopher Danley.  It's dated 17 March 2011.

13   BY MR. HICKEY:

14        Q    So, Chris, I'm going to hand you what's

15   been marked as exhibit No. 5.  Have you ever seen        10:28:42

16   that document before?

17        A    I have, yes.

18        Q    Okay.  And when's the last time you saw

19   that document?

20        A    About ten minutes before we started this,      10:28:52

21   'cause he said -- or Mr. Stahl said that he saw this

22   one.  I had not reviewed it yet.

23        Q    Okay.  All right.  So prior to that, had

24   you ever seen that document before?

25        A    I don't believe so, no.                        10:29:04

```
 1            I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby
 3    certify:
 4            That the foregoing proceedings were
 5    reported by me at the time and place herein set
 6    forth; that any witnesses in the foregoing
 7    proceedings, prior to testifying, were placed under
 8    oath; that a verbatim record of the proceedings was
 9    made by me using machine shorthand which was
10    thereafter transcribed under my direction; further,
11    that the foregoing is an accurate transcription
12    thereof;
13            That a review of the transcript by the
14    deponent was requested;
15            I further certify I am neither financially
16    interested in the action nor a relative or employee
17    of any attorney of any of the parties.
18            IN WITNESS WHEREOF, I have this date
19    subscribed my name.
20    Dated:  December 9, 2016
21
22
23
24
25            CATHERINE A-M GAUTEREAUX
               CSR NO. 3122


                                        Page 68
```

# EXHIBIT L

D.F., et al. v. Sikorsky Aircraft Corporation, et al.
United States District Court, Case No. 13-cv-00331-GPC-KSC

```
 1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
 2
 3   D.F., a minor, by and through  )
     his Guardian Ad Litem, TASHINA )
 4   AMADOR, individually and as    )
     successor in interest to       )
 5   Alexis Fontalvo, deceased, and )
     T.L., a minor, by and through  )
 6   her Guardian Ad Litem, TASHINA )  No. 3:13-cv-00331-
     AMADOR,                        )               GPC-KSC
 7                                   )
                 Plaintiffs,         )
 8                                   )
          vs.                        )
 9                                   )
     SIKORSKY AIRCRAFT CORPORATION;  )
10   SIKORSKY SUPPORT SERVICES,      )
     INC.; UNITED TECHNOLOGIES       )
11   CORPORATION; G.E. AVIATION      )
     SYSTEMS, LLC; DUPONT AEROSPACE  )
12   CO.; E.I. DUPONT DE NEMOURS     )
     AND COMPANY; IKL SERVICES INC.; )
13   and DOES 1 through 100,         )
     inclusive,                      )
14                                   )
                 Defendants.         )
15   _____)
16
17
18        VIDEOTAPED DEPOSITION OF MICAH HAMILTON
19                San Diego, California
20              Thursday, January 26, 2016
21                     Volume I
22
23   Reported By:
     CATHERINE A-M GAUTEREAUX
24   CSR No. 3122
     Job No. 2528199
25   PAGES 1 - 96
```

                                              Page 1

```
 1    the gear.  I'd leave the pins in and still flight      09:23:35

 2    the aircraft.

 3              MR. MONTANARI:  What was the answer?

 4              THE WITNESS:  I would leave the pin -- as

 5    of today, obviously, 'cause of what happened, I        09:23:41

 6    would -- I would probably still flight the aircraft

 7    but leave the pins in so you can't retract the gear.

 8              MR. MONTANARI:  Thank you.

 9    BY MR. HICKEY:

10        Q    And at the time of the accident -- if I       09:23:52

11    asked you at the time of the accident, what would

12    your answer have been?

13        A    Because that was never a problem for us, I

14    think we would have pulled the pin.  That would have

15    been normal operation, 'cause it was -- I've never      09:24:01

16    encountered that in my time as an airframe mechanic.

17        Q    I think you indicated earlier that, as you

18    sit here today, you don't know what the duties of an

19    aerial observer are during the preflighting of an

20    aircraft?                                               09:24:42

21        A    I was -- I was an aerial observer, but

22    that was -- 'cause the last time I flew was 2005.

23    So I remember very little what to do for preflight.

24        Q    Okay.  Do you know what the duties of a

25    crew chief are?                                         09:25:01
```

