LAWRENCE P. GRASSINI — Cal. SBN 49046
MARSHALL J. SHEPARDSON — Cal. SBN 263637
GRASSINI, WRINKLE & JOHNSON
20750 Ventura Boulevard, Suite 221
Woodland Hills, CA 91364-6235
Tel: (818) 348-1717
Fax: (818) 348-7921
Email: mail@grassinilaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

D.F., a minor, by and through his Guardian Ad Litem, TASHINA AMADOR, individually and as successor in interest to Alexis Fontalvo, deceased, and T.L., a minor, by and through her Guardian Ad Litem, TASHINA AMADOR,

Plaintiffs,

vs.

SIKORSKY AIRCRAFT CORPORATION; SIKORSKY SUPPORT SERVICES, INC.; UNITED TECHNOLOGIES CORPORATION; G.E. AVIATION SYSTEMS, LLC; DUPONT AEROSPACE CO.; E.I. DUPONT DE NEMOURS AND COMPANY; PKL SERVICES, INC.; and DOES 1 through 100, Inclusive,

Defendants.

Case No.: 3:13-cv-00331-GPC-KSC

Judge: Hon. Gonzalo P. Curiel

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 1**

Hearing: 04/06/2018

Jury Trial: 05/14/2018

## INTRODUCTION

Sikorsky and its experts have long taken the position that decedent Staff Sergeant Fontalvo's death was caused, in part, by his own "errors," including forcing out the landing gear safety pin by means of "use of foreign [sic] device – the auxiliary fuel tank safety pin[.]" (See the excerpt from the Ostrowski Deposition

attached as Exhibit A, pp. 60:21–25; excerpt from the Knox Report attached as Exhibit B, p. 10.) This fanciful theory traces back to an offhanded remark by one Marine to another in the wake of the fatal mishap, which somehow gained enough momentum in the bureaucratic rumor mill to be adopted (without scrutiny or analysis) by the Air Mishap Board in their report of causative factors. Given its dubious (and ironic) provenance as both unsubstantiated rumor and official conclusion, it is both prohibited from being admitted at trial under Title 10 of the United States Code as an impermissible opinion of official accident investigators, and is inadmissible hearsay and lay opinion under the Federal Rules of Evidence.

To the extent Sikorsky's experts claim to rely on the Air Mishap Board's Report as support for this theory, admission of both the AMB Report, and all derivative opinions, may not be admitted under the express prohibition of 10 U.S.C. § 2254(d), which outright forbids the use as evidence of any opinion of official aviation mishap investigators as to the factors contributing to a mishap.

On the other hand, to the extent Sikorsky's experts claim to rely on witness statements outside the AMB Report, any such statement was revealed during discovery to be hearsay traceable to one Evan Reid Shelton, the crew chief on the fateful training exercise, who candidly disavowed the theory, insisting frankly that he never saw any such thing and it originated strictly as "speculation" on his part. (See the excerpt from his deposition attached as Exhibit C.) All subsequent references to this theory are pure, unreliable hearsay, with multiple levels, all leading back to Shelton's admitted speculation. The professed "speculation" is inadmissible under F.R.E. 701, because it is a lay opinion (and a retracted one, at that) not "based on the witness's perception," "helpful to determining a fact in issue," or within a typical layman's knowledge. The hearsay is all inadmissible under F.R.E. 802.

///

///

## ARGUMENT

Mr. Ostrowski testified at his deposition that he arrived at the conclusion that the decedent forced the safety pin out with the aux tank pin based on the testimony of Lt. Cpl. Evan Shelton, as well as the AMB Report, and that his opinion, like Shelton's, was "speculation." (Ex. A, pp. 60:18–61:11.)[1] Just Ostrowski's concession that he is "speculating" alone renders this opinion unreliable and inadmissible under F.R.E. 702, which provides that expert opinion is only admissible if based on "sufficient facts or data," as well as "reliable principles and methods." Speculation is quintessentially insufficient and methodologically bankrupt.

In addition to excluding Ostrowski's self-characterized "speculation," the Court should further expressly disallow him from relating the contents of the AMB Report and the various hearsay sources of this apocryphal "Aux Pin Theory."

### I. THE "AUX PIN" THEORY, AS ADOPTED BY THE AIR MISHAP BOARD, IS PROHIBITED TO BE USED AS EVIDENCE UNDER 10 U.S.C. § 2254(d).

Sikorsky may not rely on the AMB Report to advance the theory, or elicit expert opinion testimony, that the decedent somehow used the auxiliary tank pin as a "tool" or "lever" to pry out the landing gear safety pin. There is a special federal statute forbidding exactly that use of an AMB opinion as to factors contributing to an aircraft mishap:

> **(a) In general.--**(1) Whenever the Secretary of a military department conducts an accident investigation of an accident involving an aircraft under the jurisdiction of the Secretary, the records and report of the investigations shall be treated in accordance with this section.

---

[1] Mr. Knox testified he "saw it somewhere," but didn't remember the source. (Obviously, meaning Sikorsky's lawyers just told him to say it.) So as to keep the attachments under ten pages per the Court's Jan. 12 Order [Doc. No. 228], this unhelpful testimony is excluded from this Motion.

> * * *
>
> **(d) Use of information in civil proceedings.--**For purposes of any civil or criminal proceeding arising from an aircraft accident, any opinion of the accident investigators as to the cause of, or the factors contributing to, the accident set forth in the accident investigation report may not be considered as evidence.

