**James W. Hunt – SBN 122582**
james.hunt@fitzhunt.com
**Christopher S. Hickey – SBN 198938**
christopher.hickey@fitzhunt.com
**FITZPATRICK & HUNT,**
**PAGANO, AUBERT, LLP**
633 West Fifth Street, 60th Floor
Los Angeles, CA 90071
Tel.: (213) 873-2100 / Fax: (213) 873-2125

Attorneys for Defendants
**SIKORSKY AIRCRAFT CORPORATION**
**AND UNITED TECHNOLOGIES CORPORATION**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.F., a minor, by and through his Guardian Ad Litem, TASHINA AMADOR, individually and as successor in interest to Alexis Fontalvo, deceased, and T.L., a minor, by and through her Guardian Ad Litem, TASHINA AMADOR, <br><br> Plaintiffs, <br> vs. <br><br> SIKORSKY AIRCRAFT CORPORATION, et al., <br><br> Defendants. | Case No. 13-cv-00331-GPC-KSC <br><br> Judge:  Hon. Gonzalo P. Curiel <br> Magistrate:  Hon. Karen S. Crawford <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SIKORSKY'S MOTION *IN LIMINE* NO. 6 – MOTION TO PROHIBIT PLAINTIFFS' COUNSEL'S USE OF IMPROPER TACTICS AND ARGUMENT** <br><br> *[Filed Concurrently with Notice of Motion and Motion; and Declaration of Christopher S. Hickey]* <br><br> Date:        April 6, 2018 <br> Time:        1:30 p.m. <br> Courtroom:   2D |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Evidence 402 and 403, Defendants Sikorsky Aircraft Corporation and United Technologies Corporation (collectively "Sikorsky") hereby move this Court for an order prohibiting Plaintiffs' counsel from utilizing improper tactics at trial including, but not limited to, use of the following: (1) any and all evidence, references to evidence, testimony or argument relating to the "Reptile Theory" or the closely related Golden Rule argument; (2) pandering to witnesses and the jury; and (3) suggesting to the jury an amount for non-economic damages.

## I.   ARGUMENT

### A.   Plaintiffs' Counsel Should be Prohibited From Presenting any Evidence or Argument Based on the Reptile Theory

*i.   The Reptile Theory Is an Improper Appeal to Juror's Concerns about Their Own Safety and The Safety of the Community.*

In 2009, jury consultant David Ball and plaintiff's attorney Don C. Keenan published a book, *Reptile: The 2009 Manual of the Plaintiff's Revolution* ("Reptile Manual"). The Reptile Manual is based on the neuroscience principle that people are driven by the latent, reptile portion of the brain that is fearful and survival based. The Reptile Theory focuses on awakening thoughts about safety and security in the minds of the jurors by appealing to their "reptile brains." The theory assumes that once the juror's "reptile brains" are triggered, it will take over the juror's higher-order thinking and compel them to reach a result that best protects the community.

According to the Reptile Manual, this is accomplished by couching the defendant's conduct in terms of the perceived threat to the community's safety so that every case is approached using an umbrella rule focusing on community safety. The Reptile Manual argues that plaintiff's counsel should use this "umbrella rule" to override the applicable standard of care in the case at hand. Regardless what the

proper legal standard of choosing reasonably among acceptable alternatives, the professional must adopt the safest available choice to avoid allowing unnecessary danger, according to the Reptile Manual.   The second-safest available choice violates the Reptile legal standard of care regardless of what the "experts" say is acceptable.

By focusing on community safety, the Reptile Theory seeks to influence jury verdicts by appealing to the self-interest of jurors, framing justice as an excuse for people to protect themselves and their families." The Reptile Theory avoids the merits of the plaintiff's claim by appealing to the juror's personal interest in their own safety and that of their community and uses the plaintiff's claim as a placeholder for subconscious fears that jurors harbor about themselves and their families.

