

1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  | D.F., a minor, by and through his | Case No.:  3:13-cv-00331-GPC-KSC
12  | Guardian Ad Litem, TASHINA
    | AMADOR, individually and as successor | **JURY INSTRUCTIONS**
13  | in interest to Alexis Fontalvo, deceased;
    | and T.L., a minor, by and through her
14  | Guardian Ad Litem, TASHINA
15  | AMADOR,
16  |                          Plaintiffs,
17  | v.
18  | SIKORSKY AIRCRAFT
    | CORPORATION, et al.,
19
20  |                          Defendants.

21
22
23
24
25
26
27
28

1

# **Table of Contents**

Preliminary Instructions ...................................................................................4

    1. Duties of the Judge and Jury ..................................................................4
    2. Claims and Defenses ..............................................................................5
    3. Nonperson Party .....................................................................................6
    4. Burden of Proof—Preponderance of the Evidence ...............................7
    5. What is Evidence ....................................................................................8
    6. What is Not Evidence .............................................................................9
    7. Evidence for Limited Purpose ..............................................................10
    8. Direct and Circumstantial Evidence .....................................................11
    9. Ruling on Objections ............................................................................12
    10. Credibility of Witnesses .....................................................................13
    11. No Transcript Available to Jury .........................................................14
    12. Taking Notes ......................................................................................15
    13. Bench Conferences and Recesses ......................................................16
    14. Stipulations of Fact ............................................................................17
    15. Deposition in Lieu of Live Testimony ...............................................18
    16. Expert Opinion ...................................................................................19
    17. Charts and Summaries Not Received in Evidence ..............................20
    18. Charts and Summaries in Evidence ....................................................21

Standing to Pursue a Wrongful Death Claim .................................................22

    19. Tanika Fontalvo's Standing to Pursue a Wrongful Death Claim As a Result of Sergeant Fontalvo's Death .................................................................22

Plaintiffs' Claims: Strict Liability ..................................................................23

    20. Strict Liability—Essential Factual Elements .....................................23
    21. Strict Liability—Manufacturing Defect: Essential Factual Elements ....................24
    22. "Manufacturing Defect" Explained ...................................................25
    23. "Substantial Factor" Explained ..........................................................26
    24. Strict Liability—Design Defect: Essential Factual Elements (Consumer Expectation Test) ....................................................................................27
    25. Strict Liability—Design Defect: Essential Factual Elements (Risk/Benefit Test, Shifting Burden of Proof) ..................................................28

Plaintiffs' Claims: Negligence ......................................................................29

    26. Negligence—Essential Factual Elements ...........................................29
    27. Basic Standard of Care .......................................................................30

28. Custom or Practice ............................................................................31
29. Causation: Multiple Causes ..............................................................32

Sikorsky's Affirmative Defenses ..............................................................33

30. Affirmative Defenses—Burden of Proof ..........................................33
31. Affirmative Defense—Third-Party Conduct as Superseding Cause .....................34
32. Affirmative Defense—Comparative Fault of Third Person ...................35
33. Affirmative Defense—Comparative Fault of Decedent ........................36
34. Determining Each Person's Proportionate Fault ...............................37
35. Affirmative Defense—Product Misuse or Modification ........................38
36. Affirmative Defense—Design Defect: Government Contractor ...............39

Damages ..................................................................................................40

37. Dominic Fontalvo: Damages ............................................................40
38. Tanika Fontalvo: Damages ..............................................................42
39. Damages—Life Expectancy ..............................................................44
40. Damages Arising in the Future—Discount to Present Cash Value ..........45
41. No Punitive Damages .......................................................................46
42. Arguments of Counsel Not Evidence of Damages ..............................47

Deliberations ...........................................................................................48

43. Duty to Deliberate ..........................................................................48
44. Consideration of Evidence—Conduct of the Jury .............................49
45. Communication with the Court .........................................................51
46. Readback or Playback .....................................................................52
47. Return of Verdict ...........................................................................53

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Preliminary Instructions**

### **1. Duties of the Judge and Jury**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.  Before I explain the law, however, I will provide you with several preliminary instructions that you must take into account while reaching your verdict.