                                                  Page 64

```
 1        A    Very little.                              09:25:03

 2        Q    Okay.  What do you know about that?

 3        A    From what I remember, I mean, your basic

 4   job as a crew chief is to basically control the

 5   aircraft from the cockpit or behind the cockpit back   09:25:12

 6   to the whole cargo area.  You're constantly looking

 7   for -- it depends on which side window you're in,

 8   right side, left side or tail.  You're constantly

 9   looking for traffic in the air.  When you're

10   landing, you're looking for obstacles, and oversee    09:25:25

11   the overall safety of the aircraft.

12        Q    So between an aerial observer and a crew

13   chief, who's primarily responsible for the safety of

14   that helicopter?

15        A    The crew chief.                            09:25:43

16        Q    So if a problem arises, should the crew

17   chief be notified of the problem?

18        A    Yes, sir.

19        Q    Okay.  So if you -- not speaking today,

20   but back before the Alex Fontalvo accident, if a      09:25:54

21   stuck landing gear safety pin was encountered,

22   should that have been communicated to the crew

23   chief?

24             MR. SHEPARDSON:  Objection.  Incomplete

25   hypothetical, calls for speculation.                  09:26:10
```

Veritext Legal Solutions
866 299-5127

1      THE WITNESS:  It depends on -- like I      09:26:12
2  said, because it was never an issue, if I was the --
3  if I was the AO at that time, I would have continued
4  to try to pull that pin out just because I thought
5  maybe it was rusted in there or it had grease on it      09:26:22
6  or something like that and it got stuck in there.
7  BY MR. HICKEY:
8      Q     Without communicating that to the crew
9  chief first?
10     A     Well, when I'm doing that as an AO, I was      09:26:31
11 off the cord, so I couldn't even talk -- I couldn't
12 even communicate to him verbally.
13     Q     When you say "off the cord," explain that.
14     A     So, we have the ICS system.  That's how we
15 all communicate between the crew chiefs and the      09:26:44
16 pilots.  Usually, when -- you always have the crew
17 chief hooked up upfront.  That way, he can see the
18 aircraft and see the pilots.
19           As the AO, I'm running around pulling
20 chocks, pulling pins, checking panels as we're      09:26:56
21 turning to make sure the aircraft is safe.  But I am
22 disconnected at that time, so I cannot speak to
23 anybody.
24     Q     Okay.  So you just mentioned that there
25 were a lot of problems with the CH-53E helicopter?      09:27:27

BY MR. MONTANARI:

1

2      Q    If you know.

3      A    He should, but I don't know.

4      Q    Where did you learn that?  What part of

5 training.  Was that Pensacola or was that

6 Jacksonville or --

7      A    So probably the C School, where we learn

8 the basic operations of all the system, I'm sure it

9 was covered.  I cannot remember exactly, but at that

10 time it was probably covered then.

11     Q    Given your training, if you had a landing

12 gear safety pin that -- there was a lot of

13 resistance in pulling out and that -- you've

14 testified that would be an abnormal situation to

15 you, and knowing that that's part of the interlock

16 system, would -- would you have done anything

17 different other than just trying to pull it out?

18     A    I would have kept pulling at that time.

19     Q    You would have just kept pulling?

20     A    Yes, sir.

21     Q    And is there any time in the process where

22 you would have stopped pulling?  I mean, if you --

23     A    Unfortunately, we have that mentality,

24 like keep doing it until it breaks.  Not till it

25 breaks.  I didn't mean to say that one.

Page 84

1          I would have found a way to get pin out          09:57:56

2    'cause, to me, I would have thought that it was just

3    rusted in here.  So I would have kept pushing or

4    kept pulling on it till I could get it out.

5          Q    And after -- after the unfortunate          09:58:16

6    accident with Sergeant Fontalvo, there was a change

7    in the training, correct?