10 U.S.C.A. § 2254 (West). Courts have routinely held, therefore, that the proper trial procedure is to redact all "opinions," "findings," and "conclusions," even though the balance of the report may be admitted. *See, e.g.*, *Richardson v. Bombardier, Inc.*, 2005 WL 3087864, at *10 (M.D. Fla., Nov. 16, 2005, No. 8:03CV539T31MSS), *aff'd sub nom. Ferguson v. Bombardier Services Corp.* (11th Cir. 2007) 244 Fed.Appx. 944; *Lopez v. Three Rivers Elec. Co-op., Inc.*, 92 S.W.3d 165, 170 (Mo. Ct. App. 2002), *overruled on other grounds as to unrelated issue by Joy v. Morrison* (Mo. 2008) 254 S.W.3d 885. Here, Fontalvo's rumored misuse of the aux pin, a product of a tireless and sprawling bureaucratic game of "telephone," made its way onto the AMB Report's list of four "factors" contributing to this accident. (See the excerpt of NCIS Special Agent Rebecca Fitzsimmons's deposition attached as Exhibit D, pp. 58:16–23.) For that reason, it is as forbidden from use as evidence as it is unsubstantiated and unreliable (as described more fully below).

## II. THE "AUX PIN" THEORY WAS FRANKLY ACKNOWLEDGED BY LT.CPL. SHELTON AS ONLY HIS OWN "SPECULATION," AND IS THEREFORE AN INADMISSIBLE LAY OPINION.

Lt. Cpl. Shelton has freely acknowledged that he did not see the decedent use the aux pin as a "tool" to pry out the safety pin; instead, he repeatedly stressed that it was "just [his] opinion," and "speculation" on his part. (Ex. C, p. 9:10–16.) Similarly, NCIS Special Agent Rebecca Fitzsimmons clearly testified that in her

canvassing of witnesses, she ruled out any eyewitness seeing such an action, and confirmed that the theory was solely the product of "speculation on those Marines' part." (See the excerpt of her deposition attached as Exhibit D, pp. 58:20–60:11.)[2]

Given the uncommon circumstance that the out-of-court declarant testified under oath not only that he considered his declaration "opinion," but that he actively discounted it as "speculation," it is uncontested that it is inadmissible lay opinion not rationally based on his perception, and therefore excluded under Rule 701. Sikorsky may nonetheless argue that their experts remain entitled to bootstrap the out-of-court declaration in under Rule 703, which permits an expert to rely on "facts or data" that are otherwise impermissible, without disclosing the declaration itself to the jury. However, to the extent Sikorsky's seeks to introduce the Aux Pin Theory under this method, such a tactic would fail under the basic principle of Rule 702 that an expert can only testify as to issues requiring some expertise: repeating an unsubstantiated, and debunked, rumor among lay Marines regarding non-technical events simply falls outside the permissible scope of expert opinion.

## III. THE "AUX PIN" THEORY IS INDISPUTABLY BEING OFFERED FOR THE TRUTH, AND THEREFORE IS INADMISSIBLE HEARSAY UNDER RULE 802, AND CANNOT BE CONVEYED BY SIKORSKY'S EXPERTS ABSENT AN EXCEPTION.

Sikorsky's experts are furthermore prevented from bootstrapping in their effete "evidence" of the Aux Pin Theory since they cannot overcome its nature as inadmissible hearsay. "If an expert testifies to case-specific out-of-court statements to explain the bases for his opinion, those statements are necessarily considered by the jury for their truth, thus rendering them hearsay." *People v. Sanchez*, 63 Cal.4th

[2] Special Agent Fitzsimmons recounted her painstaking debunk-ment of this theory in exquisite detail during her deposition. In order to meet the ten-page limit to attachments imposed by the Court [Doc. No. 228], the entirety of her tale is not included here. It can be lodged with the Court upon request.

665, 684 (2016).[3] Each level of such hearsay must furthermore qualify for an exception in order to be admissible. *Id.*, fn. 11. Here, multiple sources have repeated this speculative "theory," but all traceable back to Shelton, whose out-of-court declaration is not subject to any exception.[4] The highest level of repetition of the theory is, of course, the finding of the Air Mishap Board—which is not only hearsay, but is expressly prohibited from use as explained in Section I. above. Therefore, there is no permissible basis for Sikorsky to introduce any evidence of this theory, on any level, and any argument about it should be preemptively excluded so as to avoid confusion, misleading, and waste of time under Rule 403.

## CONCLUSION

For the foregoing reasons, Sikorsky should be precluded at trial from advancing their avowed theory that the death of decedent Staff Sergeant Fontalvo was caused, in whole or in part, by his alleged use of the pin for the auxiliary fuel tank "as a tool to get the landing gear pin out."

Dated: March 23, 2018

**GRASSINI, WRINKLE & JOHNSON**

/s/ Marshall J. Shepardson, Esq.

Attorneys for Plaintiffs
mshepardson@grassinilaw.com

[3] In arriving at their holding in *Sanchez*, the California Supreme Court expressly relied on the reasoning and principles observed by the majority of the Justices of the U.S. Supreme Court in *Williams v. Illinois*, 567 U.S. 50 (2012). *See Sanchez*, 63 Cal.4th at 684, fn. 10. The *Williams* decision turned only on the plurality's ruling that the offered evidence was not being offered for the truth of the matter; here, Sikorsky's experts are plainly trying to bring in hearsay for the "truth" of their feeble Aux Pin Theory, so *Williams*'s holding is immaterial to this Motion, although the underlying principle that experts cannot introduce hearsay for the truth of the matters asserted is common to both California and federal law.

[4] There is no evidence that it was an "excited utterance" on Shelton's part, but was instead merely cool surmise during the protracted aftermath of the mishap.