The manual's authors urge that the key is to broaden the case beyond the specific defendant.  Rather than focus on whether the defendant's conduct actually caused injury to the plaintiff, the Reptile Theory examines whether the defendant's conduct presents a danger to the community.  To move the focus away from the actual plaintiff, the Reptile Theory asks what the maximum harm the defendant could have caused to an imaginary plaintiff, the actual facts of the case are secondary.

ii.     *The Reptile Theory is the New Version of the Proscribed "Golden Rule" Argument*

The Reptile Theory is the new version of the "Golden Rule" argument, which asks "jurors to place themselves in the position of a party." *Caudle v. D.C.*, 707 F.3d 354, 359 (D.C. Cir. 2013). The Golden Rule argument is "universally condemned because it encourages the jury to depart from neutrality and to decide the case on a basis of personal interest and bias rather than on evidence." *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 491 (1st Cir. 2010); *see also Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 199 (4th Cir. 1982) ("The Golden Rule and sympathy

1    appeals are the most obviously improper arguments from a technical standpoint.

2    Having no legal relevance to any of the real issues, they were per se objectionable

3    in this case as they are in any."); *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705,

4    714 (5th Cir. 1967) ("The real danger is that the sympathy and the feelings of the

5    jury will be encouraged and aroused so that the jury will decide the case and award

6    damages out of relation to actual fault and actual damage.").

7          Like the Golden Rule argument, the Reptile Theory seeks to appeal to what

8    the juror's believe is in the best interest of the community, rather than the juror's

9    impartial judgments based on the evidence presented. The theory intends to instill

10    fear in the jurors so that they believe the only way to keep themselves and the

11    community safe is to award a verdict for the plaintiff. The Reptile Theory has

12    become the modern way that plaintiff's attorneys attempt to have jurors place

13    themselves in the plaintiff's shoes. Such arguments constitute misconduct because

14    they violate the fundamental concept of an objective trial by an impartial jury.

15          These types of arguments have no relevance to the case at hand and are only

16    utilized to sway the jury by appealing to their sympathies and fear. Fed. R. Evid.

17    402. Prejudicial evidence that is used to create an unfair emotional bias against a

18    party is prohibited by Rule 403. Accordingly, Sikorsky respectfully requests that

19    this Court exclude Plaintiffs' counsel from using the Reptile Theory and/or Golden

20    Rule arguments, as they are based on irrelevant evidence and are intended to create

21    undue prejudice and mislead the jury.

22   **B.**    **Plaintiffs' Counsel Should be Precluded From Pandering to Witnesses**

23         **and the Jury**

24          Plaintiffs seek to introduce at trial the deposition testimony of a number of

25    witnesses. For many of these witnesses, Plaintiffs have chosen to designate portions

26    of the transcript where counsel, on behalf of Plaintiffs, praises the witness for

27    attending the deposition.  (*See* compilation of Plaintiffs' designated testimony,

28    ///

collectively attached as Ex. A to Hickey Decl.)  For example, Plaintiffs designated the following portions of deposition testimony to be shown to the jury at trial:

> Q:  Good afternoon, Lieutenant Colonel Stevens. My name is Marshall Shepardson. I represent the family of Staff Sergeant Fontalvo who are the plaintiffs in this case.
>
> I really, really appreciate your time and thoughtfulness in coming down and answering all these questions about something that you haven't thought about or looked at in years, and I think on behalf of everybody, we really appreciate it.

(Stevens Dep. at 155:7-15, Ex. A.)

> Q:  Gunner Sergeant Wuthrich . . . as I said before, my name is Marshall Shepardson. I represent the family of Staff Sergeant Fontalvo, and on behalf of them, my clients and the firm, I would like to thank you very much for taking your time on a regular weekday and coming here and answering a bunch of questions and racking your brain about stuff you haven't thought about in five years. I really appreciate that.

(Wuthrich Dep. at 94:16-25, Ex. A.)

> Q:  Mr. Danley, as I said earlier, my name is Marshall Shepardson and I represent the Fontalvo family. Thank you very much for your time today. We really appreciate it.
>
> We understand that you are no longer in the service and have your own life to - - to move forward with, and we really appreciate you taking a day out for this.