Copies of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must consider all of the instructions together.  If I repeat any ideas or rules of law during my instructions, do not take it to mean that those ideas or rules are more important than the others.  The order in which the instructions are given should also not be taken to indicate any ranking of importance.

You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done to suggest that I have an opinion regarding the evidence or what your verdict should be.

Unless I tell you otherwise, all instructions apply to all of the parties.

## 2. Claims and Defenses

To help you in your deliberation, I will repeat for you the brief summary of the positions of the parties that I read to you prior to the beginning of trial:

This is a wrongful death case, brought by plaintiffs Dominic and Tanika Fontalvo, both minors, concerning the death of United States Marine Corps Sergeant Alexis Fontalvo on March 17, 2011 at Marine Corps Air Station Miramar in a helicopter mishap. Sergeant Fontalvo was lying under the CH-53E "Super Stallion" helicopter to prepare it for a training flight, by pulling the landing gear safety pin. The safety pin offered resistance, and as soon as Sergeant Fontalvo managed to remove it, the left main landing gear retracted, killing him instantly.

All parties in this trial agree the left main landing gear retracted due to an inadvertent energization of the electrical wire controlling the landing gear. Plaintiffs have sued Defendant Sikorsky Aircraft Corporation ("Sikorsky"), who manufactured the helicopter for the U.S. Navy in 1990, alleging that Sergeant Fontalvo's death was the result of the defective design and manufacture of the landing gear control system of the CH-53E helicopter.

Sikorsky disagrees and contends the accident is the result of the Navy and United States Marine Corps' requirement that the CH-53E use a certain type of wiring called "Kapton," and also inadequate maintenance performed by the Navy and Marine Corps, allowing the wiring on the helicopter to reach a state of disrepair by the time of the accident. Sikorsky also believes contributing to this accident was Sergeant Fontalvo's own attempts to try to remove the stuck landing gear safety pin.

3:13-cv-00331-GPC-KSC

### 3. Nonperson Party

Sikorsky is a corporation.  Sikorsky is entitled to the same fair and impartial treatment that you would give to an individual.  You must decide this case with the same fairness that you would use if you were deciding the case between individuals.

When I use words like "person" or "he" or "she" in these instructions to refer to a party, those instructions also apply to Sikorsky.

### 4. Burden of Proof—Preponderance of the Evidence

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**5. What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.     The sworn testimony of any witness;

2.     The exhibits that are admitted into evidence;

3.     Any facts to which the lawyers have agreed; and

4.     Any facts that I may instruct you to accept as proved.

## 6. What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.     Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### 7. Evidence for Limited Purpose

Some evidence may be admitted only for a limited purpose.  During the trial I may have instructed you that certain items of evidence have been admitted only for a limited purpose.  You must consider that evidence only for that limited purpose and not for any other purpose.

**8. Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

3:13-cv-00331-GPC-KSC

### 9. Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  If I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### 10. Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. The opportunity and ability of the witness to see or hear or know the things testified to;

2. The witness's memory;

3. The witness's manner while testifying;

4. The witness's interest in the outcome of the case, if any;

5. The witness's bias or prejudice, if any;

6. Whether other evidence contradicted the witness's testimony;

7. The reasonableness of the witness's testimony in light of all the evidence; and

8. Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**11. No Transcript Available to Jury**

At the beginning of trial, I urged you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

### 12. Taking Notes

If you took notes, you may take them to the jury room.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.  When you leave, your notes should be left in the jury room.  No one will read your notes; they will be destroyed.

### 13. Bench Conferences and Recesses

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence was to be treated under the rules of evidence and to avoid confusion and error.