8          A    I have no idea, sir.

9          Q    Oh, that's right.  You were not --

10         A    I was already detached, yes.          09:58:29

11         Q    That was not part of your duties at all to

12    be current with the training?

13         A    No, sir.

14         Q    And just to be clear, if you had a stuck

15    pin at least prior to a flight you would not have          09:58:50

16    notified the crew chief?

17         A    No, sir.  If I couldn't have gotten it

18    out, eventually I would have told him, but I would

19    have kept trying to get it out.  But eventually I

20    would have came (sic) up to the front and told him,          09:59:01

21    "I don't have the pins."

22         Q    You would have come up to the front and

23    told him you didn't have the pins out?

24         A    Yes, sir, 'cause we pull -- there is three

25    landing gear pins, two aux tank.  So my          09:59:08

                                                          Page 85

```
 1    that.                                          10:00:12

 2        A    Yes.

 3             MR. MONTANARI:  All right.  I think that's

 4    all I have.  Thank you.

 5                                                    10:00:15

 6                        EXAMINATION

 7    BY MR. SHEPARDSON:

 8        Q    I apologize if I have given you the

 9    impression I had nothing, but I didn't until he made

10    one comment that I found interesting.  It sounded   10:00:25

11    like maybe there was a saying that you started to

12    repeat, something about keep trying until it breaks.

13        A    So -- are you done?  I'm sorry.

14        Q    Yeah.

15        A    So as a Marine, we work on high-tempo    10:00:37

16    situations, whatever we do as a Marine.  When a

17    plane is turning, you're trying to pull all the

18    chocks, whether it's training, you're always moving

19    quickly.

20             So if the pin was stuck, I would have just  10:00:55

21    kept trying and trying and trying to get that pin

22    out.  Eventually, I'm sure the crew chief probably

23    would have came (sic) around and thought, "What are

24    you" -- "what's taking so long?"  'Cause usually,

25    they slide right out easily.                      10:01:06
```

```
 1        Q    Is that same -- "keep trying until it          10:01:07

 2   breaks," is that a saying within the Corps?

 3        A    No, sir.

 4        Q    Oh, okay.

 5        A    No.  I meant -- what I meant by that was,      10:01:13

 6   we move quickly.  And as airframers, one of our --

 7   you know, we always say -- you know, we're

 8   rough-natured.  We use hammers, we use big wrenches.

 9   So, you know, I did not mean to say it that way, I

10   guess, so --                                            10:01:30

11        Q    Well, I guess what I'm asking is, does

12   it -- does it reflect the attitude of your station

13   within the Corps?

14             MR. MONTANARI:  Objection.  Lacking

15   foundation, overbroad.                                  10:01:43

16             THE WITNESS:  It just reflect what we do

17   as Marines.  It's don't stop until the job's done.

18   But when it comes to aviation, everything is written

19   down.  You do certain things the way you're taught,

20   don't do anything outside of that box, so --           10:01:54

21             MR. SHEPARDSON:  Understood.  Thank you

22   very much.

23             THE WITNESS:  Yes, sir.

24             MR. HICKEY:  I just have a couple of

25   followups.                                              10:02:02
```

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby
 3    certify:
 4              That the foregoing proceedings were
 5    reported by me at the time and place herein set
 6    forth; that any witnesses in the foregoing
 7    proceedings, prior to testifying, were placed under
 8    oath; that a verbatim record of the proceedings was
 9    made by me using machine shorthand which was
10    thereafter transcribed under my direction; further,
11    that the foregoing is an accurate transcription
12    thereof.
13              That a review of the transcript by the
14    deponent was requested.
15              I further certify I am neither financially
16    interested in the action nor a relative or employee
17    of any attorney of any of the parties.
18              IN WITNESS WHEREOF, I have this date
19    subscribed my name.
20    Dated:  February 8, 2017.
21
22
23
24
              CATHERINE A-M GAUTEREAUX
25            CSR NO. 3122
```

Veritext Legal Solutions
866 299-5127