(Danley Dep. at 47:3-10, Ex. A.)

> Q:  Good afternoon. My name is Marshall Shepardson, and I represent the family of Staff Sergeant Fontalvo in this lawsuit.
>
> First off, just thank you very much for coming down and giving us your thoughtful testimony and your time.

(Shelton Dep. at 145:19-24, Ex. A.)

Such testimony is completely irrelevant to any fact, claim, or issue in this action, and constitutes nothing more than an attempt by Plaintiffs' counsel to curry

favor with the witnesses and the jury. Fed. R. Evid. 402. Counsel's role at trial is limited to presenting evidence and advocating on behalf of his clients, not to develop a rapport with the trier of fact. Furthermore, introducing to the jury this irrelevant testimony from eight different depositions is prejudicial, needlessly cumulative and a significant waste of time, particularly since the trial is limited to 15 days. Fed. R. Evid. 403. This method of examining witnesses and presenting evidence should be excluded by the Court to avoid wasting time pursuant to its authority under Rule 611(a). In addition to excluding such deposition testimony, and for the same reasons, Plaintiffs' counsel should be prohibited from interacting in this manner with the witnesses and the jury present at trial. The only purpose of such testimony by Plaintiff's counsel would be to prejudice Sikorsky by trying to gain favor with the jury.

For the above reasons, Sikorsky respectfully requests that this Court exclude all portions of Plaintiffs' designated deposition testimony where counsel panders to the witness and exclude Plaintiff's counsel from pandering to witnesses and the jury at trial.

## C. Plaintiffs' Counsel Should be Precluded From Suggesting an Amount of Non-Economic Damages to the Jury

Sikorsky believes that Plaintiffs' counsel intends on suggesting to the jury at trial a non-economic damages figure. However, no fixed standard exists for deciding the amount of non-economic damages in a wrongful death action. With no objective standard to rely upon, the jury's determination is vulnerable to unsubstantiated argument. Therefore, any suggestion by Plaintiffs' counsel as to the amount of non-economic damages is highly prejudicial to Sikorsky. Fed. R. Evid. 403. A recent United States District Court case from the Central District of California is instructive:

> During Plaintiff's rebuttal at closing argument, counsel suggested the jury award five million dollars in damages. (Trial Tr. Apr. 11, 2011.) It was the first time Plaintiff's counsel had mentioned an amount of damages. At the

time, defense counsel made an objection, which the Court overruled. After closing, the jury was instructed to decide the amount of damages on a subjective basis. The jury was instructed to "use [its] judgment to decide a reasonable amount based on the evidence and [its] common sense." (Jury Instruction No. 12, ECF No. 162.) There was no objective standard given to the jury, as "[n]o fixed standard exists for deciding the amount of noneconomic damages." *Id*.

Upon review of the matter, the Court finds that, with no objective standard to rely upon, the jury's determination was vulnerable to unsubstantiated argument. As such, the Court finds that Plaintiff's suggestion as to amount of damages was highly prejudicial, particularly since defense counsel had no opportunity for rebuttal. On this basis, the Court grants the City's motion for a new trial only on the issue of damages to prevent a "miscarriage of justice." *Molski*, 481 F.3d at 729. In light of this ruling, the City's remaining arguments regarding damages (i.e., excessive damages, "golden rule," and "send a message") are moot.

*Nash v. City of San Bernardino*, No. CV0908671RGKFFMX, 2011 WL 13213919, at *3 (C.D. Cal. Aug. 9, 2011).

For the above reasons, Sikorsky respectfully requests that this Court prohibit Plaintiffs' counsel from suggesting to the jury a non-economic damages figure.

Dated: March 23, 2018

FITZPATRICK & HUNT,
PAGANO, AUBERT, LLP

By: /s  Christopher S. Hickey
James W. Hunt
Christopher S. Hickey
Attorneys for Defendants
Sikorsky Aircraft Corporation and
United Technologies Corporation