Of course, we did what we could to keep the number and length of these conferences to a minimum.  I did not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

3:13-cv-00331-GPC-KSC

1

### 14. Stipulations of Fact

2      The parties have agreed to certain facts that were read to you.  You must treat these

3  facts as having been proved.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:13-cv-00331-GPC-KSC

### 15. Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken during the preparation of this case by the attorneys.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

3:13-cv-00331-GPC-KSC

**16. Expert Opinion**

You heard testimony from several witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

3:13-cv-00331-GPC-KSC

### 17. Charts and Summaries Not Received in Evidence

Certain charts and summaries not admitted into evidence were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

### 18. Charts and Summaries in Evidence

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

3:13-cv-00331-GPC-KSC

## **Standing to Pursue a Wrongful Death Claim**

### **19. Tanika Fontalvo's Standing to Pursue a Wrongful Death Claim As a Result of Sergeant Fontalvo's Death**

As I mentioned at the beginning of these instructions, this is a wrongful death case. To bring a wrongful death case in California, an individual must establish his or her standing to do so. Sikorsky does not contest Dominic Fontalvo's standing to bring a wrongful death suit as a result of Sergeant Fontalvo's death. Sikorsky does, however, argue that Tanika Fontalvo does not have standing to assert a wrongful death suit under the facts of this case.

Tanika has the burden of showing that she has standing to assert her wrongful death suit. To have standing to assert a wrongful death suit resulting from Sergeant Fontalvo's death, Tanika must prove that at the time of Sergeant Fontalvo's death:

1.     Tanika had resided for the previous 180 days in Sergeant Fontalvo's household; and

2.     That Tanika was dependent on Sergeant Fontalvo for one-half or more of Tanika's support.

If you conclude that Tanika has not made this showing, you may not award her any damages in this case.

In the following instructions, I will refer to what "Plaintiffs" must prove to prevail on their claims. Do not view my use of the term "Plaintiffs" to suggest that Tanika has standing to pursue these claims. Whether Tanika has standing to pursue her claims is a threshold question that you must decide.

3:13-cv-00331-GPC-KSC

### **Plaintiffs' Claims: Strict Liability**

**20. Strict Liability—Essential Factual Elements**

Plaintiffs' claims can be separated into two categories: (1) strict liability, and (2) negligence.  I will first instruct you on the law governing Plaintiffs' strict liability claims, and then I will instruct you on the law governing Plaintiffs' negligence claim.

Plaintiffs assert that Sikorsky is strictly liable to them for two independent reasons.  First, Plaintiffs claim they were harmed by a product distributed, manufactured, and sold by Sikorsky that contained a manufacturing defect.  Second, Plaintiffs claim they were harmed by a product distributed, manufactured, and sold by Sikorsky that was defectively designed.

### 21. Strict Liability—Manufacturing Defect: Essential Factual Elements

Plaintiffs claim that the CH-53E landing gear control system contained a manufacturing defect.  To establish this claim, Plaintiffs must prove all of the following:

1.  That Sikorsky manufactured, distributed and sold the CH-53E landing gear control system;

2.  That the CH-53E landing gear control system contained a manufacturing defect when it left Sikorsky's possession;

3.  That Plaintiffs were harmed; and

4.  That the CH-53E landing gear control system's defect was a substantial factor in causing Plaintiffs' harm.

## 22. "Manufacturing Defect" Explained

A product contains a manufacturing defect if the product differs from the manufacturer's design or specifications or from other typical units of the same product line.

3:13-cv-00331-GPC-KSC

### 23. "Substantial Factor" Explained

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

### 24. Strict Liability—Design Defect: Essential Factual Elements (Consumer Expectation Test)

Plaintiffs also claim the CH-53E landing gear control system's design was defective.  There are two alternative ways Plaintiffs can prove this strict liability design defect claim.  The first way is to prove that the landing gear did not perform as safely as an ordinary consumer would have expected it to perform.  To prove a design defect under this first theory, Plaintiffs must prove all of the following:

1.   That an ordinary consumer of the CH-53E can form reasonable minimum safety expectations of the operation of its landing gear;

2.   That Sikorsky manufactured, distributed, and sold the CH-53E landing gear control system;

3.   That the CH-53E landing gear control system did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way;

4.   That Plaintiffs were harmed; and

5.   That the CH-53E landing gear control system's failure to perform safely was a substantial factor in causing Plaintiffs' harm.

### 25. Strict Liability—Design Defect: Essential Factual Elements (Risk/Benefit Test, Shifting Burden of Proof)

The other way Plaintiffs can establish their strict liability design defect claim is under what is called a "risk/benefit" theory.  Under this theory, Plaintiffs must first prove all of the following:

1.  That Sikorsky manufactured, distributed, and sold the CH-53E landing gear control system;

2.  That Plaintiffs were harmed; and

3.  That the CH-53E landing gear control system's design was a substantial factor in causing harm to Plaintiffs.

If Plaintiffs have proved these three facts, then your decision on this claim must be for Plaintiffs unless Sikorsky proves that the benefits of the CH-53E landing gear control system's design outweigh the risks of the design.  In deciding whether the benefits outweigh the risks, you should consider the following:

(a)  The gravity of the potential harm resulting from the use of the CH-53E landing gear control system;

(b)  The likelihood that this harm would occur;

(c)  The feasibility of an alternative safer design at the time of manufacture;

(d)  The cost of an alternative design; and

(e)  The disadvantages of an alternative design.

**<u>Plaintiffs' Claims: Negligence</u>**

**26. Negligence—Essential Factual Elements**

Plaintiffs also claim that they were harmed by Sikorsky's negligence and that Sikorsky should be held responsible for that harm.  To establish this claim, Plaintiffs must prove all of the following:

1. That Sikorsky designed, manufactured, supplied, installed, or inspected the CH-53E landing gear control system;

2. That Sikorsky was negligent in designing, manufacturing, supplying, installing, or inspecting the CH-53E landing gear control system;

3. That Plaintiffs were harmed; and

4. That Sikorsky's negligence was a substantial factor in causing Plaintiffs' harm.

3:13-cv-00331-GPC-KSC

### 27. Basic Standard of Care

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. As with all of these instructions, I again remind you that "person" in the context of this case can mean an individual or a business entity.

You must decide how a reasonably careful person would have acted in the same situation.

In determining whether a person used reasonable care, you should balance what person knew or should have known about the likelihood and severity of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm.

A product designer is negligent if it fails to use the amount of care in designing the product that a reasonably careful designer would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.

3:13-cv-00331-GPC-KSC

### 28. Custom or Practice

You may consider customs or practices in the community in deciding whether a person acted reasonably.  Customs and practices do not necessarily determine what a reasonable person would have done in that person's situation.  They are only factors for you to consider.

Following a custom or practice does not excuse conduct that is unreasonable.  You should consider whether the custom or practice itself is reasonable.

3:13-cv-00331-GPC-KSC

### 29. Causation: Multiple Causes

A person's negligence may combine with another factor to cause harm.  If you find that Sikorsky's negligence was a substantial factor in causing Plaintiffs' harm, then Sikorsky is responsible for the harm.  Sikorsky cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Plaintiffs' harm.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Sikorsky's Affirmative Defenses**</u>

**30. Affirmative Defenses—Burden of Proof**

Sikorsky asserts several affirmative defenses that, if proven, reduce or eliminate Sikorsky's liability to Plaintiffs.  Sikorsky has the burden to prove these affirmative defenses by a preponderance of the evidence.

3:13-cv-00331-GPC-KSC

### 31. Affirmative Defense—Third-Party Conduct as Superseding Cause

Sikorsky claims that it is not responsible for Plaintiffs' harm because of the later misconduct of Sergeant Fontalvo, the Marine Corps, and/or the U.S. Navy.  To avoid legal responsibility for the harm, Sikorsky must prove all of the following:

1. That Sergeant Fontalvo, the Marine Corps, and/or the U.S. Navy's conduct occurred after the conduct of Sikorsky;

2. That a reasonable person would consider Sergeant Fontalvo, the Marine Corps, and/or the U.S. Navy's conduct a highly unusual or an extraordinary response to the situation;

3. That Sikorsky did not know and had no reason to expect that Sergeant Fontalvo, the Marine Corps, and/or the U.S. Navy would act in a negligent manner; and

4. That the kind of harm resulting from Sergeant Fontalvo, the Marine Corps, and/or the U.S. Navy's conduct was different from the kind of harm that could have been reasonably expected from Sikorsky's conduct.

**32. Affirmative Defense—Comparative Fault of Third Person**

Sikorsky also claims that the negligence of the U.S. Navy, the U.S. Marine Corps, and/or E.I. DuPont de Nemours and Company ("DuPont") also contributed to Plaintiffs' harm.  To succeed on this claim, Sikorsky must prove both of the following:

1.    That the U.S. Navy, U.S. Marine Corps, and/or DuPont negligently maintained or modified the CH-53E landing gear control system or were otherwise negligent; and

2.    That this negligence was a substantial factor in causing Plaintiffs' harm.

If you find that Sikorsky has proven these elements, you will be asked on the verdict form to decide what proportion of Plaintiffs' harm is attributable to that negligent conduct.

### 33. Affirmative Defense—Comparative Fault of Decedent

Sikorsky also claims that Sergeant Fontalvo's own negligence contributed to his death.  To succeed on this claim, Sikorsky must prove both of the following:

1.     That Sergeant Fontalvo negligently used or misused the CH-53E landing gear control system or was otherwise negligent; and

2.     That this negligence was a substantial factor in causing Sergeant Fontalvo's death.

If Sikorsky proves the above, Plaintiffs' damages are reduced by your determination of the percentage of Sergeant Fontalvo's responsibility.

3:13-cv-00331-GPC-KSC

### 34. Determining Each Person's Proportionate Fault

If you find that the fault of more than one person, including Sikorsky, Sergeant Fontalvo, the U.S. Navy, the U.S. Marine Corps and DuPont, was a substantial factor in causing Plaintiffs' harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages of fault must total 100 percent. You will make a separate finding of Plaintiffs' total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility. While you are responsible for calculating the appropriate percentages, you need not apply those percentages to the damages award; I will calculate the actual reduction in Plaintiffs' damages, if any.

### 35. Affirmative Defense—Product Misuse or Modification

Sikorsky claims that it is not responsible for Plaintiffs' claimed harm because the CH-53E landing gear control system was misused or modified after it left Sikorsky's possession.  To succeed on this defense, Sikorksy must prove that:

1.      The CH-53E landing gear control system was misused or modified after it left Sikorsky's possession;

2.      The misuse or modification was so highly extraordinary that it was not reasonably foreseeable to Sikorsky, and therefore should be considered as the sole cause of Plaintiffs' harm.

3:13-cv-00331-GPC-KSC

### 36. Affirmative Defense—Design Defect: Government Contractor

Sikorsky may not be held liable for its design of the CH-53E landing gear control system if it proves all of the following:

1.   That Sikorsky contracted with the United States government to provide the CH-53E landing gear control system for military use;

2.   That the United States approved reasonably precise specifications for the CH-53E landing gear control system;

3.   That the CH-53E landing gear control system conformed to those specifications; and

4.   That Sikorsky warned the United States about the dangers in the use of the CH-53E landing gear control system that were known to Sikorsky but not to the United States.

As to the second element above, "approval" by the United States means that the government exercised its own discretion with respect to the design feature in question, and is more than just a rubber stamp.  To prove such government approval, Sikorsky must show that the CH-53E landing gear system design was the result of a continuous exchange of back-and-forth dialogue between the government and Sikorsky.

## **Damages**

**37. Dominic Fontalvo: Damages**

If you decide that Dominic has proved his claim against Sikorsky for the death of Sergeant Fontalvo, you also must decide how much money will reasonably compensate Dominic for the death of Sergeant Fontalvo. This compensation is called "damages."

Dominic does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

The damages claimed by Dominic fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

Dominic claims the following economic damages:

1.    The reasonable value of financial support, if any, that Sergeant Fontalvo would have, with reasonable probability, contributed to the family during the life expectancy that Sergeant Fontalvo had before death;

2.    The reasonable value of loss of gifts or benefits that Dominic would have, with reasonable probability, been expected to receive from Sergeant Fontalvo; and

3.    The reasonable value of necessary household services that Sergeant Fontalvo would have, with reasonable probability, been provided.

Dominic also claims the following noneconomic damages:

1.    The loss of Sergeant Fontalvo's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and

2.    The loss of Sergeant Fontalvo's training and guidance.

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

In determining Dominic's loss, do not consider:

1.    Dominic's grief, sorrow, or mental anguish; or

2.      Dominic's poverty or wealth.

### 38. Tanika Fontalvo: Damages

If you decide that Tanika has standing to assert her wrongful death claim and that she has proved her claim against Sikorsky for the death of Sergeant Fontalvo, you also must decide how much money will reasonably compensate Tanika for the death of Sergeant Fontalvo. Again, this compensation is called "damages."

Tanika does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

The damages claimed by Tanika also fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

Tanika claims the following economic damages:

1. The reasonable value of financial support, if any, that Sergeant Fontalvo would have, with reasonable probability, contributed to the family during the life expectancy that Sergeant Fontalvo had before death;

2. The reasonable value of loss of gifts or benefits that Tanika would have, with reasonable probability, been expected to receive from Sergeant Fontalvo; and

3. The reasonable value of necessary household services that Sergeant Fontalvo would have, with reasonable probability, been provided.

Tanika also claims the following noneconomic damages:

1. The loss of Sergeant Fontalvo's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and

2. The loss of Sergeant Fontalvo's training and guidance.

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

In determining Tanika's loss, do not consider:

1. Tanika's grief, sorrow, or mental anguish; or

2.     Tanika's poverty or wealth.

### 39. Damages—Life Expectancy

In deciding a person's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation.  According to Vital Statistics of the United States, published by the National Center for Health Statistics, the average life expectancy of a 32-year-old male (Sergeant Fontalvo's age had he lived to the present) is 46 more years. This published information is evidence of how long a person is likely to live but is not conclusive.  Some people live longer and others die sooner.

3:13-cv-00331-GPC-KSC

### 40. Damages Arising in the Future—Discount to Present Cash Value

Any award for future economic damages must be for the present cash value of those damages.

Noneconomic damages such as love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages would have been received.

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. You should also consider decreases in the value of money that may be caused by future inflation.

**41. No Punitive Damages**

You must not include in your award any damages to punish or make an example of Sikorsky.  Such damages would be punitive damages, and they cannot be part of your verdict.  You must award only the damages that fairly compensate Plaintiffs for their loss.

3:13-cv-00331-GPC-KSC

## 42. Arguments of Counsel Not Evidence of Damages

The arguments of the attorneys are not evidence of damages.  Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

# **Deliberations**

### **43. Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

3:13-cv-00331-GPC-KSC

### 44. Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case

based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

### 45. Communication with the Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

### 46. Readback or Playback

If a request has been made for a readback of the testimony, it will be provided to you, but you are cautioned that all readbacks run the risk of distorting the trial because of overemphasis of one portion of the testimony. Therefore, you may be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.

The readback could contain errors. The readback cannot reflect matters of demeanor, tone of voice, and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony read cannot be considered in isolation, but must be considered in the context of all the evidence presented.

3:13-cv-00331-GPC-KSC

### 47. Return of Verdict

A verdict form has been prepared for you.  I have already instructed you on the law that you are to use in answering these questions.  You must follow my instructions and the form carefully.  You must consider each question separately.  Although you may discuss the evidence and the issues to be decided in any order, you must answer the questions on the verdict form in the order they appear.  After you answer each question, the form will tell you what to do next.

Once you have reached a unanimous verdict and the verdict form is completed, the presiding juror must sign and date the form.  Once that is completed, advise the bailiff that you are ready to return to the courtroom.

After your verdict is read in open court, you may be asked individually to indicate whether the verdict expresses your personal vote.

Members of the jury, this completes my instructions to you.  Please now retire to the jury room to begin your deliberations.